Nicole M. Norris (SBN 222785)
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone:    415-591-1000
Facsimile:    415-591-1400
Email: nnorris@winston.com

James F. Hurst (*Admitted Pro Hac Vice*)
David J. Doyle (*Admitted Pro Hac Vice*)
Samuel S. Park (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:    312-558-5600
Facsimile:    312-558-5700
Email: jhurst@winston.com; ddoyle@winston.com;
spark@winston.com

Charles B. Klein (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20007
Telephone:    202-282-5000
Facsimile:    202-282-5100
Email: cklein@winston.com

Attorneys for Defendant
ABBOTT LABORATORIES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>ABBOTT LABORATORIES,<br><br>　　　　Defendant.<br><br>[caption continues next page] | No. C 07-5985 CW<br><br>*Related Per November 30, 2007 Order to Case No. C 04-1511 CW*<br><br>**ABBOTT LABORATORIES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT PURSUANT TO 12(b)(6)**<br><br>Date:　　　March 6, 2008<br>Time:　　　2:00 p.m.<br>Courtroom:　2 (4th Floor)<br>Judge:　　　Hon. Claudia Wilken |

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

| | |
|---|---|
| ROCHESTER DRUG CO-OPERATIVE, INC., on behalf of itself and all others similarly situated,<br><br>          Plaintiffs,<br><br>    vs.<br><br>ABBOTT LABORATORIES,<br><br>          Defendant. | **No. C 07-6010 CW**<br><br>*Related Per December 3, 2007 Order to Case No. C 04-1511 CW*<br><br>**ABBOTT LABORATORIES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT PURSUANT TO 12(b)(6)**<br><br>Date:     March 6, 2008<br>Time:    2:00 p.m.<br>Courtroom:  2 (4th Floor)<br>Judge:   Hon. Claudia Wilken |
| LOUISIANA WHOLESALE DRUG COMPANY, INC., on behalf of itself and all others similarly situated,<br><br>          Plaintiffs,<br><br>    vs.<br><br>ABBOTT LABORATORIES,<br><br>         Defendant. | **No. C 07-6118 CW**<br><br>*Related Per December 10, 2007 Order to Case No. C 04-1511 CW*<br><br>**ABBOTT LABORATORIES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT PURSUANT TO 12(b)(6)**<br><br>Date:     March 6, 2008<br>Time:    2:00 p.m.<br>Courtroom:  2 (4th Floor)<br>Judge:   Hon. Claudia Wilken |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................................1

II.  ARGUMENT .............................................................................................................................3

    A.  Meijer's Summary Allegations Of Below-Cost Pricing Do Not State A Claim Under *Cascade* ...........................................................................................................3

        1.  The Supreme Court Requires Meijer To Show A "Plausible Entitlement To Relief" At The Pleadings Stage ...............................................3

        2.  Meijer Has Not Plausibly Alleged That Abbott's Incremental Cost Of Producing The Lopinavir Component Of Kaletra Exceeds $1.64. ...................6

    B.  Meijer's Unprecedented Allegations That Abbott Monopolized The Boosting Market Also Fail To State A Claim ...............................................................................8

III. CONCLUSION ........................................................................................................................12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-i-

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
   472 U.S. 585 (1985) .......................................................................................................... 3, 11

*Barr Labs., Inc. v. Abbott Labs.*,
   978 F.2d 98 (3d Cir. 1992) ................................................................................................. 2, 7

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ...................................................................................................... passim

*Berkey Photo v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) .................................................................................................. 10

*Cascade Health Solutions v. PeaceHealth*,
   --- F.3d ---, No. 05-35627, 2008 WL 269506 (9th Cir. Feb. 1, 2008) ........................... passim

*E.E.O.C. v. Concentra Health Services, Inc.*,
   496 F.3d 773 (7th Cir. 2007) .................................................................................................. 4

*Erickson v. Pardus*,
   127 S. Ct. 2197 (2007) ........................................................................................................... 4

*GAF Corp. v. Eastman Kodak Co.*,
   519 F. Supp. 1203 (S.D.N.Y. 1981) ...................................................................................... 10

*Image Technical Services., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) ............................................................................................... 11

*In re Abbott Labs. Norvir Antitrust Litig.*,
   442 F. Supp. 2d 800 (N.D. Cal. 2006) ................................................................................... 11

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   288 F.3d 1028 (7th Cir. 2002) ................................................................................................. 7

*In re Nokia Corp. Sec. Litig.*,
   No. 96 Civ. 3752 (DC), 1998 WL 15096 (S.D.N.Y. Apr. 1, 1998) ......................................... 8

*In re Petroleum Prods. Antitrust Litig.*,
   906 F.2d 432 (9th Cir. 1990) ................................................................................................. 11

*MetroNet Servs. Corp. v. Qwest Corp.*,
   383 F.3d 1124 (9th Cir. 2004) ............................................................................................... 11

*Monsanto Co. v. McFarling*,
   302 F.3d 1291 (Fed. Cir. 2002) ............................................................................................... 8

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

-ii-

ABBOTT LABORATORIES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED
COMPLAINT PURSUANT TO 12(b)(6), CASE NOS. C 07-5985 CW, C 07-6010 CW, C 07-6118 CW

*Nintendo of Am. v. Lewis Galoob Toys, Inc.*,
    16 F.3d 1032 (9th Cir. 1994) .................................................................................................. 8

*Olympia Equip. Leasing Co. v. Western Union Tel. Co.*,
    797 F.2d 370 (7th Cir. 1986) .................................................................................................. 9

*Schor v. Abbott Labs.*,
    457 F.3d 608 (7th Cir. 2006) ............................................................................................. 1, 7

*Silvas v. E*Trade Mortgage Corp.*,
    No. 06-55556, 2008 WL 239422 (9th Cir. Jan. 30, 2008) ...................................................... 4

*Stearns Airport Equipment Co. v. FMC Corp.*,
    170 F.3d 518 (5th Cir. 1999) .................................................................................................. 7

*Taggart v. Rutledge*,
    657 F. Supp. 1420 (D. Mont. 1987) .................................................................................... 5, 6

*Tenneco, Inc. v. United States*,
    17 Cl. Ct. 345 (Ct. Cl. 1989) .................................................................................................. 8

*Tri-State Rubbish v. Waste Mgmt.*,
    998 F.2d 1073 (1st Cir. 1993) ................................................................................................ 5

*United Magazine Co. v. Murdoch Magazines Distrib.*,
    146 F. Supp. 2d 385 (S.D.N.Y. 2001) .................................................................................... 5

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) .............................................................................................. 3, 9

*United States v. Studiengesellschaft Kohle, m.b.H.*,
    670 F.2d 1122 (D.C. Cir. 1981) ........................................................................................ 3, 10

*United States v. Syufy Enterprises*,
    903 F.2d 659 (9th Cir. 1990) .................................................................................................. 9

*United States v. Westinghouse Elec. Corp.*,
    648 F.2d 642 (9th Cir. 1981) ................................................................................................ 10

*Verizon Communications., Inc., v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) .................................................................................................... 3, 10, 11

*Warren v. Fox Family Worldwide, Inc.*,
    171 F. Supp. 2d 1057 (C.D. Cal. 2001) .................................................................................. 6

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8, 12 ............................................................................... passim

Richard G. Frank, Government Commitment And Regulation Of Prescription Drugs .................. 2

## I. INTRODUCTION

The Meijer plaintiffs (or, collectively, "Meijer") ask this Court to blindly accept their conclusory below-cost allegation as true. But this ignores the relevant pleading standard. As the Supreme Court recently made clear, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A plaintiff must allege "enough fact[s]" to demonstrate that the allegation is "plausible" and that there is a "reasonable expectation" discovery will confirm the allegation. (Opp'n at 10 (quoting *Twombly*, 127 S. Ct. at 1965)).

As Abbott demonstrated in its opening brief, the Meijer amended complaint belatedly added a conclusory below-cost pricing allegation – "on information and belief" – as part of a last-ditch effort to avoid *Cascade Health Solutions v. PeaceHealth*, --- F.3d ---, No. 05-35627, 2008 WL 269506, at *12 (9th Cir. Feb. 1, 2008). But Meijer fails to allege any facts – literally nothing – to support its bald allegation of below-cost pricing. Meijer alleges neither the purported implicit price of lopinavir nor anything about pharmaceutical costs generally or about Abbott's costs in particular remotely implying below-cost pricing.

In its opposition, Meijer attempts to remedy its complaint's deficiency by adding purported facts and context that supposedly support its conclusory below-cost allegation. But statements in an opposition to a motion to dismiss are no substitute for a lack of required allegations *in the complaint itself*. Moreover, Meijer's opposition only confirms the implausibility of the conclusory allegation in its complaint. It relies on Abbott documents to suggest that "Kaletra's *margins* (as a percentage of sales) hovered around 70% during the relevant time period (late 2003)." (Opp'n at 17 (emphasis added)). That is the *wrong* metric because the reference to "margins" accounts for fixed costs, which the Ninth Circuit specifically held are *not* to be included in the variable cost calculations that must be used when determining whether pricing is below cost. *Cascade*, 2008 WL 269506, at *18.

There is a reason Meijer stands alone in accusing Abbott of pricing below cost: there are no actual facts that could make the allegation plausible. Indeed, when affirming dismissal on the pleadings, the Seventh Circuit flatly rejected the notion that "the imputed price of Kaletra's lopinavir component [is below] the average variable cost of its manufacture." *Schor v. Abbott Labs.*, 457 F.3d

1

608, 611 (7th Cir. 2006). And Doe/SEIU, after years of discovery, have not accused Abbott of below-cost pricing. GSK, a party with intimate knowledge of pharmaceutical variable costs, also has not accused Abbott of below-cost pricing.

For its part, Meijer has pled no facts calling into question the widely known fact that the incremental cost of producing an additional pharmaceutical tablet is negligible compared to the cost of discovering and developing the active ingredient in the first place. Indeed, "tablets can be produced and distributed for pennies, while development of new drugs costs hundreds of millions of dollars."[1] Published opinions similarly recognize the low incremental costs of producing pharmaceuticals, including a Third Circuit case stating that Abbott's costs in making the Abbott drug, ethylsuccinate, is *four pennies* per tablet. *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 105 (3d Cir. 1992). Especially in this context, Meijer has failed to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that Abbott's incremental cost of producing lopinavir exceeds *$1.64* (*i.e.*, the absolute minimum implicit price of lopinavir under any possible calculation). *See Twombly*, 127 S. Ct. at 1965.

If there is any doubt on the point, Abbott respectfully suggests that the Court dismiss the Meijer complaint with leave to replead Counts 1 and 2 to allow it to attempt to allege actual facts that meet the *Twombly* plausibility standard. But, the reality is that – as many others have already recognized – Abbott is nowhere close to below-cost pricing for lopinavir under any possible calculation.

Count 3, alleging Boost*ing* Market monopolization, fares no better. According to Meijer's opposition brief, Abbott's purported "anticompetitive conduct" was charging "reasonable prices" for Norvir before December 3, 2003. (Opp'n at 19). Those "reasonable prices," coupled with Abbott's decision to grant competitors patent licenses, allegedly "lulled" competitors into *not* developing Norvir-alternatives. (Opp'n at 19 & n. 7). But "the antitrust laws do not condemn even a

---

[1] Richard G. Frank, *Government Commitment And Regulation Of Prescription Drugs*, Health Affairs 22:3, 46-48 (2003) ("Prescription Drugs"), http://content.healthaffairs.org/cgi/content/full/22/3/46 (citing DiMasi et al., *The Cost of New Drugs*, Journal of Health Economics 22:2, 151-186 (2003) and R.G. Frank, *The Cost of New Drugs* (editorial), Journal of Health Economics 22:2, 325–330 (2003)).

monopolist for offering its product at an attractive price." *United States v. Microsoft Corp.*, 253 F.3d 34, 68 (D.C. Cir. 2001). And patent licensing – one of the "essential rights of a patentee" – is also not exclusionary conduct under the antitrust laws. *United States v. Studiengesellschaft Kohle, m.b.H.*, 670 F.2d 1122, 1127 (D.C. Cir. 1981).

Meijer cites nothing to the contrary and, instead, relies primarily on *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). It argues that *Aspen Skiing* holds that a change in historically profitable conduct – such as the allegation that Abbott "changed course" by increasing the already "reasonable price" of Norvir – is sufficient to demonstrate exclusionary conduct under the Sherman Act. But that is not remotely what *Aspen Skiing* stands for, as the Supreme Court specifically held in *Verizon Communications., Inc., v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004). *Aspen Skiing* is a narrow refusal-to-deal case that has no possible relevance to Meijer's "reasonable price" theory of exclusionary conduct.

Because none of Meijer's claims plausibly entitles it to any relief, the complaint should be dismissed in its entirety.

## II.     ARGUMENT

### A.     Meijer's Summary Allegations Of Below-Cost Pricing Do Not State A Claim Under *Cascade*

As discussed in Abbott's omnibus motion to dismiss, Meijer's theory of liability for monopolization of the Boosted Market is controlled by *Cascade*, which requires a showing of below-cost pricing. In the most conclusory language with nothing in support, Meijer alleges below-cost pricing in paragraph 41 of its complaint. That bald allegation is insufficient to survive a motion to dismiss.

#### 1.     The Supreme Court Requires Meijer To Show A "Plausible Entitlement To Relief" At The Pleadings Stage

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court held that a plaintiff must allege facts sufficient to demonstrate a "plausible entitlement to relief." *Id.* at 1967. Particularly given the extraordinary costs required to litigate an antitrust case, the Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

3

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (alteration omitted). As Meijer readily admits, this standard thus requires a plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged antitrust violation]." (Opp'n at 10 (quoting *Twombly*, 127 S. Ct. at 1965)).

Meijer nonetheless argues that *Twombly* did not alter the basic rules governing Rule 12(b)(6) motions in antitrust cases. For this proposition, it quotes the Ninth Circuit's decision in *Silvas v. E*Trade Mortgage Corp.*, No. 06-55556, 2008 WL 239422 (9th Cir. Jan. 30, 2008). However, *Silvas* was not an antitrust case, did not turn on the sufficiency of the factual allegations in the complaint, and does not so much as cite *Twombly*, let alone purport to limit it. Rather, in the section on the standard of review, *Silvas* merely recites the pre-*Twombly* "no set of facts" pleading standard that the *Twombly* Court went to great lengths to "retire." *Id.* at *2. As the Supreme Court explained: "We could go on, but there is no need to pile up further citations to show that *Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement." *Twombly*, 127 S. Ct. at 1969.

Meijer also relies on *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), a case decided during the same term as *Twombly*, to suggest that the very Court that issued *Twombly* regarding the pleading standard in antitrust cases immediately recanted it. *Erickson*, however, involved a *pro se* prisoner plaintiff in a civil rights suit, not an antitrust case. *Erickson* in no way recanted *Twombly*, and indeed, turned on the less-stringent pleading standards afforded *pro se* litigants. *Erickson*, 127 S. Ct. at 2200.

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773 (7th Cir. 2007), another decision upon which Meijer relies, further confirms the import of *Twombly* on pleading requirements. *Concentra* explained that *Twombly* interpreted Federal Rule of Civil Procedure 8(a) to impose two separate requirements: (1) that the plaintiff describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, *and* (2) that the allegations "plausibly suggest that the plaintiff has a right to relief, raising the possibility above a 'speculative level.'" *Id.* at 776 (citing *Twombly*, 127 S. Ct. at 1965, 1973 n.14).

Meijer also attempts to excuse its failure to comply with the *Twombly* standard by asserting that the facts in question are purportedly "within the exclusive position and control of Abbott." (Opp'n at 14). But the dissenters in *Twombly* made precisely the same argument – that is, that the pleading standards should be relaxed when the facts in question are exclusively within the defendants' control. *Twombly*, 127 S. Ct. at 1983 (Stevens, J., dissenting). The *Twombly* Court, however, rejected that argument and affirmed dismissal under Rule 12(b)(6) because the Plaintiffs failed to allege specific facts to show that the allegation of an antitrust conspiracy was "plausible" and to show a "reasonable expectation that discovery" would confirm that allegation. *Id*. at 1965.

Regardless of whether the Supreme Court considers *Twombly* as imposing a heightened pleading standard or simply reaffirming an existing one, its holding is clear: the complaint must contain sufficient factual allegations to make the plaintiff's claim not just possible but also plausible. *Id*. Even before *Twombly*, courts dismissed antitrust claims, including alleged below-cost pricing, for failing to allege anything beyond a formulaic parroting of the claim elements. As *Twombly* explains, "[w]ithout some factual allegations in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. at 1965 n.3; *see also Tri-State Rubbish v. Waste Mgmt.*, 998 F.2d 1073, 1080 (1st Cir. 1993) ("[A] complaint that did no more than allege predatory pricing or exclusive dealing contracts with *nothing* more specific might well be susceptible to dismissal for failure to state a claim."); *Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, CV 07-00043 MMM, 2007 U.S. Dist. LEXIS 89946, *17, *67 (C.D. Cal. Oct. 29, 2007) (citing *Cascade* and dismissing antitrust claim with prejudice where "complaint does not allege sufficient factual detail to state a claim"); *United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 401 (S.D.N.Y. 2001) ("[W]here the facts alleged in a complaint demonstrate that an alleged predatory pricing conspiracy makes no economic sense, the cause of action must be dismissed."); *Taggart v. Rutledge*, 657 F. Supp. 1420, 1437 (D. Mont. 1987) ("Plaintiffs have not even mentioned Rutledge's costs, must less determined his average variable costs or marginal costs. . . . These allegations clearly are insufficient to support a claim of predatory pricing.").

Meijer also argues that, if discovery shows their complaint to be unwarranted, it can be

5

dismissed at a later stage in the litigation. But, the Supreme Court rejected that same argument in *Twombly*: "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management,' given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side." *Id*. at 1967 (citation omitted).

### 2. Meijer Has Not Plausibly Alleged That Abbott's Incremental Cost Of Producing The Lopinavir Component Of Kaletra Exceeds $1.64.

Meijer has failed to meet the *Twombly* standard because, admittedly, it has failed to allege anything in support of its bare below-cost allegation. Under *Twombly*, that allegation is nowhere enough to embark on an enormously expensive antitrust case.

On its face, Meijer's conclusory below-cost pricing allegation is wholly implausible. Using pricing information Meijer concedes is incorporated in its consolidated amended complaint (Opp'n at 12), Abbott demonstrated in its opening brief that the imputed, or "effective," price for the lopinavir portion of Kaletra in 2003 was $1.64 at the very minimum under any possible calculation. (*See* Mot. at 6). Meijer neither pleads facts that would support a lower imputed price, nor facts that would make "plausible" the idea that the incremental cost of producing lopinavir is above at least $1.64, nor "enough fact[s] to raise a reasonable expectation" that discovery will show that the incremental cost is above $1.64. *Twombly*, 127 S. Ct. at 1965. The Meijer complaint offers literally nothing whatsoever beyond a conclusory allegation of below-cost pricing. That ends the analysis under *Twombly*.

Meijer's attempt to add facts in their opposition changes nothing. This is true for the threshold reason that absent judicial notice, "[b]ecause Rule 12(b)(6) review is confined to the complaint, the court may not consider material outside the pleading (e.g., facts presented in briefs, affidavits, or discovery materials)." *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001).

It is also true because Meijer's efforts in its opposition only confirm the implausibility of its below-cost pricing suggestion. Meijer ignores that *Cascade's* focus is the "*incremental*" cost of producing an extra unit, meaning that costs that do not increase when producing that extra unit (that

6

is, fixed costs) are not included in the calculation. *Cascade*, 2008 WL 269506, at *18. *Cascade* specifically holds that the relevant "incremental" costs should be measured by "average variable costs." *Id.* In support, the Ninth Circuit cited the Fifth Circuit's decision in *Stearns Airport Equipment Co. v. FMC Corp.*, 170 F.3d 518, 532 (5th Cir. 1999), which explains the distinction between variable and fixed costs:

> In this analysis, we attempt to distinguish between costs that are fixed – at least over the short term – and costs that vary with the amount produced. Thus salaried labor costs, rent or depreciation on real estate, and certain capital expenses are considered fixed. But inputs like hourly labor, the cost of materials, transport, and electrical consumption at a plant will vary, and are relevant to a predation inquiry.

*Id.* (citation omitted).

It is widely recognized that the pharmaceutical industry has "low marginal cost and high fixed cost." *See* Prescription Drugs, *supra* note 1. Indeed, "[m]any of the costs of a new drug are incurred before manufacturing for sale begins – costs of research, of development, of obtaining patents, of obtaining FDA approval, and so forth." *In re Brand Name Prescription Drugs Antitrust Litig.*, 288 F.3d 1028, 1030 (7th Cir. 2002). Thus, when eliminating pharmaceutical costs that do not vary "over the short term" with the "amount produced" – huge fixed costs including the cost of manufacturing facilities and the salaried work force supporting the franchise – the "average variable costs" of producing a pharmaceutical tablet are negligible. *Stearns*, 170 F.3d at 532. This reality led the Seventh Circuit to state – based on common knowledge alone – that "[e]ven if the ritonavir component of Kaletra were deemed to cost the same (per milligram) as ritonavir sold as Norvir, the imputed price of Kaletra's lopinavir component would be above the average variable cost of its manufacture." *Schor v. Abbott Labs.*, 457 F.3d 608, 611 (7th Cir. 2006); *see also, e.g., Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 105 (3d Cir. 1992) (stating in an antitrust case that "Abbott's cost is $4.20 per 100 tablets" of ethylsuccinate 400 mg – a cost just over *four cents* per tablet).

Even in its opposition, Meijer presents no facts calling into question the general structure of the pharmaceutical industry in this particular situation. Meijer's *sole* defense of its conclusory

7

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

below-cost pricing allegation is its focus on Abbott's supposed 70% "margins" for the bundled product Kaletra. (Opp'n at 16-17). It argues that "Abbott's own documents" – which are not incorporated into the complaint – "appear to show that Kaletra's *margins (as a percentage of sales)* hovered around 70% during the relevant time period." (*Id*. at 17 (emphasis added)). According to Meijer, a 70% margin "means that . . . Abbott's average variable costs for *Kaletra* exceeded $5." (*Id*. (emphasis added)).

That is flatly incorrect. Meijer incorrectly focuses on "margins" to calculate Abbott's variable costs – a calculation that compares apples to oranges. The term "margins" refers to net revenue a company makes after subtracting that company's total *variable* and *fixed* costs from sales revenues. *See, e.g.*, *Nintendo of Am. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1035 (9th Cir. 1994); *In re Nokia Corp. Sec. Litig.*, No. 96 Civ. 3752 (DC), 1998 WL 15096, *9-10 (S.D.N.Y. Apr. 1, 1998). "The total of the costs and the profit margin is the price." *Tenneco, Inc. v. United States*, 17 Cl. Ct. 345, 347 (Ct. Cl. 1989). As the Ninth Circuit in *Cascade* made clear, however, the proper focus of the below-cost inquiry is not on total costs, but only on "*variable* costs" – the "costs that change with the amount of output." *Cascade*, 2008 WL 269506, at *18 (emphasis added).

In short, "margins" and total costs are not the relevant inquiry (nor is the entire bundled product, Kaletra, rather than just the lopinavir portion of the bundle). Meijer's focus on purported Kaletra margins only confirms that Meijer has no basis on which to amend its complaint to allege specific facts sufficient to meet the *Twombly* standard for a below-cost allegation. Because Meijer's complaint does not allege any facts that would make a suggestion of below-cost pricing plausible, it must be dismissed.

**B. Meijer's Unprecedented Allegations That Abbott Monopolized The Boosting Market Also Fail To State A Claim**

Even though many parties have litigated the Norvir price increase for four years, Meijer crafts a brand new theory of antitrust liability focused not on the Boosted Market, but on the Boost*ing* Market. In its opening brief, Abbott made the rather obvious point that Abbott has a patent on the only drug in the Boosting Market, *i.e.*, Norvir. Accordingly, as the Court is well aware, Abbott "can, of course, charge such price as [it] may choose" for that drug. *Monsanto Co. v.*

8

*McFarling*, 302 F.3d 1291, 1299 (Fed. Cir. 2002) (citation omitted).

In response, Meijer argues that Abbott unlawfully maintained its patent monopoly over the Boosting Market by "lulling" competitors into opting against developing Norvir alternatives through (a) "reasonable price[s]" before the December 2003 Norvir price increase and (b) license agreements to the patents over Norvir. (Opp'n at 19). Specifically, Meijer asserts that Abbott misled competitors "through Abbott's well-established course of selling Norvir *at a reasonable price*, and licensing for co-promotion to manufacturers of boosted protease inhibitors, and then reversing course with its massive price increase." (*Id*. at 19 (emphasis added)). The effect of Abbott's "reasonable price" for Norvir, according to Meijer, was to stifle competition by fooling competitors into delaying development of rival boosting drugs and/or PIs that required a smaller dosage of Norvir. (*See id*. at 20-21).

Even if Meijer had alleged a plausible basis under *Twombly* for *any* delayed development by *any* competitor – which it does not – these allegations as a matter of law do not state a claim for exclusionary conduct. "The rare case of price predation aside, the antitrust laws do not condemn even a monopolist for offering its product at an attractive price." *United States v. Microsoft Corp.*, 253 F.3d 34, 68 (D.C. Cir. 2001). In fact, the Ninth Circuit in *United States v. Syufy Enterprises*, 903 F.2d 659 (9th Cir. 1990), flatly rejected the notion that unlawful monopolization occurs when a defendant "offer[s] a better product at a lower price." *Id*. at 663. The Court explained: "When a producer deters competitors by supplying a better product at a lower price, when he eschews monopoly profits . . ., *the goals of competition are served*, even if no actual competitors see fit to enter the market at a particular time." *Id*. at 668 (emphasis added). The Court added: "If a dominant supplier acts consistent with a competitive market – out of fear perhaps that potential competitors are ready and able to step in – *the purpose of the antitrust laws is amply served*." *Id*. at 668-69 (emphasis added); *see also Olympia Equip. Leasing Co. v. Western Union Tel. Co.*, 797 F.2d 370, 373 (7th Cir. 1986) ("[A]s the emphasis of antitrust policy shifted from the protection of competition as a process of rivalry to the protection of competition as a means of promoting economic efficiency, it became recognized that the lawful monopolist should be free to compete like everyone else; otherwise the antitrust laws would be holding an umbrella over inefficient

9

competitors.").

None of the other alleged conduct at issue – that of licensing Norvir for co-promotion, of "secretly plotting to change its established course of dealing," and of failing to disclose plans for increasing prices – constitutes exclusionary conduct. First, a patent holder's grant of a license for a patent does not violate the antitrust laws. To the contrary, licensing increases competition; it does not decrease competition. Further, one of the "essential rights of a patentee" is the right "to license others." *United States v. Studiengesellschaft Kohle, m.b.H.*, 670 F.2d 1122, 1127 (D.C. Cir. 1981). "The right to license [a] patent, exclusively or otherwise, or to refuse to license at all, is 'the untrammeled right' of the patentee." *United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 647 (9th Cir. 1981) (citation omitted).

Second, the allegations that Abbott was "secretly plotting" to change the price of Norvir and considered taking Norvir off of the market are irrelevant. Even if such allegations supported an *intent* element of monopolization, it is clear that exclusionary *conduct* is also necessary to state a claim under section 2 of the Sherman Act. As the Supreme Court put it: "To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (emphasis in original). Again, Meijer does not and cannot allege that the December 2003 Norvir price increase monopolized the Boosting Market. And Meijer does not and cannot allege that Abbott actually removed Norvir from the market (which would not, in any event, be an act of monopolization in that market). Accordingly, the amended complaint's allegations concerning Abbott's internal consideration of its Norvir pricing and distribution strategy are irrelevant.

Third, and relatedly, there is no duty under the antitrust laws to pre-disclose confidential and propriety pricing plans to competitors. *Cf. Berkey Photo v. Eastman Kodak Co.*, 603 F.2d 263, 281 (2d Cir. 1979) ("We hold that . . . , as a matter of law, Kodak did not have a duty to predisclose information about [a new product] to competing camera manufacturers."); *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1228 (S.D.N.Y. 1981). On the contrary, as the Ninth Circuit has held, advanced announcements of pricing changes to competitors may be evidence of price fixing.

10

1  *In re Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 445-50 (9th Cir. 1990).

2  Finally, Meijer is wrong to rely on *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472
3  U.S. 585 (1985), and *Image Technical Services., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir.
4  1997). While Meijer says that these cases proscribe the "exact type of conduct" at issue (Opp'n at
5  19), they are in fact, refusal-to-deal cases that did not concern pricing decisions of any sort. This
6  Court already has found *Aspen Skiing* "inapposite" to the Norvir cases for this very reason: "*Aspen
7  Skiing Co.*, involving a defendant's refusal to cooperate with its smaller rival, is inapposite. This is
8  not a failure to deal, or failure to cooperate, case." *In re Abbott Labs. Norvir Antitrust Litig.*, 442 F.
9  Supp. 2d 800, 807 (N.D. Cal. 2006).

10  At pages 11-13 of Abbott's reply brief in support of its Omnibus Motion To Dismiss based
11  on *Cascade*, Abbott fully explains *Aspen Skiing*'s narrow holding, which is inapplicable to Meijer's
12  theory. (Abbott's Omnibus Reply, at 11-13). To briefly recap, the Supreme Court in *Verizon* held
13  that *Aspen Skiing* is a limited exception to the general "no duty to deal" rule "at or near the outer
14  boundary of § 2 liability," which turned on two critical aspects of the defendant's conduct: (1) the
15  defendant "turned down a proposal to sell at its own retail price, suggesting a calculation that its
16  future monopoly retail price would be higher;" and (2) the defendant voluntarily terminated a course
17  of dealing that, under the circumstances, suggested it was forsaking short-term profits to achieve an
18  anticompetitive end. *Verizon Comms., Inc.*, 540 U.S. at 409. The Ninth Circuit similarly recognizes
19  these two factors as critical to invoking the narrow *Aspen Skiing* exception to the "no duty to deal"
20  rule. *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1131-32 (9th Cir. 2004).

21  Here, Meijer does not attempt to allege either factor. There is no alleged refusal to deal, no
22  refusal to deal with competitors on terms available to others, and no alleged forsaking of short-term
23  profits for long-term gain. On the contrary, Meijer is complaining that Abbott was *freely* dealing by
24  selling at "reasonable prices" while licensing followed by an effort to *increase* profits through a
25  price increase on a patented product. Thus, *Aspen Skiing* is inapplicable. Because Meijer fails to
26  allege any exclusionary conduct under the law, its complaint should be dismissed under Rule
27  12(b)(6).

28

## III. CONCLUSION

For the reasons set forth above, and in Abbott's memorandum in support of its motion to dismiss, this Court should dismiss all three counts in the Meijer Plaintiffs' Consolidated Amended Complaint with prejudice.

Dated: February 21, 2008                WINSTON & STRAWN LLP


By:  /s/ James F. Hurst
     James F. Hurst
     Attorneys for Defendant
     ABBOTT LABORATORIES

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

12
ABBOTT LABORATORIES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT PURSUANT TO 12(b)(6), CASE NOS. C 07-5985 CW, C 07-6010 CW, C 07-6118 CW