Nicole M. Norris (SBN 222785)
WINSTON & STRAWN LLP
101 California Street, Suite 3900
San Francisco, CA  94111-5894
Telephone:    415-591-1000
Facsimile:    415-591-1400
Email: nnorris@winston.com

James F. Hurst (*Admitted Pro Hac Vice*)
David J. Doyle (*Admitted Pro Hac Vice*)
Samuel S. Park (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone:    312-558-5600
Facsimile:    312-558-5700
Email: jhurst@winston.com; ddoyle@winston.com;
spark@winston.com

Charles B. Klein (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20007
Telephone:    202-282-5000
Facsimile:    202-282-5100
Email: cklein@winston.com

Attorneys for Defendant
ABBOTT LABORATORIES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND**

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ABBOTT LABORATORIES,<br><br>        Defendant.<br><br>[caption continues next page] | **Case No. C 07-5985 CW**<br><br>*Related by Order to:*<br><br>*Case No. C 04-1511 CW*<br><br>**ABBOTT LABORATORIES' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES**<br><br>Date:  June 5, 2008<br>Time:  2:00 p.m.<br>Courtroom 2<br><br>The Honorable Judge Wilken |

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

**Winston & Strawn LLP**
**35 W. Wacker Drive**
**Chicago, IL 60601-9703**

| | | |
|---|---|---|
| 1 | ROCHESTER DRUG CO-OPERATIVE, INC., ) on behalf of itself and all others similarly situated, | **Case No. C 07-6010 CW** |
| 2 | ) | *Related by Order to:* |
| 3 | Plaintiffs,                                    ) | *Case No. C 04-1511 CW* |
| 4 | vs.                                         ) | **ABBOTT LABORATORIES' MOTION TO COMPEL PRODUCTION OF** |
| 5 | ABBOTT LABORATORIES,                ) | **DOCUMENTS AND INTERROGATORY RESPONSES** |
| 6 | Defendant.                            ) | |
| 7 | ) | Date:  June 5, 2008<br>Time:  2:00 p.m.<br>Courtroom 2 |
| 8 | ) | |
| 9 | ) | The Honorable Judge Wilken |

1   ROCHESTER DRUG CO-OPERATIVE, INC., )   **Case No. C 07-6010 CW**
    on behalf of itself and all others similarly )
2   situated,                                     )   *Related by Order to:*
                                                  )
3                     Plaintiffs,                 )   *Case No. C 04-1511 CW*
                                                  )
4              vs.                                )   **ABBOTT LABORATORIES' MOTION TO**
                                                  )   **COMPEL PRODUCTION OF**
5   ABBOTT LABORATORIES,                          )   **DOCUMENTS AND INTERROGATORY**
                                                  )   **RESPONSES**
6                     Defendant.                  )
                                                  )   Date:  June 5, 2008
7                                                 )   Time:  2:00 p.m.
                                                  )   Courtroom 2
8                                                 )
                                                  )   The Honorable Judge Wilken
9
10  LOUISIANA WHOLESALE DRUG              )        **Case No. C 07-6118 CW**
    COMPANY, INC., on behalf of itself and all )
11  others similarly situated,                )   *Related by Order to:*
                                                  )
12                    Plaintiffs,                 )   *Case No. C 04-1511 CW*
                                                  )
13             vs.                                )   **ABBOTT LABORATORIES' MOTION TO**
                                                  )   **COMPEL PRODUCTION OF**
14  ABBOTT LABORATORIES,                          )   **DOCUMENTS AND INTERROGATORY**
                                                  )   **RESPONSES**
15                    Defendant.                  )
                                                      Date:  June 5, 2008
16                                                    Time:  2:00 p.m.
                                                      Courtroom 2
17  _____    **The Honorable Judge Wilken**

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

NOTICE OF MOTION................................................................................................1

I.      INTRODUCTION ..........................................................................................1

II.     BACKGROUND ............................................................................................2

III.    ARGUMENT ..................................................................................................9

        A.      Legal Standard for Motion to Compel ...............................................9

        B.      Abbott Is Entitled To Discovery Relevant To Whether The Class
                Representatives Can Fairly And Adequately Protect The Interests Of
                The Class...........................................................................................10

        C.      The Requested Discovery Is Relevant To Whether The Class
                Representatives Can Fairly And Adequately Protect The Interests Of
                The Class...........................................................................................12

        D.      Abbott's requests satisfy the proportionality requirements of Rule
                26(b)(2)(C).......................................................................................16

IV.     CONCLUSION.............................................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Winston & Strawn LLP**
**35 W. Wacker Drive**
**Chicago, IL 60601-9703**

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007) ..................................................................1, 14, 15

4

*Alperin v. Vatican Bank*, 410 F.3d 532 (9th Cir. 2005) .......................................9

5

*Amchen Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................10, 11

6

*Arnold v. United Artists Theatre Circuit*, 158 F.R.D. 439 (N.D. Cal. 1994)....................10

7

*Babbitt v. Albertson's, Inc.*, No. C-92-1883, 1992 WL 605652 (N.D. Cal.
    Nov. 30, 1992) ..................................................................................................10

8

9

*Bishop v. Committee on Prof'l Ethics*, 686 F.2d 1278 (8th Cir. 1982) .............11

10

*Crawford v. Honig*, 37 F.3d 485 (9th Cir. 1995) ................................................10

11

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007).................................11

12

*Fisher v. National R.R. Passenger Corp.*, 152 F.R.D. 145 (S.D. Ind. 1993)....................16

13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...............................11

14

*Hansberry v. Lee*, 311 U.S. 32 (1940) ........................................................10, 11

15

*Hickman v. Taylor*, 329 U.S. 495 (1947) ...........................................................9

16

*Honolulu Federal Sav. & Loan Association v. Verex Assurance, Inc.*,
    116 F.R.D. 474..................................................................................................11

17

18

*In Re Hypodermic Product Direct Purchaser Antitrust Litigation*, Nos.
    05-CV-1602 and 05-CV-4465, 2006 U.S.Dist. LEXIS 89353
    (D.N.J. Sept. 7, 2006) ......................................................................................15

19

*Johnson v. Shreveport Garment Co.*, 422 F.Supp. 526 (W.D. La. 1976)........................11

20

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293
    (D.D.C. 2007) ..................................................................................................15

21

22

*Natchitoches Parish Hospital Service District v. Tyco International, Ltd.*,
    247 F.R.D. 253 (D. Mass. 2008)......................................................................15

23

*Plekowski v. Ralston Purina*, 68 F.R.D. 443 (M.D. Ga. 1975)..........................11

24

*In re Pressure Sensitive Labelstock Antitrust Litigation*, 226 F.R.D. 492
    (M.D. Pa. 2005) ................................................................................................16

25

26

*Sullivan v. Kelly Services*, No. C-07-2784, 2008 U.S.Dist. LEXIS 29318
    (N.D. Cal.
    Mar. 4, 2008)....................................................................................................10

27

28

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

*In re Urethane Antitrust Litigation*, 237 F.R.D. 454 (D. Kan. 2006) ............................1, 15

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181
    (11th Cir. 2003)....................................................................................... *passim*

*In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124 (2d Cir.
    2001) .........................................................................................................11

### DOCKETED CASES

*In re Wellbutrin SR Direct Purchaser Antitrust Litigation*, No. 04-5525
    (E.D. Pa. May 2, 2008) ............................................................................15

### FEDERAL STATUTES

Fed. R. Civ. P. 23(a) .........................................................................................10

Fed. R. Civ. P. 26(b) ...............................................................................9, 16, 17

Fed. R. Civ. P. 26(c) .........................................................................................10

Fed. R. Civ. P. 37(a) .........................................................................................10

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

**NOTICE OF MOTION**

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on June 5, 2008 at 2:00 p.m.,[1] or as soon thereafter as the matter may be heard in Courtroom 2, before the Honorable Claudia Wilken, in the United States District Court for the Northern District of California, Oakland Division, defendant Abbott Laboratories will move this Court pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order compelling Plaintiffs Meijer Inc., Meijer Distribution Inc., Rochester Drug Co-Operative, Inc., and Louisiana Wholesale Drug Company, Inc. ("Plaintiffs") to produce certain documents and provide answers to certain interrogatories.   This motion is supported by the accompanying Memorandum of Points and Authorities and Declaration of Joel Hay, Ph.D, and such other argument and evidence as may be presented at the hearing on the motion.

# I.      INTRODUCTION

In this putative direct purchaser class action, Abbott seeks discovery concerning the extent to which there is a fundamental conflict between the proposed class members and other members of the putative direct purchaser class—a conflict that precludes certification of the class.   Abbott has requested, and plaintiffs have refused to provide, documents and answers to interrogatories relating to whether some of the proposed class members actually benefited from some of the very conduct that the named plaintiffs claim was anticompetitive—namely, Abbott's increases in the prices of Norvir and Kaletra.

Several courts have held—one in remarkably similar circumstances—that such information is discoverable because it is directly relevant to whether class certification is appropriate.   *See, e.g.,* *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*, 247 F.R.D. 156 (C.D. Cal. 2007); *In re Urethane Antitrust Litigation*, 237 F.R.D. 454 (D. Kan. 2006).   Accordingly, this Court should

---

[1] As described in the Stipulated Briefing Schedule and [Proposed] Order for Defendant's Motion to Compel Discovery, Docket No. 68, the parties have agreed to an expedited briefing schedule for this motion.   Pursuant to that schedule, plaintiffs' opposition is due May 23, 2008, and Abbott's reply is due May 30, 2008.   The parties respectfully request a telephonic hearing on the motion on June 5, 2008, at 2 p.m., or at a date and time of the Court's earliest convenience following the completion of briefing on the motion.

CASE NOS. C 07-5985, C 07-6010, C 07-6118 - ABBOTT LABORATORIES' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

1  compel plaintiffs to produce documents responsive to Abbott's requests and answer its

2  interrogatories seeking this information.

3  **II.    BACKGROUND**

4      Plaintiffs seek to represent a class consisting of "[a]ll persons or entities in the United States

5  that purchased Norvir and/or Kaletra directly from Abbott or any of its divisions, subsidiaries,

6  predecessors, or affiliates during the period from December 3, 2003 through such time as the effects

7  of Abbott's illegal conduct have ceased, and excluding governmental entities, Abbott, and Abbott's

8  divisions, subsidiaries, predecessors and affiliates." (Consolidated Am. Compl., ¶ 47). The

9  Consolidated Amended Complaint alleges, among other things, that "Plaintiffs will fairly and

10  adequately protect and represent the interests of the Class," and that "[t]he interests of the Plaintiffs

11  are not antagonistic to the Class." (*Id*. at ¶ 51).

12      To test the sufficiency of plaintiffs' class action allegations and the propriety of class

13  treatment here, Abbott has sought discovery from plaintiffs of documents and information directly

14  relating to whether there is a potential conflict of interest between or among members of the

15  proposed class. Specifically, Abbott seeks information to demonstrate that some direct purchasers

16  actually benefited from Abbott's increases in the prices of Norvir and/or Kaletra, and thus, this

17  litigation runs contrary to their financial interests.

18      As discussed in more depth in the Declaration of Joel Hay, Ph.D. (hereinafter "Hay Decl."

19  filed concurrently with this motion), Abbott has reason to believe that certain wholesaler members of

20  the proposed class have benefited from the increases in the prices of Norvir and Kaletra in at least

21  two ways. First, some wholesalers sell Norvir and Kaletra to pharmacies and other retailers on a

22  cost-plus basis. Cost-plus pricing means that these wholesalers charge their customers their

23  wholesale acquisition costs ("WAC") plus a set percentage mark-up (*i.e.* their profit margin). (Hay

24  Decl., ¶ 11). Because their profit margins increase proportionally with the increase in their

25  acquisition costs, these wholesalers stand to benefit—and, in fact, did benefit—from the increases in

26  the prices Abbott charged for Norvir and Kaletra. (*Id*. ¶ 12). Second, some wholesalers also profit

27  in other ways from higher prices, including from the interest (or, "float") they earn on the difference

28  between their accounts receivable from their buyers and the accounts payable from their suppliers.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

2

CASE NOS. C 07-5985, C 07-6010, C 07-6118 - ABBOTT LABORATORIES' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

1    (*Id.* ¶¶ 17-18).  As Prof. Hay explains, large wholesalers with substantial volume of sales can earn

2    significant profits from the "float," and higher prices can increase these profits considerably.  (*Id.*

3    ¶¶ 23-24).

4          Given that demand for HIV drugs like Norvir and Kaletra is very inelastic, the increased

5    profits resulting from the increases in the prices of Norvir and Kaletra were not offset by decreases

6    in the volume of sales.  (*Id.* ¶¶ 19-24).  Accordingly, some wholesalers have likely received a

7    significant net economic benefit from the conduct that plaintiffs allege is anticompetitive.

8          Abbott's belief is corroborated by plaintiffs' expert in the related *Doe/SEIU* cases, Prof.

9    Douglas F. Greer.  Prof. Greer opined in his September 26, 2007 expert report in the *Doe/SEIU*

10   litigation that the "all of Abbott's overcharges on Norvir were passed through to health insurers,

11   patients, and other [indirect purchaser] class members who in the end paid the higher prices."

12   (Declaration of Charles B. Klein, Ex. A ¶ 232) (hereinafter "Klein Decl.").  In support of his

13   opinion, he analyzed, among other things, data provided by AmerisourceBergen, one of the largest

14   drug wholesalers in the United States.  That data showed, according to Prof. Greer, that

15   "AmerisourceBergen's prices to retail buyers reflect the 400% price increase exactly."  (*Id.* ¶ 233).

16         Because of significant differences among putative class members, there is likely a significant

17   disparity in the extent to which each putative class member has profited, if at all, from the increases

18   in the prices of Norvir and Kaletra.  (Hay Decl., ¶¶ 14-16).  The three largest wholesalers, Cardinal

19   Health ("Cardinal"), McKesson Corporation ("McKesson"), and AmerisourceBergen, accounted for

20   over 80% of all purchases of Norvir and Kaletra between 2004 and 2007.  (*Id.* ¶ 14).  These national

21   wholesalers price to pharmacies and other retailers on a cost-plus basis and have more sophisticated

22   accounting systems that allow them to profit from the "float."  *Id.*  In contrast, the three putative

23   class representatives are small regional wholesalers that collectively accounted for only 0.6% of

24   Norvir purchases and only 0.5% of Kaletra purchases.  (*Id.* ¶ 15).  The proposed class also includes

25   not just wholesalers, but also national and regional pharmacies, single-store pharmacies,

26   internet/mail-order pharmacies, and hospitals.  (*Id.* ¶ 16).  These entities likely face very different

27   competitive conditions and, thus, differ substantially in their ability to pass-through price increases

28   to their customers.  (*Id.*)

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

CASE NOS. C 07-5985, C 07-6010, C 07-6118 - ABBOTT LABORATORIES' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

1    In order to obtain discovery on these and other important issues, Abbott served

2  interrogatories and document requests upon plaintiffs on March 3, 2008. Abbott narrowly tailored

3  some of these discovery requests to obtain information relating to "downstream" sales—that is, sales

4  by the putative class representatives to their customers, such as pharmacies and group purchasing

5  organizations. For example, one of Abbott's interrogatories sought, among other things, information

6  concerning the price that putative class members paid for anti-retroviral ("ARV") drugs,[2] such as

7  Norvir and Kaletra, the price at which putative class members sold those drugs to consumers,

8  pharmacies, and retailers, and the amount of any payments or reimbursements received from such a

9  sale. (Klein Decl., Ex. B at Interrog. No. 3). Abbott's document requests sought related documents,

10  including documents concerning the amount of any payments or reimbursements received by each

11  putative class member in connection with the sale of ARV drugs, (*see id.*, Ex. C at Req. No. 17);

12  documents relating to any discounts or rebates provided by each putative class member to patients or

13  individuals who have been prescribed ARV drugs, (*see id.*, Req. No. 24); and documents reflecting

14  any additional costs incurred, by each putative class member or by the putative class as a whole, as a

15  result or consequence of the Norvir price increase on December 3, 2003, (*see id.*, Req. No. 25).

16    As Prof. Hay explains in more detail in his declaration, these requests seek information that

17  would aid in assessing more precisely the fundamental economic conflict between purported class

18  members. (Hay Decl., ¶¶ 28-29). Specifically, transaction-level sales data for sales of Norvir,

19  Kaletra, Lexiva, and Reyataz—which is similar to the sales data Abbott has already produced to the

20  plaintiffs—could be used to determine the effect of the Norvir and Kaletra price increases on the

21  profitability of the putative class representatives. (*Id.*) In addition, documents describing the pricing

22  strategies and pricing formulas used by the putative class representatives to determine prices of ARV

23  drugs could provide information as to whether they set prices for those drugs in such a way that they

24  would profit from an increase in the prices of Norvir and Kaletra. (*Id.*)

25

26

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

27
28

---

[2] For purposes of this motion only, Abbott's request for ARV drugs is limited to Norvir, Kaletra, Reyataz and Lexiva. Abbott reserves the right to seek information concerning other ARV drugs that is relevant to other issues in this case (*e.g.*, the definition of the relevant market).

CASE NOS. C 07-5985, C 07-6010, C 07-6118 - ABBOTT LABORATORIES' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

On April 7, 2008, Plaintiffs served their responses to Abbott's interrogatories and document requests. Rather than agree to produce this information, plaintiffs objected generally to Abbott's requests for "downstream sales" information, stating:

> "Plaintiffs object to these requests to the extent they request documents or information concerning downstream sales and/or the resale of pharmaceutical products below the manufacturer level, which is not relevant, nor reasonably calculated to lead to the discovery of admissible evidence. Because Plaintiffs have alleged an overcharge theory of damages and are not seeking any damages relating to lost profits, any sales, profit, loss, or other 'downstream' information is not relevant to this case. *See Hanover Shoe v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977); and *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199 (1990)."[3]

(Klein Decl., Ex. B at Gen. Obj. No. 10, Ex. C at Gen. Obj. No. 13).

In addition, plaintiffs specifically objected to Abbott's interrogatory seeking information on the prices at which putative class members sold Norvir, Kaletra and other ARV drugs:

**INTERROGATORY NO. 3:**

For each Putative Class member identified in Interrogatory No. 2 above, please describe in detail and quantify the injuries each suffered as a result of Abbott's allegedly exclusionary, anticompetitive, and/or predatory conduct and include in your answer a description of (i) all ARV Drugs, including PIs, that the putative Class member has purchased or paid or since 2003; (ii) the dates of each such purchase or payment; (iii) the entity from which the Putative Class member purchased and/or to which the Putative class member paid for such ARV Drugs; (iv) the prices that the Putative Class member paid for such ARV Drugs; (v) the price at which the Putative Class member sold such ARV Drugs to consumers, pharmacies, other retailers,

---

[3] Pursuant to Local Civil Rule 37-2, Abbott "set[s] forth each request in full, followed immediately by the objections and/or responses thereto."

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

distributors, or any other entities or persons; and (vi) the amount of any payments or reimbursements the Putative Class member received for the sale of such ARV Drugs.

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to their general objections, Plaintiffs further object to this interrogatory as premature and harassing to the extent it calls for information substantially in the exclusive possession of Defendant. This request is also objectionable to the extent it calls for expert analysis and testimony. Plaintiffs further object to this request to the extent it calls for discovery from absent members of the proposed class. This request is overbroad to the extent it relates to drugs outside of the relevant market. Plaintiffs object to this request to the extent it requests information concerning the resale of pharmaceutical products below the manufacturer level, which is not relevant, nor reasonably calculated to lead to the discovery of admissible evidence. Because Plaintiffs have alleged an overcharge theory of damages and are not seeking any damages relating to lost profits, any sales, profit, loss, or other "downstream" information is not relevant to this case. Subject to and without waiving these objections, Plaintiffs' injuries are in the form of overcharges, that is, the amount by which Plaintiffs paid more for Norvir and Kaletra than they otherwise would have paid absent Defendant's illegal conduct. All Members of the proposed class incurred the same injury. The extent of injury will be computed by economists and/or other experts based, in part, on data from Defendant.

(*Id.,* Ex. B, Interrog. Resp. No. 3).

Plaintiffs' similarly objected in the following manner to Abbott's requests for documents concerning whether certain putative class members benefited from the alleged anticompetitive conduct:

**REQUEST NO. 17:**

All documents concerning the amount of any payments, co-payments, or reimbursements received by, and any discounts given or rebates paid by, each putative class member in connection with the sale of such ARV Drugs.

**RESPONSE TO REQUEST NO. 17:**

In addition to their general objections, Plaintiffs object to this request on the grounds that it is vague and ambiguous. Plaintiffs specifically object to this request as overbroad in that it relates to drugs outside of the relevant market. Plaintiffs also object to this request as unduly burdensome, harassing, and not calculated to lead to the discovery of admissible evidence to the extent it seeks the production of information from the Class Representatives relating to drugs other than Norvir and Kaletra, because, among other reasons, data of this kind from individual market actors is not relevant to any claim or defense in this matter and because usable market-wide information is available only from other sources, including Defendant's own documents and transactional sales data, market wide sales and pricing data from other manufacturers, and publicly and commercially available third-party databases. Plaintiffs also object to this request to the extent it calls for discovery from absent class members and/or documents not in the possession, custody, or control of Plaintiffs. Furthermore, this request is objectionable on the grounds that it requests documents or information concerning the resale of pharmaceutical products below the manufacturer level, which are not relevant, nor reasonably calculated to lead to the discovery of admissible evidence. Because Plaintiffs have alleged an overcharge theory of damages and are not seeking any damages relating to lost profits, any sales, profit, loss, or other "downstream" information is not relevant to this case.

*       *       *

**REQUEST NO. 24:**

All documents concerning any discounts or rebates provided by each putative class member to patients or individuals who have been prescribed ARV drugs, and any donations or contributions made by each putative class member to charitable or other organizations providing services to patients or individuals who have been prescribed ARV drugs.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

**RESPONSE TO REQUEST NO. 24:**

In addition to their general objections, Plaintiffs, object to this request on the grounds that it is ambiguous, compound, unduly burdensome, and is not reasonable calculated to lead to the discovery of admissible evidence.  Plaintiffs also object to the terms "donations or contributions," and "charitable or other organizations" as vague. Plaintiffs specifically object to this request as overbroad to the extent it encompasses drugs outside of the relevant market.  Plaintiffs also object to this request to the extent it calls for discovery from absent class members and/or documents not in the possession, custody, or control of Plaintiffs.  This request is also objectionable on the grounds that it requests documents or information concerning the resale of pharmaceutical products below the manufacturer level, which are not relevant, nor reasonably calculated to lead to the discovery of admissible evidence.  Because Plaintiffs have alleged an overcharge theory of damages and are not seeking any damages relating to lost profits, any sales, profit, loss, or other "downstream" information is not relevant to this case.

**REQUEST NO. 25:**

All documents reflecting any additional costs incurred, by each putative class member or by the putative class as a whole, as a result or consequence of the Norvir price increase on December 3, 2003.

**RESPONSE TO REQUEST NO. 25:**

In addition to their general objections, Plaintiffs object to this request on the grounds that it is vague, ambiguous and overbroad, Plaintiffs also object to this request on the grounds that it calls for privileged attorney-client communications and attorney work product.  Plaintiffs also object to this request on the grounds that it prematurely calls for expert analysis and/or testimony.  Plaintiffs also object to this request to the extent it calls for discovery from absent class members and/or documents not in the possession, custody, or control of Plaintiffs.  This request is also objectionable on the grounds that it requests documents or information concerning the resale of

CASE NOS. C 07-5985, C 07-6010, C 07-6118 - ABBOTT LABORATORIES' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

pharmaceutical products below the manufacturer level, which are not relevant, nor reasonable calculated to lead to the discovery of admissible evidence.  Because Plaintiffs have alleged an overcharge theory of damages and are not seeking any damages relating to lost profits, any sales, profit, loss, or other "downstream" information is not relevant to this case.

(Klein Decl., Ex. C at Doc. Reqs. Nos. 17, 24-25).

The parties have meet and conferred telephonically on two occasions in an effort to resolve and narrow the disputes.  Although the parties disagree on the matters addressed in this motion, they have agreed to an expedited briefing schedule given that Abbott's opposition to plaintiffs' motion for class certification is due on June 16, 2008.

## III.    ARGUMENT

Abbott seeks information relating to whether certain members of the proposed class benefited from the very same conduct that plaintiffs allege was anticompetitive.  That information is relevant to proving the existence of a fundamental conflict among members of the proposed class.  In the presence of such a fundamental conflict, the class representatives could not fairly and adequately protect the interests of the proposed class, thus precluding class certification under Rule 23(a).  Because Abbott's requests are relevant to whether class certification is proper here, this Court should compel the requested discovery in time for Abbott to rely on that information in opposing the motion for class certification.

### A.    Legal Standard for Motion to Compel

As this Court is well aware, discovery under the Federal Rules is "accorded a broad and liberal treatment." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947).  Rule 26 provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Relevant matters for discovery include information relating to whether class certification is appropriate under the circumstances.  *See Alperin v. Vatican Bank*, 410 F.3d 532, 554 (9th Cir. 2005) (holding that certification issues "should be left to Rule 23 proceedings and the discovery process");

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1    *Babbitt v. Albertson's, Inc.*, No. C-92-1883, 1992 WL 605652, *5-6 (N D. Cal. 1992) (ordering

2    discovery at pre-certification stage because it could "lead to the discovery of admissible evidence

3    relevant to the class certification issue.").

4        A party may move to compel answers to interrogatories submitted under Rule 33 or to the

5    inspection of documents under Rule 34.  Fed. R. Civ. P. 37(a)(3).  Courts will grant a motion to

6    compel disclosure so long as the moving party seeks relevant information that does not cause the

7    opposing party "undue burden or expense."  Fed. R. Civ. P. 26(c)(1); *Sullivan v. Kelly Servs.*, No. C-

8    07-2784, 2008 U.S. Dist. LEXIS 29318, *3-*4 (N.D. Cal. Mar. 4, 2008) (granting motion to compel

9    disclosure of relevant information that is not "overly burdensome").

10       **B.      Abbott Is Entitled To Discovery Relevant To Whether The Class**

11           **Representatives Can Fairly And Adequately Protect The Interests Of The Class.**

12       Plaintiffs seek to have this Court certify a class of direct purchasers of Norvir and/or Kaletra.

13   Rule 23 sets forth the requirements for class certification, one of which is that "the representative

14   parties will fairly and adequately protect the interests of the [proposed] class."  Fed. R. Civ. P.

15   23(a)(4).  Plaintiffs bear the burden of establishing this class action prerequisite, as well as the other

16   requirements for class certification.  *Arnold v. United Artists Theatre Circuit*, 158 F.R.D. 439, 448

17   (N.D. Cal. 1994).  Failure to establish any one of the prerequisites of Rule 23 precludes class

18   certification.  *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

19       The "adequacy of representation" requirement is intended to ensure constitutional due

20   process for absent class members.  Because the disposition of a class action binds all members of the

21   class, including absent class members, due process requires that the interests of absent class

22   members be aligned and adequately represented.  As the Ninth Circuit has explained, "[c]lass

23   members who are not parties to a class action suit nevertheless are bound by the judgment in the suit,

24   and due process is satisfied, if the absent members' interests are adequately represented by the class

25   members who are present."  *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1995); *Hansberry v. Lee*,

26   311 U.S. 32, 37-38 (1940).

27       Because of this constitutional dimension, "[t]he adequacy of the representation issue is now

28   of critical importance in all class actions and the court is under an obligation to pay careful attention

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1    to the Rule 23(a)(4) prerequisite in every case." *Bishop v. Committee on Prof'l Ethics*, 686 F.2d

2    1278, 1288 (8th Cir. 1982) (quoting C. Wright & A. Miller, Federal Practice and Procedure § 1765,

3    at 616-17 (1972)). As one court noted, the adequacy requirement "lies at the heart of the rationale

4    supporting the class action." *Johnson v. Shreveport Garment Co.*, 422 F. Supp. 526, 531 (W.D. La.

5    1976), *aff'd*, 577 F.2d 1132 (5th Cir. 1978).

6          Adequacy of representation encompasses two related concepts:  "(1) that the proposed

7    representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that

8    Plaintiffs are represented by qualified and competent counsel." *Dukes v. Wal-Mart, Inc.*, 509 F.3d

9    1168, 1185 (9th Cir. 2007). The Supreme Court has held that "[t]he adequacy inquiry under Rule

10   23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to

11   represent." *Amchem*, 521 U.S. at 625. This is because courts cannot give "due regard for the

12   protection of the rights of absent parties which due process exacts" in the face of conflicts between

13   putative class representatives and members of the proposed class. *Hansberry v. Lee*, 311 U.S. 32, 44

14   (1940).

15         Accordingly, "[e]xamination of potential conflicts of interest has long been an important

16   prerequisite to class certification." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

17   Because of due process concerns, courts have held that an actual conflict of interest among members

18   of the proposed class—or even a *potential* for such a conflict—may be sufficient to deny

19   certification of the class. *Amchen*, 521 U.S. at 610 (upholding the circuit court's determination that

20   "serious intra-class conflicts preclude[d] th[e] class from meeting the adequacy of representation

21   requirement"); *In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 145 (2d Cir. 2001)

22   ("Rule 23(a)(4) is designed to ferret out potential conflicts between representatives and other class

23   members."); *Honolulu Fed. Sav. & Loan Ass'n v. Verex Assurance, Inc.*, 116 F.R.D. 474, 476 (D.

24   Haw. 1987) (holding that "a potential conflict exists and precludes [the plaintiff] from adequately

25   representing the class"); *Plekowski v. Ralston Purina*, 68 F.R.D. 443, 452 (M.D. Ga. 1975) ("Courts

26   have recognized that potential antagonistic interests . . . is a ground for denying class certification.

27   One does not have to show actual antagonistic interests; the potentiality is enough.").

28

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1
2

**C.      The Requested Discovery Is Relevant To Whether The Class Representatives Can Fairly And Adequately Protect The Interests Of The Class.**

3       Abbott's discovery requests are narrowly tailored to obtain information that is critical to
4  determining whether there is the potential for a fundamental conflict between members of the
5  proposed class.  As discussed above, these requests seek discovery as to whether and the extent to
6  which certain putative class members have profited from the price increases on Norvir and Kaletra
7  and, as a result, have a financial interest in preserving the status quo.

8       A number of courts have permitted parties to pursue discovery of this information under
9  nearly identical circumstances.  In *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, a case
10  strikingly similar to this one, the Eleventh Circuit held that the district court had committed
11  reversible error by foreclosing discovery into whether certain direct purchaser class members
12  benefited from the allegedly anticompetitive conduct, because such discovery was relevant to
13  whether the named plaintiffs could adequately represent the proposed class.  350 F.3d 1181, 1190
14  (11th Cir. 2003).  There, as here, the plaintiffs—which included one of the plaintiffs in this case,
15  Louisiana Wholesale Drug Co.—sought to certify a class of direct purchasers in a Sherman Act suit
16  against Abbott and other pharmaceutical companies.  *Id*. at 1183-84.  The plaintiffs alleged that an
17  agreement between Abbott and two generic drug companies had the effect of keeping off the market
18  generic competitors to Abbott's branded drug, Hytrin, used in the treatment of hypertension and
19  benign prostatic hyperplasia.  *Id*.

20       Abbott and the other defendants sought discovery to show that substantial conflicts existed
21  between the various direct purchasers.  The district court, however, "foreclos[ed] discovery on the
22  question of whether some class members benefited from the conduct alleged to have harmed the
23  class members on the whole" and granted the plaintiffs' motion for class certification. *Id*. at 1187.

24       The Eleventh Circuit reversed, holding that the district court abused its discretion by failing
25  to evaluate, as was its independent obligation, "whether the 'adequacy of representation'
26  requirement could be satisfied by the named representatives despite the fact that the most significant
27  members of the certified class arguably experienced a net gain from the conduct alleged to be illegal
28  by the named representatives."  *Id*. at 1188.  The court noted that the record, limited by the district

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

court's foreclosure of discovery on the issue, suggested that certain national drug wholesalers actually profited from selling the higher priced Abbott branded drug than they would have from selling the cheaper generic drugs, because those wholesalers sold to retailers on a cost-plus basis and demand for the drug was inelastic. *Id.* at 1191. The record also implied that the same national wholesalers might be harmed by generic entry, because while they play a central role in the distribution of branded drugs, they are often bypassed in the distribution generic competitors. *Id.*

The Eleventh Circuit reasoned that "[t]his economic reality would lead the national wholesalers and other similarly situated class members to have divergent interests and objectives from the named representatives with respect to the fundamental issues in controversy in this litigation." *Id.* at 1193. The court noted that "[i]t is highly likely under such circumstances that the economic interests of these putative class members would be substantially in conflict with the interests of the named representatives who did not experience a net gain from the defendants' conduct." *Id.* at 1193-1194. The court thus concluded that the district court had abused its discretion in granting class certification and remanded the case to permit further discovery to determine whether a fundamental conflict exists among class members. *Id.* at 1195.

Significantly, the Eleventh Circuit considered and rejected the argument raised by plaintiffs that the Supreme Court's decisions in *Hanover Shoe* and *Illinois Brick* foreclosed the requested "downstream discovery." The *Valley Drug* court distinguished those cases on the ground that "neither *Hanover Shoe* nor *Illinois Brick* addressed a party's burden to satisfy the class certification prerequisites established by Rule 23(a)." *Valley Drug*, 350 F.3d at 1192. The court reasoned that *Hanover Shoe* and *Illinois Brick* "simply stand for the proposition that a direct purchaser who passes on overcharges to his own customers nevertheless suffers cognizable antitrust injury and may sue to recover damages," and addressed "a distinctly separate question from the issue of whether class certification is appropriate where a fundamental conflict exists among the named and unnamed members of a class." *Id.* Neither case, the court held, "imbue the named representatives . . . with the automatic right to certify a class where the economic reality of the situation reveals a fundamental conflict may exist among the class members because of their different economic circumstances and different economic interests." *Id.* at 1193.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1    The Eleventh Circuit further explained that allowing "downstream" discovery in the class

2    certification context would not conflict with the Supreme Court's concern, expressed in *Hanover*

3    *Shoe* and *Illinois Brick*, that "the ability of a party to assert a 'passing-on' defense might undermine

4    a plaintiff's ability to recovery damages by unduly complicating the issue of proof of damages." *Id*.

5    at 1195.  The district court, the Eleventh Circuit noted, still retained discretion to determine how

6    much discovery was enough to establish the absence of a fundamental conflict.  The court also

7    explained that a burdensomeness argument "from counsel for Louisiana Wholesale and Valley Drug

8    is baffling since it is the plaintiffs who initially informed the district court that an algebraic formula

9    easily could be devised to compute the plaintiffs' claimed damages." *Id*.  The court noted that

10    plaintiffs had obtained information on Abbott's sales volume, pricing and discount records and

11    concluded that "we have no reason to believe that it would be inherently more difficult to ascertain

12    similar evidence" with respect to class members.  *Id*.

13    *Valley Drug*'s reasoning and holding were expressly adopted by the only court in the Ninth

14    Circuit to address the relevance of "downstream discovery" to class certification issues.  *See Allied*

15    *Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*, 247 F.R.D. 156 (C.D. Cal. 2007).  In

16    *Allied Orthopedic*, the Central District of California recently denied certification of a proposed class

17    of direct purchasers seeking treble damages for the defendants' alleged monopolization.  The

18    plaintiffs in that case challenged, among other things, the defendants' decision to offer market-share

19    discounts to, and require sole-source contracts from, their customers.

20    The record before the district court in *Allied Orthopedic* demonstrated that there was a

21    "substantial divergence" in the way this allegedly predatory conduct affected small hospitals when

22    compared to large hospitals.  *Id*. at 177-178.  Smaller hospitals, which had less bargaining power and

23    lower purchase volumes, could only obtain the best pricing through the defendants' market-share

24    discounts and sole-source contracts.  *Id*. at 169.  As a result, the court concluded, "small hospitals

25    would, in all likelihood, be forced to pay" higher prices in the absence of the challenged conduct.  *Id*.

26    Citing *Valley Drug*, the Central District of California found that a fundamental conflict

27    existed because "some plaintiffs claimed to be harmed by the same conduct that benefited other

28    members of the class."  *Id*. at 177.  The court noted that to its knowledge, "no circuit approves of

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1   class certification where some class members derive a net economic benefit from the very same

2   conduct alleged to be wrongful by the named representatives of the class, let alone where some

3   *named* plaintiffs derived such a benefit." *Id*.  On that basis, the court held that the named plaintiffs

4   had not been shown to be adequate class representatives, as required by Rule 23.  *Id*. at 177-178.

5           Other courts have similarly recognized, explicitly or implicitly, the relevance of the type of

6   information Abbott seeks to the issue of whether there is a conflict of interest among class

7   members.[4]  For example, the court in *In re Urethane Antitrust Litigation* rejected plaintiffs *Hanover*

8   *Shoe* and *Illinois Brick* objections and granted the defendants' motion to compel "downstream"

9   discovery in a direct purchaser class action alleging a conspiracy to fix prices and allocate markets

10  and customers.  237 F.R.D. 454 (D. Kan 2006).  As in *Valley Drug*, the court found that *Hanover*

11  *Shoe* and *Illinois Brick* were inapplicable because neither case "holds that downstream data is

12  irrelevant or non-discoverable," but only that "downstream data cannot be used to support a pass-on

13  defense."  *Urethane*, 237 F.R.D. at 462.  Distinguishing cases in which downstream discovery was

14  barred, the court noted that "[h]ere, Defendants are not seeking discovery of data in order to assert a

15  pass-on defense; rather, Defendants contend that this information is relevant to the determination of

16  class certification."  *Id.* at 464.

17          The only courts to deny discovery concerning intra-class conflict have done so on the

18  grounds that the defendant failed to make any initial showing of a potential conflict.  *In Re*

19  *Hypodermic Product Direct Purchaser Antitrust Litigation*, Nos. 05-CV-1602 and 05-CV-4465,

20  2006 U.S.Dist. LEXIS 89353 (D.N.J. Sept. 7, 2006) (concluding that defendant had failed to specify

21  what discovery it wanted or to produce "any evidence to support its claim that it is entitled to

22  ―――――――――――――――――――――
    [4] In some cases, discovery failed to uncover sufficient evidence of conflicts within the proposed

23  class that could defeat class certification.  *In re Wellbutrin SR Direct Purchaser Antitrust Litigation*,
    No. 04-5525 (E.D. Pa. May 2, 2008); *Natchitoches Parish Hospital Service District v. Tyco Int'l,*

24  *Ltd*., 247 F.R.D. 253 (D. Mass. 2008); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd*., 246
    F.R.D. 293 (D.D.C. 2007).  But the holdings in these decisions denying class certification are

25  inapposite.  First, the issue raised in this motion is *not* whether, as in those cases, the proposed class
    should be certified.  Rather, Abbott merely seeks to compel plaintiffs to produce documents and

26  information relevant to its defense of the class certification motion.  *Valley Drug*, 350 F.3d at 1191-
    1192; *Urethane*, 237 F.R.D. at 459.  Second, in these cases, class certification was denied because,

27  unlike here, the allegedly anticompetitive conduct that had benefited some class members (*i.e.*,
    delayed generic entry) had ceased.  *See Wellbutrin*, slip op. at 13; *Meijer*, 246 F.R.D. at 304 n.10.  In

28  contrast, Plaintiffs allege—in fact, the proposed class definition itself is based on the allegation—
    that the alleged illegal conduct has not "ceased."

15

CASE NOS. C 07-5985, C 07-6010, C 07-6118 - ABBOTT LABORATORIES' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

1    downstream sales data"); *In re Pressure Sensitive Labelstock Antitrust Litigation*, 226 F.R.D. 492,

2    498 (M.D. Pa. 2005) (denying downstream discovery because defendants "have not made an initial

3    showing of the potential for a fundamental conflict of interest among class members").

4        Unlike the defendants in those cases, however, Abbott has made a sufficient prima facie

5    showing of a possible conflict between members of the proposed class. The "economic realit[ies]"

6    here are nearly identical to those that led the Eleventh Circuit to conclude in *Valley Drug* that

7    additional discovery was necessary. *Valley Drug*, 350 F.3d at 1193. Abbott's expert explained in

8    the attached declaration the economic and structural basis for why some members of the putative

9    class—namely, national wholesalers—likely have benefited from the increases in the prices of

10    Norvir and Kaletra and, thus, may not have an interest in litigation that results in a substantial and

11    sustained decrease in the prices for those drugs. That analysis is further corroborated by the report

12    of the *Doe/SEIU* plaintiffs' expert, which confirms that the economic characteristics of this market

13    are consistent with 100% pass-through. (Greer Expert Rep., 9/26/07, at ¶ 223).

14        **D.    Abbott's requests satisfy the proportionality requirements of Rule 26(b)(2)(C).**

15        Plaintiffs have the burden to demonstrate that the requests do not meet the proportionality

16    requirements under Fed. R. Civ. P. 26(b)(2)(C). *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D.

17    145, 156 (S.D. Ind. 1993). They cannot do so in this case.

18        First, the discovery sought is not "unreasonably cumulative or duplicative" and cannot "be

19    obtained from some other source that is more convenient, less burdensome, or less expensive." Fed.

20    R. Civ. P. 26(b)(2)(C)(i). Abbott seeks sales data that is uniquely in the possession of the plaintiffs,

21    and its discovery does not duplicate any previous discovery in this case.

22        Second, plaintiffs cannot show that Abbott "has had ample opportunity to obtain the

23    information by discovery in the action." *Id*. at 26(b)(2)(C)(ii). This direct purchaser class action is

24    in its early stages and raises issues that were not relevant to or anticipated by the prior Norvir

25    antitrust litigation. Abbott has not yet had an opportunity to conduct discovery into issues, for

26    example, relating to certification of a class of direct purchasers, which are distinct from those raised

27    in the course of indirect purchaser class actions.

28

Finally, plaintiffs cannot show that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  *Id.* at 26(b)(2)(C)(iii).    The importance of class certification in this case cannot be understated.  Plaintiffs seek, on behalf of a proposed class of direct purchasers of Abbott's Norvir and Kaletra, treble damages for alleged overcharges that could potentially total in the hundreds of millions of dollars.

Given the amount of damages at issue and the importance of class certification in determining the course of this litigation, the benefits of the discovery sought clearly outweigh any minor burdens imposed upon the plaintiffs.  As discussed above, the requested discovery is important to determining whether fundamental conflicts exist among the putative class members, conflicts that would preclude class certification on due process grounds.  Moreover, the requested discovery is of a similar nature to information Abbott already produced in this litigation to plaintiffs. Thus, plaintiffs cannot claim that the requested discovery would impose any undue burden.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants respectfully move this Court for an order compelling plaintiffs to produce the "downstream" discovery requested in Abbott's document requests and interrogatories.

Dated: May 12, 2008                               WINSTON & STRAWN LLP


                                                  By:    /s/ Charles B. Klein

                                                       Attorneys for Defendant
                                                       ABBOTT LABORATORIES

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703