1   Joseph R. Saveri (SBN 130064)
    jsaveri@lchb.com
2   Brendan Glackin (SBN 199643)
    bglackin@lchb.com
3   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    Embarcadero Center West
4   275 Battery Street, 30th Floor
    San Francisco, CA  94111-3339
5   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008
6
7   *Attorneys for Plaintiffs*
8   [Additional Counsel Listed on Signature Page]
9
10                UNITED STATES DISTRICT COURT
11              NORTHERN DISTRICT OF CALIFORNIA
12                    (OAKLAND DIVISION)
13
14  MEIJER, INC. & MEIJER DISTRIBUTION,        Case No. C 07-5985 CW
    INC., on behalf of themselves and all others
15  similarly situated,                        **OPPOSITION OF
                                               PLAINTIFFS MEIJER, INC.,
16              Plaintiffs,                     MEIJER DISTRIBUTION, INC.,
                                               ROCHESTER DRUG CO-
17        v.                                    OPERATIVE, INC., AND LOUSIANA
                                               WHOLESALE DRUG COMPANY,
18  ABBOTT LABORATORIES,                        INC. TO DEFENDANT ABBOTT
                                               LABORATORIES' MOTION TO
19              Defendant.                      COMPEL PRODUCTION OF
                                               DOCUMENTS AND
20                                              INTERROGATORY RESPONSES**
21
22  --[*caption continues next page*]--
23
24
25
26
27
28

764122.1

OPPOSITION TO DEFENDANT ABBOTT
LABORATORIES' MOTION TO COMPEL DISCOVERY
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

1

2  ROCHESTER DRUG CO-OPERATIVE, INC.,          Case No. C 07-6010 CW
   on behalf of itself and all others similarly
3  situated,                                    **Hon. Claudia Wilken**

4                        Plaintiff,

5         v.

6  ABBOTT LABORATORIES,

7                        Defendant.

8  LOUISIANA WHOLESALE DRUG                     Case No. C 07-6118 CW
   COMPANY, INC., on behalf of itself and all
9  others similarly situated,                   **Hon. Claudia Wilken**

10
                          Plaintiff,
11
          v.
12

13 ABBOTT LABORATORIES,

14                        Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANT ABBOTT
                                    LABORATORIES' MOTION TO COMPEL DISCOVERY
                                    CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

1

**TABLE OF CONTENTS**

2

Page

3    I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 1

4    II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................... 8

5    III.    ARGUMENT:  "DOWNSTREAM DISCOVERY" IS LEGALLY
IRRELEVANT TO CLASS CERTIFICATION AND THUS SHOULD BE
BARRED ................................................................................................................ 9

6    A.    "Downstream Discovery" Has Been Almost Universally Been
Barred in Direct Purchaser Class Actions ................................................... 9

7

8    B.    The Purported "Class Conflict" Hypothesized by *Valley Drug* is
Not Cognizable in the Ninth Circuit ......................................................... 14

9    1.    Abbott's Proposed "Net Effects" Class Conflict Analysis
Constitutes an Impermissible End-Run Around *Hanover
Shoe* and *Illinois Brick* ................................................................ 15

10

11    2.    Abbott's Purported "Class Conflict" is Not Legally
Cognizable Because it is Wholly Unrelated to Any
Substantive Claim or Defense in the Matter ................................. 17

12    3.    Abbott's Proposed Downstream "Economic Harm"
Analysis is not Probative of a Cognizable Class Conflict............. 19

13    C.    Abbott Has Not Even Made the Showing Required By *Valley Drug* ....... 22

14    D.    The Burdens Associated With the Massive Discovery Abbott Seeks
Far Outweigh Any Potential Benefit ......................................................... 22

15    IV.    CONCLUSION ............................................................................................... 24

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,
  247 F.R.D. 156 (C.D. Cal. 2007) .................................................................................... 14

5

6

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................................ 13

7

*Arizona v. Shamrock Foods Co.*,
  729 F.2d 1208 (9th Cir. 1984) ............................................................................... 2, 10, 17

8

9

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ................................................................................... 4, 13, 17

10

*Bogosian v. Gulf Oil Corp.*,
  561 F.2d 434 (3d Cir. 1977) ............................................................................................ 17

11

12

*Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*,
  335 F.2d 203 (7th Cir. 1964) ........................................................................................... 12

13

*Cummings v. Connell*,
  316 F.3d 886 (9th Cir. 2003) ..................................................................................... 13, 17

14

15

*Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson*,
  No. 08-55105, __ F.3d __, 2008 U.S. App. LEXIS 9308 (9th Cir. Apr. 30, 2008).............. 2, 16

16

*Epstein v. MCA, Inc.*,
  179 F.3d 641 (9th Cir. 1999) ........................................................................................... 19

17

18

*Go-Tane Service Stations, Inc. v. Ashland Oil, Inc.*,
  508 F. Supp. 200 (N.D. Ill. 1981) .................................................................................... 12

19

*In re Automotive Refinishing Paint Antitrust Litig.*,
  MDL 1426, 2006 U.S. Dist. LEXIS 34129 (E.D. Pa. May 26, 2006) ....................................... 12

20

21

*In re Buspirone Patent & Antitrust Litig.*,
  210 F.R.D. 43 (S.D.N.Y. 2002) ................................................................................... 4, 10

22

*In re Carbon Dioxide Antitrust Litig.*,
  MDL 940 (M.D. Fla. Nov. 19, 1993) ................................................................................ 12

23

24

*In re Diasonics Sec. Litig.*,
  599 F. Supp. 447 (N.D. Cal. 1984) .................................................................................. 19

25

*In re Folding Carton Antitrust Litig.*,
  1978 U.S. Dist. LEXIS 20409 (N.D. Ill. May 5, 1978) ......................................................... 12

26

*In re GMC Pick-Up Truck*,
  55 F.3d 768 (3d Cir. 1995) .............................................................................................. 19

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Hypodermic Products Direct Purchaser Antitrust Litig.*,
MDL No. 1730, 2006 U.S. Dist. LEXIS 89353 (D.N.J. Sept. 7, 2006)............................ *passim*

4

*In re K-Dur Antitrust Litig.*,
No. 01-1652, Report and Recommendation (D.N.J. Jan. 2, 2007) ..................................... *passim*

5

6

*In re Metropolitan Life Ins. Sales Practices Litig.*,
No. 96-179, 1999 WL 33957871, at *21 (W.D. Pa. Dec. 28, 1999)..................................... 4, 18

7

*In re Monosodium Glutamate Antitrust Litig.*,
MDL 00-1328, 2000 U.S. Dist. LEXIS 22521 (D. Minn. Sept. 14, 2000) .............................. 12

8

9

*In re Plastics Additives Antitrust Litig.*,
No. 03-2038, 2004 U.S. Dist. LEXIS 23989 (E.D. Pa. Nov. 30, 2004) ................................... 12

10

*In re Potash Antitrust Litig.*,
159 F.R.D. 682 (D. Minn. 1995)............................................................................................... 19

11

12

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
226 F.R.D. 492 (M.D. Pa. 2005)........................................................................................ *passim*

13

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
148 F.3d 283 (3d Cir. 1998).................................................................................................... 18

14

15

*In re Terazosin Antitrust Litig.*,
223 F.R.D. 666, 679 (S.D. Fla. 2004) ................................................................................... 6, 13

16

*In re Terazosin Hydrochloride Antitrust Litig.*,
Case Nos. 98-3125, 99-7143 (S.D. Fla. Mar. 1, 2005) ........................................................... 13

17

18

*In re Tricor Direct Purchaser Antitrust Litig.*,
C.A. No. 05-340 (KAJ) (D. Del. Mar. 6, 2006) ................................................................ *passim*

19

In re Urethane Antitrust Litig.,
237 F.R.D. 454 (D. Kan. 2006)........................................................................................... 14, 23

20

21

*In re Vitamins Antitrust Litig.*,
198 F.R.D. 296 (D.D.C. 2000)....................................................................................... 3, 12, 23

22

*In re Wellbutrin SR Direct Purchaser Litig.*,
No. 04-5525, 2008 U.S. Dist. LEXIS 36719 (E.D. Pa. May 2, 2008).............................. *passim*

23

24

*In re Wirebound Boxes Antitrust Litig.*,
131 F.R.D. 578 (D. Minn. 1990)............................................................................................. 12

25

*J.B.D.L. Corp. v. Wyeth-Ayers Labs., Inc.*,
225 F.R.D. 208 (S.D. Ohio 2003) ....................................................................................... 5, 16

26

27

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008)............................................................................................. 2, 16

28

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Lubin v. Sybedon Corp.*,
    688 F. Supp. 1425 (S.D. Cal. 1988) .......................................................... 21

*Lumco Industries, Inc. v. Jeld-Wen, Inc.*,
    No. 96-CV-2125 (E.D. Pa. May 16, 1997) ................................................. 12

*Meijer, Inc. v. Warner Chilcott Holdings Co. III*,
    246 F.R.D. 293 (D.D.C. 2007) ......................................................... *passim*

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
    247 F.R.D. 253 (D. Mass. 2008) ......................................................... 8, 21

*Roberts v. Heim,* 670 F. Supp. 1466 (N.D. Cal. 1987),
    *aff'd,* 43 F.3d 1401, 1994 WL 666043 (9th Cir. 1994) ......................... 7, 8, 21

*Royal Printing Co. v. Kimberly-Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) .......................................................... 17, 23

*Smilow v. Southwestern Bell Mobile Sys.*,
    323 F.3d 32 (1st Cir. 2003) ................................................................ 21

*Winkler v. DTE, Inc.*,
    205 F.R.D. 235 (D. Ariz. 2001) ...................................................... 13, 17

**RULES**

Fed. R. Civ. P.
    23.......................................................................................... 7, 21
    23(a)(4)............................................................................... *passim*
    26(b)(2)(iii) .............................................................................. 22

**TREATISES**

1 NEWBERG ON CLASS ACTIONS
    § 3.30 (4th ed.) .......................................................................... 21

5 MOORE'S FEDERAL PRACTICE
    § 23.25[4] [b] [iii] (3d ed. 2003) ...................................................... 21

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs[1] are wholesalers and a retailer (Meijer, Inc.) of pharmaceutical products. They have brought this antitrust action on behalf of themselves and a proposed class of similarly situated entities that purchase the anti-AIDS medicines Norvir and Kaletra directly from defendant Abbott Laboratories ("Abbott"). Plaintiffs allege that Abbott's illegal anticompetitive conduct caused them to pay artificially inflated prices for Norvir and Kaletra.[2]  The direct purchaser class plaintiffs here allege antitrust injury and seek damages in the form of the overcharges (trebled) they paid for Norvir and Kaletra due to Abbott's illegal conduct.  Plaintiffs are not seeking recovery of "lost profits."  Plaintiffs are also not seeking injunctive relief.

This dispute arises out of Abbott's attempt to obtain from Plaintiffs (and, relatedly, from ten absent members of the proposed direct purchaser Class),[3] voluminous documents and data relating to these direct purchasing entities' resale prices and practices.  This is referred to as "downstream discovery" because it relates *not* to "upstream" purchase volumes and prices reflecting direct purchasers' dealings with Abbott (the proper and only relevant focus of a direct purchaser action), but rather to the *resale* practices of a direct purchasing entity: information that for more than thirty years has been completely irrelevant and hence not discoverable in direct purchaser antitrust actions.  *E.g.*, *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977); *Hanover Shoe v. United States Mach. Corp.*, 392 U.S. 481, 493-94 (1968).  By its own account, Abbott wants this information from Plaintiffs (and absent class members) for the sole purpose of

---

[1] Plaintiffs include Meijer Inc., Meijer Distribution, Inc. ("Meijer"), Rochester Drug Co-operative, Inc. ("RDC"), and Louisiana Wholesale Drug Co., Inc. ("LWD") (collectively, "Plaintiffs").

[2] *See* Direct Purchaser Class Plaintiffs' Notice of Motion and Motion for Class Certification, at 4 (describing overcharge claims), D.E. Nos. 62 & 64, Case Nos. C 07-5985 CW, C 07-6010 CW, C 07-6118 CW (N.D. Cal.); Class Certification Declaration of Hal Singer, Ph.D. at ¶¶ 34, 36-48, D.E. No. 63, Case Nos. C 07-5985 CW, C 07-6010 CW, C 07-6118 CW (N.D. Cal.) (same).

[3] Abbott served ten subpoenas on entities, many if not most of which are absent members of the proposed direct purchaser class on or about May 14, 2008.  Each subpoena seeks "downstream" sales and profits information regarding these entities' sales of Norvir, Kaletra, Reyataz, and Lexiva.  The subpoenaed entities include: Allion Healthcare, Inc., AmerisourceBergen Corp., Arrow Pharmacy, Inc., BioScrip, Inc., Cardinal Health, Inc., Free Medical Clinic of Cleveland, McKesson Corp., Medco Health Solutions, Inc., Parkland Health and Hospital Systems, and Smith Drug Co.  *See* Exhs. 7-16.

-1-

1   determining whether Plaintiffs (and absent class members) gained or lost profits as a result of

2   Abbott's alleged illegal conduct. Abbott claims that such information is pertinent to proving that

3   Plaintiffs' pursuit of overcharge damages on behalf of a proposed class of direct purchasers might

4   create a cognizable conflict that could render Plaintiffs inadequate under Fed. R. Civ. P. 23(a)(4).

5   But, Plaintiffs are not seeking lost profits damages here. Accordingly, "downstream" discovery

6   pertaining only to lost profits and net economic effect on Plaintiffs and the direct purchaser class

7   can have no possible bearing on any claim or defense in this matter.

8       Abbott's motion should be denied because the sought discovery is highly

9   burdensome, wholly irrelevant to any aspect of the litigation, including class certification, and,

10  moreover, the very act of forcing its production would, according to the Supreme Court,

11  undermine the deterrent effect of the antitrust laws themselves.

12      Indeed, it has long been held in cases *just like this one* – based upon an unbroken

13  string of Supreme Court precedent – that "downstream" discovery is not merely irrelevant and off

14  limits, but that its mere production would be harmful to the very purposes of the antitrust laws.

15  As one court recently explained: "[C]ourts generally proscribe downstream discovery . . . . [T]he

16  Supreme Court has cautioned that the effectiveness of antitrust actions may be substantially

17  reduced if defendants are allowed to pursue an inquiry into downstream activities and the massive

18  discovery that such an inquiry would entail." *In re Pressure Sensitive Labelstock Antitrust Litig.*,

19  226 F.R.D. 492, 498 (M.D. Pa. 2005). This is consistent with the Ninth Circuit's rule that the

20  Supreme Court proscribed the very kind of "downstream" inquiries Abbott seeks to conduct here.

21  *E.g., Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1212 (9th Cir. 1984) (*Illinois Brick* rule

22  intended to reduce complexity of direct purchaser actions by barring analysis of downstream

23  effects). Just this year, the Ninth Circuit reiterated this strong policy consideration in two

24  separate cases. *See Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson*, No. 08-55105,

25  __ F.3d __, 2008 U.S. App. LEXIS 9308, at *9-11 (9th Cir. Apr. 30, 2008) (observing the

26  Supreme Court intended to eliminate the "evidentiary complexities and uncertainties" relating to

27  direct purchasers' subsequent sales by establishing a "bright line rule") (citations and internal

28  quotes omitted); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) ("what portion

-2-                  OPPOSITION TO DEFENDANT ABBOTT
                                                        LABORATORIES' MOTION TO COMPEL DISCOVERY
                                                        CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

1    of [an] illegal overcharge was 'passed on' . . . and what part was absorbed by the middlemen . . .

2    involve[s] all the evidentiary and economic complexities that *Illinois Brick* clearly forbade.").

3            Because of the Supreme Court's caution against wading into Abbott's desired

4    computations of benefit and harm (through tracings of the overcharge down the chain of

5    distribution), and because the fruits of downstream discovery are almost uniformly considered

6    irrelevant, courts have repeatedly denied antitrust defendants' attempts to pursue such discovery

7    for any purpose, including class certification. *See, e.g.*, *In re Vitamins Antitrust Litig.*, 198 F.R.D.

8    296, 301 (D.D.C. 2000) ("no court has ever allowed production of individualized downstream

9    data").[4]

10           Nonetheless, Abbott attempts to avoid decades of governing law by claiming it

11   wants "downstream" discovery to assess the presence of a "conflict" and oppose class

12   certification.  Notably, Abbott is not challenging the fact that all direct purchasers have the *legal*

13   *right* to recover the full amount of the claimed overcharge, regardless of whether some of the

14   overcharge is passed on down the chain of distribution, and even if some obtained a "net" benefit

15   from the challenged conduct.[5]  Rather, Abbott is speculating, based almost exclusively on the

16   reasoning of a single decision from another circuit (*Valley Drug*), that it is theoretically possible

17   that there is a fundamental conflict between the Plaintiffs and (mainly) three large national

18   wholesalers in the proposed class (the "Big Three" wholesalers – AmerisourceBergen, Cardinal

19   Health, and McKesson) because the Big Three purportedly "benefit" from the challenged conduct

20   (*i.e.*, Abbott says they might make more money due to paying higher prices).

21           Abbott theorizes that those who could "benefit" from the challenged conduct

22   might prefer to forego recovery of potentially hundreds of millions of dollars in overcharges – ***the***

23   ***only relief sought in the suit*** – in a show of solidarity with Abbott and its anticompetitive

24   conduct.  Even though this purported "conflict" does not relate in any way to the underlying

25   _____

26   [4] All emphases herein are added unless noted otherwise.

27   [5] *E.g.*, *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1192 (11th Cir. 2003) ("a direct purchaser . . . suffers cognizable antitrust injury . . . regardless of whether he actually profited from the defendants' conduct"); *see also Hanover Shoe*, 392 U.S. at 494.

28

1   merits of the suit or the injury claimed or the damages sought, Abbott claims that it might

2   nonetheless make the named plaintiffs inadequate under Fed. R. Civ. P. 23(a)(4).

3        As several recent courts have held, however, the "conflict" theorized by *Valley*

4   *Drug* is inconsistent with substantive antitrust law and contrary to long-established class

5   certification rules, and thus cannot support the massive "downstream discovery" campaign

6   Abbott hopes to use to derail this litigation.

7        *First*, Abbott's reasoning reflects an improper end-run around the Supreme

8   Court's prohibition on use of downstream evidence and analysis in direct purchaser actions.  *See,*

9   *e.g., In re Wellbutrin SR Direct Purchaser Litig*., No. 04-5525, 2008 U.S. Dist. LEXIS 36719, at

10  *26 n.15 (E.D. Pa. May 2, 2008) (*Valley Drug* conflicts with Supreme Court precedent because

11  "*Hanover Shoe* and *Illinois Brick* eliminate any 'fundamental conflict' between the class

12  members."); *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 303 (D.D.C. 2007)

13  ("*Ovcon*") ("the Eleventh Circuit's conclusion [in *Valley Drug*] . . . conflicts with the Supreme

14  Court's decisions in *Hanover Shoe*[] and *Illinois Brick*"); *see also In re Buspirone Patent &*

15  *Antitrust Litig.,* 210 F.R.D. 43, 60 (S.D.N.Y. 2002) (to permit the "net benefits" downstream

16  argument would introduce "just the kind of complicated proceedings . . . that the Supreme Court

17  held to be generally inappropriate in the antitrust context").

18       *Second*, Abbott's theorized conflict is not cognizable under long-established law

19  because it is immaterial to the underlying claims.  Under applicable law, where (as here) it is

20  undisputed that all class members have *the right* to pursue overcharges, and where the named

21  plaintiffs are seeking to effectuate (and maximize) that right, there can be no class conflict no

22  matter what downstream discovery could possibly show.[6]

23

24  _____

25  [6] *E.g., Blackie v. Barrack*, 524 F.2d 891, 909-10 (9th Cir. 1975) (rejecting conflict argument because "[i]t will be in the interest of each class member to . . . demonstrate the *sine qua non* - liability - and to maximize his own potential damages"); *In re Metropolitan Life Ins. Sales*

26  *Practices Litig.,* No. 96-179, 1999 WL 33957871, at *21 (W.D. Pa. Dec. 28, 1999) (noting that "so long as all class members are united in asserting a common right, such as achieving the

27  maximum possible recovery for the class, the class interests are not antagonistic for representation purposes").

28

OPPOSITION TO DEFENDANT ABBOTT
LABORATORIES' MOTION TO COMPEL DISCOVERY
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

1    Accordingly, even if Abbott were to get the discovery it seeks at great expense and

2    burden – and even if it showed what Abbott claims it wants to show here (*i.e.*, that some class

3    members somehow benefitted, on net, from the challenged conduct), Abbott still would not have

4    demonstrated a cognizable class conflict.  By long-settled law, Plaintiffs and each class member

5    have the exact same legal claim, grounded on the same theory of antitrust injury: paying

6    artificially inflated prices.  Thus, the "conflict" Abbott appears concerned about is entirely

7    illusory: *Valley Drug* is simply incompatible with the law of the Ninth Circuit, much as it has

8    been rejected elsewhere.  As the court in *K-Dur* observed in denying the very same downstream

9    discovery at issue here:

> [E]ach member of the class is limited to the recovery of the full amount of the
> overcharge. All other measures of damages are irrelevant and ***attempts to impose***
> ***substantial discovery obligations upon members of the putative class to evaluate***
> ***any other measure of damages is unwarranted***. . . .  Because all members of the
> putative class in this case will be entitled to the same measure of damage if
> successful – the amount of the overcharge – ***there can be no conflict within the***
> ***putative class on the issue of damages.  Accordingly, downstream discovery is***
> ***irrelevant as a matter of law***.

15    *In re K-Dur Antitrust Litig.*, No. 01-1652, Report and Recommendation, at 21-22 (D.N.J. Jan. 2,

16    2007) (Orlofsky, Ret. U.S.D.J., Special Master) ("*K-Dur 1/2/07 R&R*") (Appendix of

17    Unpublished Authority, Exh. A).  *See also Wellbutrin*, 2008 U.S. Dist. LEXIS 36719, at *24-25

18    (certifying class and rejecting assertion of conflict because "any economic benefits the

19    wholesalers experienced in the past are legally irrelevant because the overcharge itself – not any

20    economic effect of the overcharge – is the proper measure of recovery"); *Ovcon*, 246 F.R.D. at

21    304 (granting certification and "respectfully disagree[ing] with the Eleventh Circuit's conclusion

22    because it conflicts with the Supreme Court's decisions in *Hanover Shoe*[] and *Illinois Brick* []");

23    *In re K-Dur Antitrust Litig.*, No. 01-1652, Report and Recommendation, at 14 (D.N.J. Apr. 14,

24    2008) (Orlofsky, Special Master) ("*K-Dur 4/14/08 R&R*") (Appendix of Unpublished Authority,

25    Exh. B) (certifying class and finding "the Eleventh Circuit's conclusion in *Valley Drug* is

26    inconsistent with the Supreme Court's decisions in *Hanover Shoe* [] and *Illinois Brick* [].").

27    *Accord J.B.D.L. Corp. v. Wyeth-Ayers Labs., Inc.*, 225 F.R.D. 208, 215-16 (S.D. Ohio 2003) (pre-

28    *Valley Drug* decision rejecting "net benefits" challenge to adequacy and granting certification).

OPPOSITION TO DEFENDANT ABBOTT
LABORATORIES' MOTION TO COMPEL DISCOVERY
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

***Third***, in three recent decisions, courts rejected *the exact same arguments Abbott makes here* in the course of denying the same downstream discovery that Abbott seeks.  For instance, Abbott itself tried to obtain nearly the same discovery *from the very same named plaintiffs*, making almost exactly the same incoherent "class conflict" arguments in the *In re Tricor Antitrust Litigation*.  Explaining why Abbott was not entitled to the sought discovery, the court stated succinctly: "[T]he legal relevance is beyond me, even as to class certification.  I don't see how that [that some might 'benefit' in a net economic sense from the challenged conduct and some might not] creates a conflict."[7]  *See also K-Dur 1/2/07 R&R*, at 21 (denying downstream discovery, and finding that inquiry into ways class members benefitted from defendants' conduct is "immaterial" and "irrelevant"); *In re Hypodermic Products Direct Purchaser Antitrust Litig.*, MDL No. 1730, 2006 U.S. Dist. LEXIS 89353, at *19 (D.N.J. Sept. 7, 2006) (denying downstream discovery because whether class members benefitted is legally "irrelevant").[8]

***Fourth***, Abbott correctly acknowledges that Rule 23(a)(4) is fundamentally about protecting the interests of absent class members – *not* Abbott's own interests. Abbott Motion to Compel Production of Documents and Interrogatory Responses at 10-11 ("Abbott Mot.").  Yet, the sought downstream data and discovery, which Abbott hopes to use to try to show that the "Big Three" national wholesalers[9] have benefitted from the higher prices brought about by the challenged conduct, is not probative of whether these or any other entities would prefer to have their rights unremedied and forego recovery of millions of dollars in overcharges in this case.

---

[7] Transcript of Proceedings before the Honorable Kent A. Jordan, at 34-35, *In re Tricor Direct Purchaser Antitrust Litigation*, No. 05-340 (D. Del.), Mar. 3, 2006 (Appendix of Unpublished Authority, Exh. C).

[8] After remand in *Valley Drug* itself, after allowing an incredibly burdensome months-long foray into the same downstream discovery Abbott seeks here, neither the defendants (which included Abbott) nor the district court could even hypothesize *any* cognizable class conflict. *See In re Terazosin Antitrust Litig.*, 223 F.R.D. 666, 679 (S.D. Fla. 2004) ("the evidence indicates there is no class antagonism or conflict, much less a fundamental one").

[9] Abbott discusses its supposed concern for the interests of the Big Three (*i.e.,* AmerisourceBergen, Cardinal Health, and McKesson) at length in its papers. *See, e.g.,* Abbott Mot. at 3, 13; Declaration of Joel Hay, Ph.D. in Support of Abbott Laboratories' Motion to Compel Production of Documents and Discovery Responses at ¶¶ 14, 17, 22, 23, 25, 29 ("Hay Decl.").

-6-   OPPOSITION TO DEFENDANT ABBOTT LABORATORIES' MOTION TO COMPEL DISCOVERY
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

1   Plaintiffs know this because the very same "Big Three" wholesalers have each stated that there is

2   no class conflict or antagonism.  Indeed, each of the Big Three has written to this Court *expressly*

3   stating that: (1) its interests in this suit are *aligned with* – and **not** antagonistic to – those of the

4   named plaintiffs; (2) it wishes to participate in this case going forward as a class member

5   represented by the named plaintiffs; and (3) the named plaintiffs *can* adequately represent its

6   interests in this litigation.     *See* Letter from Howard D. Scher, Esq. on Behalf of

7   AmerisourceBergen Corp., dated May 19, 2008 ("AmerisourceBergen Letter"); Letter from

8   Thomas L. Long, Esq. on Behalf of Cardinal Health, Inc., dated May 19, 2008 ("Cardinal Health

9   Letter"); Letter from Peter K. Huston, Esq. on Behalf of McKesson Corp., dated May 21, 2008

10  ("McKesson Letter") (Exhs. 1-3 to the Declaration of Brendan Glackin, Esq., ("Glackin Decl.").

11  The Eleventh Circuit in *Valley Drug* had no similar evidence in the record, and, as a result

12  assumed (erroneously) that the national wholesalers might have had no interest in, or even

13  opposed, the prosecution of that class action. 350 F.3d at 1193.  This evidence moots any possible

14  relevance of the downstream data – *even under Abbott's own theory*.

15          ***Fifth***, if Abbott were truly interested in protecting the interests of absent class

16  members, it would join Plaintiffs in supporting class certification and then helping to design an

17  appropriate notice plan to ensure that absent class members are fully informed about the nature of

18  the suit and the relief requested.  Instead, in addition to trying to get this information from the

19  named plaintiffs, Abbott is now seeking to force the very same absent class members whose

20  interests it says it wants to protect to undergo burdensome discovery against their will, all while it

21  opposes class certification to ensure that none of them has an ability to recover overcharges in the

22  suit even if it decides that recovery is in its best interests.  But, these sophisticated businesses

23  know far better than Abbott does about what is in each of their respective best interests.  And, all

24  of them will be given the chance, if the class is certified, to decide whether to participate in this

25  suit.  If, after receiving due notice as provided by Rule 23, any class member believed the case

26  was contrary to its interests, it could opt-out.  Thus, even if there were absent class members who

27  did not want to participate in the suit, it would not and should not derail class certification.  *See*

28  *Roberts v. Heim,* 670 F. Supp. 1466, 1491 (N.D. Cal. 1987) ("[c]ourt[s] have long recognized the

-7-

use of the 'opt out' mechanism to ameliorate class conflicts"), *aff'd*, 43 F.3d 1401, 1994 WL 666043, *2 (9th Cir. 1994); *Wellbutrin*, 2008 U.S. Dist. LEXIS 36719, at *30 n.18 ("class members who do not wish to participate in the class litigation may opt out of the class"); *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 268-69 (D. Mass. 2008); *K-Dur 4/14/2008 R&R*, at 19 ("*if* any actual, fundamental conflict should arise, the opt-out provision of Rule 23(c)(2)(B) is available") (emphasis in original).  The sought discovery is not only useless and counterproductive, the very fact that Abbott would rather foreclose class member options rather than broaden them is evidence of Abbott's disingenuousness.

**Sixth**, even if there were some minimal possible relevance to the downstream discovery, it would be far outweighed by the high burden of producing it.  *See* Declaration of Laurence F. Doud III, Plaintiff RDC's CEO, dated May 20, 2008 ("Doud Decl.") (Glackin Decl., Exh. 4); Declaration of Gayle R. White, Plaintiff LWD's President and CEO, dated May 22, 2008 (Glackin Decl., Exh. 5); Declaration of Kevin Hurn, Merchandise Manager for Plaintiff Meijer, dated May 22, 2008 (Glackin Decl., Exh. 6); AmerisourceBergen Letter at 1-2 (Glackin Decl., Exh. 1); Cardinal Health Letter at 2 (Glackin Decl., Exh. 2); McKesson Letter at 1 (Glackin Decl., Exh. 3).  Thus, the discovery Abbott seeks is the epitome of discovery designed to harass and not inform.  Abbott's Motion to Compel should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On March 7, 2008 – barely two months before its opposition to class certification was then due – Abbott served voluminous discovery requests upon Plaintiffs, comprising 63 requests and 8 interrogatories.  Three document requests, Nos. 17, 24, and 25, and a compound interrogatory (No. 3),[10] sought information relating to Plaintiffs' sales and profits on, *inter alia*, Norvir, Kaletra, Reyataz, and Lexiva.

---

[10] This interrogatory seeks discovery far beyond the downstream discovery issues Abbott has briefed.  Yet, Abbott's proposed order would compel a "complete answer" to it – rendering Abbott's proposed order vastly overbroad.  First, the proposed order would require information Abbott itself disclaims (at least for purposes of this motion – *see* Abbott Mot. at 4 n.2) relating to ARVs other than Norvir, Kaletra, Lexiva, and Reyataz.  Second, Interrogatory 3 also asks for information relating to Plaintiffs' purchases and the amount of damages incurred by each class member – issues which: (1) will be addressed by the forthcoming productions of Plaintiffs'
*Footnote continued on next page*

OPPOSITION TO DEFENDANT ABBOTT
LABORATORIES' MOTION TO COMPEL DISCOVERY
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

Plaintiffs objected to each of the discovery requests quoted above as, *inter alia*, irrelevant, burdensome, and not permitted under the Supreme Court's decisions in *Hanover Shoe* and *Illinois Brick*. *See* Abbott Mot. at 5-9.

Furthermore, although its motion purports to seek discovery only from the named Plaintiffs, on May 14, 2008, Abbott served **ten absent class members** with subpoenas, seeking downstream sales and profit information on Norvir, Kaletra, Reyataz, and Lexiva. *See* Glackin Decl., Exhs. 7-16. Thus, not only does Abbott seek highly burdensome discovery from the named Plaintiffs, it intends to increase the burden exponentially by asking non-parties for the same voluminous, irrelevant information that has been barred in case after case.

### III.    ARGUMENT:  "DOWNSTREAM DISCOVERY" IS LEGALLY IRRELEVANT TO CLASS CERTIFICATION AND THUS SHOULD BE BARRED

#### A.    "Downstream Discovery" Has Been Almost Universally Been Barred in Direct Purchaser Class Actions

In antitrust cases such as this one, where plaintiffs seek overcharge damages, courts have *repeatedly denied* antitrust defendants' attempts to take downstream discovery. Such discovery has been barred not simply because it is wholly irrelevant to a direct purchaser's antitrust overcharge claim, or to any legally cognizable defense, or to class certification, but also because the very act of forcing the discovery violates the principles of antitrust deterrence that form the underpinning of Supreme Court jurisprudence in *Hanover Shoe* and *Illinois Brick*. As one court recently stated in denying a similar request for downstream discovery: "[C]ourts generally proscribe downstream discovery . . . . *[T]he Supreme Court has cautioned that the effectiveness of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities and the massive discovery that such an inquiry*

---

*Footnote continued from previous page*

purchase data for certain drugs, and/or (2) fall squarely within the purview of expert analysis (*i.e.*, quantification of class damages) which will be produced, under the current scheduling order, at the appropriate time for such expert disclosures. Compelling such answers now is both premature (meet and confer efforts have not terminated – Plaintiffs are producing their purchase data, for instance), and not part of the substantive motion Abbott is making. Plaintiffs respectfully request that any order of the Court should be restricted to the discoverability of downstream information – the only issue Abbott raises in its motion.

-9-

1    *would entail."* Pressure Sensitive Labelstock, 226 F.R.D. at 498; *see also Buspirone*, 210 F.R.D.

2    at 60 (rejecting arguments against class certification based on "net" economic effects, and

3    explaining that to permit the argument would introduce "just the kind of complicated proceedings

4    . . . that the Supreme Court held to be generally inappropriate in the antitrust context").

5              Explicitly recognizing this important antitrust principle, the Ninth Circuit in

6    *Arizona v. Shamrock Foods Co.* emphasized that the purpose behind the *Illinois Brick* rule

7    (barring the very kind of assessments of the net effects of conduct on direct purchasers) was to

8    "avoid increasing the cost and burden of antitrust actions" by eliminating the need for "massive

9    evidence to determine how the overcharge was apportioned throughout the distribution chain."

10   *Arizona*, 729 F.2d at 1212.[11]

11             Three recent decisions rejected the very arguments Abbott is making here in the

12   course of denying downstream discovery.  In the *Tricor* case, for instance, Abbott was recently

13   rebuffed in a nearly identical attempt to use *Valley Drug* as a basis for a downstream discovery

14   campaign.  Even though that case was more closely analogous to *Valley Drug* than this one –

15   *Tricor* involved (like *Valley Drug* itself) conduct that allegedly impeded the entry of generic

16   competitors to Abbott's branded Tricor product – the court summarily denied Abbott's motion to

17   compel the very same downstream documents and data Abbott again seeks here.  *See* Order, *In re*

18   *Tricor Direct Purchaser Antitrust Litig.*, C.A. No. 05-340 (KAJ) (D. Del. Mar. 6, 2006) (denying

19   downstream discovery) (Appendix of Unpublished Authority, Exh. D).  At the close of oral

20   argument, Judge Jordan (recently elevated to the Third Circuit) stated his opinion as follows:

21        **If you overcharge [plaintiffs]. . . it doesn't make a whit of difference what
          they do with that product they get from you afterwards.**

22

23        **. . . So the legal relevance is beyond me, even as to class certification.  I don't
          see how that creates a conflict.**  And so I'm not going to kick the door open to
          this kind of discovery, particularly when all three of the folks who would be

24   _____

25   [11] As discussed in the next section below, such "apportionment" of the overcharge as between the
     direct purchaser and subsequent customers is precisely what Abbott seeks to require here under
26   the guise of assessing "class conflicts."  Indeed, Abbott has explicitly raised the extent to which
     direct purchasers are capable of "passing on" the overcharge down the distribution chain as one of
27   the key issues Abbott seeks to explore with the discovery it now seeks.  *See* Hay Decl. at ¶¶ 10-
     16; Abbott Mot. at 2, 3.

28

subject to a good deal of this, and I'm talking about Big Three although I know you were seeking this from all the direct purchaser plaintiffs, have indicated in a way that I think is persuasive that **this is a fishing expedition that would be enormously expensive** and I believe the federal rules do require me to look at what the cost of a demand is associated with its potential relevance.

**I see no relevance. If I was able to discern some, I'd have to say it would be pretty small and certainly not worth the candle that is being presented to me here. So I'm denying the effort to get at this downstream data discovery. It's not happening.**

*Tricor* Transcript of Proceedings Before the Honorable Kent A. Jordan (Mar. 3, 2006), at 34-35.

Two additional courts have also recently rejected similar attempts by defendants to use *Valley Drug* as a basis for a downstream discovery fishing expeditions: *K-Dur* and *Hypodermic Products*. Both held, like *Tricor*, that the theorized class conflict relating to net economic harm is simply not cognizable in an overcharge case, and thus that the relevance of the sought discovery could not possibly outweigh the burden of producing it. As the *K-Dur* court held in denying downstream discovery:

Because all members of the putative class in this case will be entitled to the same measure of damage if successful -- the amount of the overcharge -- ***there can be no conflict within the putative class on the issue of damages. Accordingly, downstream discovery is irrelevant as a matter of law***.

*K-Dur 1/2/07 R&R* at 21-22.

Further, the court in *Hypodermic Products* upheld a Magistrate Judge's denial of a similar downstream motion for the same reasons: "For purposes of class certification, direct purchasers that have suffered overcharges have an antitrust injury and would be entitled to recover the full amount of the overcharge they paid; ***it is irrelevant if they may have also benefitted from the higher prices*** because their profits were a percentage of their acquisition costs." *Hypodermic Products*, 2006 U.S. Dist. LEXIS 89353, at \*19 (denying downstream discovery).

*Tricor*, *K-Dur*, and *Hypodermic Products* follow a long line of direct purchaser class cases – stretching back as far as the 1960s – denying defendants' efforts to obtain the very same kind of discovery Abbott seeks here:

OPPOSITION TO DEFENDANT ABBOTT
LABORATORIES' MOTION TO COMPEL DISCOVERY
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

- *In re Automotive Refinishing Paint Antitrust Litig.*, MDL 1426, 2006 U.S. Dist. LEXIS 34129, at *28 (E.D. Pa. May 26, 2006) ("***we will deny defendants' request that we depart from the long-held practice of proscribing discovery of downstream data***") (emphasis in original).

- *Pressure Sensitive Labelstock*, 226 F.R.D. at 498 ("***courts generally proscribe downstream discovery*** . . . the Supreme Court has cautioned that the effectiveness of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities and the massive discovery that such an inquiry would entail").

- *In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 U.S. Dist. LEXIS 23989, *50-52 (E.D. Pa. Nov. 30, 2004) ("downstream data is irrelevant to determine whether defendants are liable for price-fixing under the Sherman Act . . . courts have refused to require production of downstream data in antitrust price-fixing cases").

- *In re Monosodium Glutamate Antitrust Litig.*, MDL 00-1328, 2000 U.S. Dist. LEXIS 22521 (D. Minn. Sept. 14, 2000) (denying defendants' motion to compel documents concerning plaintiffs' own sales for "**lack of relevance**").

- *Vitamins*, 198 F.R.D. at 301 ("no court has ever allowed production of individualized downstream data").

- *Lumco Industries, Inc. v. Jeld-Wen, Inc.,* No. 96-CV-2125, slip op. at 2-3 (E.D. Pa. May 16, 1997) (denying defendants' motion to compel downstream discovery into plaintiff's own sales to its customers "on the grounds that said Interrogatory **is irrelevant and inadmissible as a matter of law** in accordance with *Hanover Shoe* []") (Appendix of Unpublished Authority, Exh. E).

- *In re Carbon Dioxide Antitrust Litig.,* MDL 940, slip op. at 4 (M.D. Fla. Nov. 19, 1993) ("The Court finds that **Defendants are not entitled to information about Plaintiffs' costs and profits.")** (citing *Illinois Brick* and *Hanover Shoe*) (Appendix of Unpublished Authority, Exh. F).

- *In re Carbon Dioxide Antitrust Litig.,* MDL 940, slip op. at 2 (M.D. Fla. Dec. 10, 1992) ("Defendants' Document Request No. 9 concerning the resale by Plaintiffs of carbon dioxide is **not relevant to class certification**.") (Appendix of Unpublished Authority, Exh. G).

- *In re Wirebound Boxes Antitrust Litig.*, 131 F.R.D. 578 (D. Minn. 1990) (holding plaintiff's financial information was irrelevant in overcharge case).

- *Go-Tane Service Stations, Inc. v. Ashland Oil, Inc.*, 508 F. Supp. 200 (N.D. Ill. 1981) (defendants' pass-on defense stricken and related downstream discovery stopped).

- *In re Folding Carton Antitrust Litig.*, 1978 U.S. Dist. LEXIS 20409, at *9 (N.D. Ill. May 5, 1978) ("Whether purchasers absorbed, passed-on, or made a profit on the overcharges in comparison with the industry generally *is irrelevant*, and investigations into such matters *are proscribed by Illinois Brick*.").

- *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.,* 335 F.2d 203 (7th Cir. 1964) (even before *Hanover Shoe*, plaintiff not required to respond to interrogatories about its own sales prices).

OPPOSITION TO DEFENDANT ABBOTT
LABORATORIES' MOTION TO COMPEL DISCOVERY
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

The experience of *Valley Drug* itself on remand is instructive. *See In re Terazosin Antitrust Litig.*, 223 F.R.D. 666 (S.D. Fla. 2004). After correctly characterizing downstream discovery as "novel," *id.* at 679, the district court permitted precisely what Abbott wants here: an incredibly burdensome months-long foray into the net economic effects on plaintiffs and absent class members of the challenged anticompetitive conduct. *Id.* at 674. After overseeing this discovery, the remand court observed that the process was "difficult" and fraught with "insuperable technological problems" due to a variety of factors, including "mergers and consolidations in the industry, the sheer volume of data, [and] the need to create new data compilation programs." *Id.*

Despite all this effort and incredible expense, in the end, neither the defendants (which included Abbott) nor the district court could even hypothesize *any* class conflict cognizable (outside of the Eleventh Circuit) from the resulting discovery. *Id.* at 678 ("Defendants cannot articulate any potential or actual conflict or antagonism"); *id.* at 679 ("the evidence indicates there is no class antagonism or conflict, much less a fundamental one"); *id.* at 680 ("the Court does not find a realistic possibility for fundamental antagonism"). While the *Terazosin* court on remand declined to recertify the class at that time due to its view that the Eleventh Circuit required classes to be "homogeneous . . . to avoid any **potential** unforeseen conflict," *id.* at 680, it later found that Rule 23(a)(4) was indeed satisfied and certified the class in light of settlement.[12] Moreover, as discussed further below, the decision declining to certify in *Terazosin* was based upon reasoning that is contrary to the law of the Ninth Circuit, where a "conflict" must be actual, and "***apparent, imminent, and on an issue at the very heart of the suit***," not "potential" and as yet "unforeseen." *Blackie*, 524 F.2d at 909.[13]

---

[12] *See Order, In re Terazosin Hydrochloride Antitrust Litig.*, Case Nos. 98-3125, 99-7143 (S.D. Fla. Mar. 1, 2005) (Appendix of Unpublished Authority, Exh. H). *Cf. Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) (certification on settlement must still ensure adequacy of representation under Rule 23(a)(4)).

[13] *See also Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (merely "speculative" conflicts do not defeat class certification); *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 241 (D. Ariz. 2001) ("potential conflicts" not enough). *Contrast Valley Drug*, 350 F.3d at 1194 ("the defendant does not have to show *actual* antagonistic interest; the *potentiality* is enough").

Arrayed against all of this authority, Abbott can cite only two cases: Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P., 247 F.R.D. 156, 177 (C.D. Cal. 2007) and In re Urethane Antitrust Litig., 237 F.R.D. 454 (D. Kan. 2006). Neither supports the sought discovery. Allied does not concern "downstream discovery" (or any analysis of the fruits of such discovery) at all. The court in Allied found that there was a conflict relating to the overcharge itself, i.e., there was evidence that some class members paid more due to the challenged conduct and some paid less. See 247 F.R.D. at 177. The conflict, in other words, was "upstream," not "downstream." The court specifically declined to address "downstream" conflicts based on "pass on" issues prohibited by Hanover Shoe. Id. at 177 n.33. In Urethane, which does not involve the pharmaceutical industry, the court did incorrectly allow some downstream discovery, in large part because in that case it was deemed relevant to matters other than that which Abbott seeks such discovery here (e.g., typicality and predominance). See 237 F.R.D. at 464.

In sum, the overwhelming weight of authority here is against allowing the sought discovery. In the one case where Abbott was actually permitted to take downstream discovery (which case involved many of the same plaintiffs and absent class members), the discovery proved as burdensome and time-consuming as it was irrelevant. With respect, this Court should follow the courts in, *e.g.*, *Tricor*, *K-Dur*, and *Hypodermic Products*, and deny Abbott's motion to compel.

**B.    The Purported "Class Conflict" Hypothesized by *Valley Drug* is Not Cognizable in the Ninth Circuit**

The sought discovery is irrelevant because the *sole* use to which Abbott intends to put the discovery – proving the "conflict" hypothesized by *Valley Drug* – is not cognizable under Ninth Circuit law. Five courts now have explicitly rejected the "conflict" theorized by *Valley Drug* as contrary to long-standing class certification law, and, more importantly, to the principles set out by the Supreme Court in *Hanover Shoe* and *Illinois Brick*. *See Tricor, supra*; *Wellbutrin*, 2008 U.S. Dist. LEXIS 36719, at *24-29; *Ovcon*, 246 F.R.D. at 303-05; *K-Dur*, 4/14/08 R&R, at

-14-

14-19; *K-Dur* 1/2/07 R&R, at 20-26; *Hypodermic Products*, 2006 U.S. Dist. LEXIS 89353, at *19-20.  This Court should, too.

### 1. Abbott's Proposed "Net Effects" Class Conflict Analysis Constitutes an Impermissible End-Run Around *Hanover Shoe* and *Illinois Brick*

Abbott seeks downstream discovery, it says, in order to assess the extent to which the ability to "pass on" Abbott's overcharge to entities down the distribution chain might differ among class members.  Abbott Mot. at 2-4.  This would constitute an end-run around the Supreme Court's bar on assessing the "pass on" in direct purchaser cases.

*Valley Drug* turns, in material part, on the Eleventh Circuit's view that the prohibitions against assessing the pass-on of *Hanover Shoe* do not extend to evaluating "class conflicts" for purposes of class certification.  350 F.3d at 1192.  But, as discussed below and as set out in several recent decisions, *Valley Drug* is directly contrary to controlling law, including from the Supreme Court, which prohibits downstream analyses, and does not countenance end-runs around that prohibition:

- ***Ovcon*, 246 F.R.D. at 303 ("the Eleventh Circuit's conclusion . . . conflicts with the Supreme Court's decisions in *Hanover Shoe* [] and *Illinois Brick*").**

- ***Wellbutrin*, 2008 U.S. Dist. LEXIS 36719, *26 n.15 (*Valley Drug* conflicts with Supreme Court precedent because "*Hanover Shoe* and *Illinois Brick* eliminate any 'fundamental conflict' between the class members.").**

- ***K-Dur* 4/14/08 R&R, at 14 ("the Eleventh Circuit's conclusion in [*Valley Drug*] is inconsistent with the Supreme Court's decisions in *Hanover Shoe* [] and *Illinois Brick* []").**

- ***Hypodermic Products*, 2006 U.S. Dist. LEXIS 89353, at *19 (rejecting *Valley Drug* because it ignored that direct purchasers who paid overcharges "have an antitrust injury and would be entitled to recover the full amount of the overcharge they paid; it is irrelevant if they may have also benefitted from the higher prices because their profits were a percentage of their acquisition costs").[14]**

---

[14] Abbott suggests that the *Hypodermic Products* court only denied discovery because no proof of conflict had been shown.  But, the court ***first*** rejected the reasoning of *Valley Drug*.  It then alternatively held that the defendant had not proffered any evidence of a cognizable conflict. *See Hypodermic Prods.*, at *20.

1  *See also J.B.D.L.*, 225 F.R.D. at 216 ("as long as the price paid by the class members for

2  Premarin was higher than it would have been absent the alleged anticompetitive conduct, **there is**

3  **no conflict created** if indeed some of the direct purchasers were able to recoup the overcharge

4  through price increases passed on to other purchasers.").

5        All of these recent rejections of *Valley Drug* (and its reasoning) have recognized

6  that in order to encourage plaintiffs to prosecute antitrust violations, the Supreme Court has held

7  that a direct purchaser is entitled to recover the "full amount" of any overcharges incurred by that

8  purchaser, regardless of whether the purchaser gained or lost money reselling the product or

9  service "downstream" to another buyer.  *See Hanover Shoe*, 392 U.S. at 494.  Accordingly,

10  inquiry into the direct purchaser's sales and profits is irrelevant to an antitrust action as a matter

11  of law.  What matters in an overcharge case is the sale by defendants to the direct purchaser – not

12  what occurs further "downstream" in the chain of distribution.

13        The Supreme Court reasoned that defendants should not be permitted to defend an

14  overcharge claim by arguing that direct purchasers had "passed on" the overcharge to its own

15  customers because it would vastly complicate private antitrust litigation, burdening the parties

16  and courts with "massive evidence and complicated theories," and thereby diminishing the

17  effectiveness of private antitrust suits as an important weapon in enforcing the nation's antitrust

18  laws.  *Id.* at 493-94; *see also Illinois Brick* at 745-46 (direct purchasers are "spared the burden of

19  litigating" pass-on issues).

20        The Ninth Circuit has repeatedly echoed the Supreme Court's abhorrence of "pass

21  on" analysis in direct purchaser actions, observing just this year that determining "what portion of

22  [an] illegal overcharge was 'passed on' . . . and what part was absorbed by the middlemen . . .

23  involves all the evidentiary and economic complexities that *Illinois Brick* clearly forbade."

24  *Kendall*, 518 F.3d at 1049 (citations and internal quotes omitted). *See also Delaware Valley,* __

25  F.3d __, 2008 U.S. App. LEXIS 9308, at *9-11 (prohibition of pass-on theories is a "bright line

26

27

28

rule") (citations and internal quotes omitted); *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980); *Arizona*, 729 F.2d at 1212.[15]

Despite clear precedent barring downstream discovery sought for purposes of assessing the extent and nature of the "pass on" in direct purchaser cases, Abbott is now asking this Court to countenance just such discovery and the very "net benefits" analysis binding law prohibits. This Court should join the vast majority of courts – *e.g.*, *Tricor*, *K-Dur*, *Hypodermic Products*, *Ovcon* and *Wellbutrin* – that have refused to allow an impermissible and contralegal end-run around *Hanover Shoe* and *Illinois Brick*.

> **2.      Abbott's Purported "Class Conflict" is Not Legally Cognizable Because it is Wholly Unrelated to Any Substantive Claim or Defense in the Matter**

By seeking "downstream" data solely for purposes of proving a purported conflict – and not for any reason relating to the underlying merits of the suit, the relief requested, or any substantive claim or defense – Abbott is implicitly conceding that whatever the conflict is, it does not relate to the underlying merits of the suit. Yet, for a purported conflict to be cognizable under Rule 23(a)(4) in this Circuit (and most others), the conflict must be actual and imminent, not merely hypothetical, and must relate to an issue "at the heart of the suit." The Ninth Circuit made this clear in *Blackie*, where the named plaintiff was said to be pursuing a remedy which was purportedly not favored by certain class members:

> [C]ourts have generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset ***unless the conflict is apparent, imminent, and on an issue at the very heart of the suit***.

*Blackie*, 524 F.2d at 909; *see also Cummings*, 316 F.3d at 896 (rejecting "speculative" conflicts); *Winkler*, 205 F.R.D. at 241.

In other words, so long as class members share a common interest in maximizing overcharge damages – ***which is the only relief Plaintiffs are seeking*** – no conflict under Rule 23(a)(4) can exist even in theory. Here, all Plaintiffs and members of the proposed direct

---

[15] *See also Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977) (vacating denial of class certification and holding that where all class members are seeking to recover overcharges, "downstream" or "net" economic issues are simply irrelevant to class certification).

OPPOSITION TO DEFENDANT ABBOTT LABORATORIES' MOTION TO COMPEL DISCOVERY CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

purchaser class have an interest in maximizing the amount of overcharges recovered. In rejecting the very same *Valley Drug* conflict theory, the court in *K-Dur* observed:

> Based on the Supreme Court's decisions in *Hanover Shoe* and *Illinois Brick,* if the [Direct Purchaser Plaintiffs] incurred an overcharge based upon the Defendants' alleged actions, they would be deemed to have suffered an antitrust injury and would be entitled to recover the full amount of the overcharge, regardless of whether they may have benefited in other ways from Defendants' alleged actions. []
>
> Because all members of the putative class in this case will be entitled to the same measure of damages if successful – the amount of the overcharge – there can be no conflict within the class on the issue of damages.
>
> *          *          *
>
> Defendants' arguments that the Big Three otherwise benefitted from the delayed entry of a generic version of K-Dur 20 are irrelevant as a matter of law, and cannot serve to demonstrate that a conflict exists between the Plaintiffs' interests and those of the Big Three with respect to this litigation.

*K-Dur 4/14/08 R&R* at 16 (internal quotes and citation omitted). *See also Ovcon*, 246 F.R.D. at 304 (same); *Wellbutrin*, 2008 U.S. Dist. LEXIS 36719, *25 (rejecting *Valley Drug* and holding that "any economic benefits the wholesalers experienced in the past are legally irrelevant because the overcharge itself – ***not any economic effect of the overcharge*** – is the proper measure of recovery in this antitrust case."); *Hypodermic Prods.*, 2006 U.S. Dist. LEXIS 89353, at *19 ("[f]or purposes of class certification, direct purchasers . . .would be entitled to recover the full amount of the overcharge they paid; it is irrelevant if they may have also benefitted from the higher prices").[16]

Accordingly, because all Plaintiffs have the same interests in maximizing the amount of overcharges recovered – which is the only form of relief Plaintiffs are seeking in this

---

[16] *See also In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 313 (3d Cir. 1998) ("common task of demonstrating the existence and implementation" of scheme to defraud satisfies the adequacy requirement even where some claims of some class members might be adverse to others); *Metropolitan Life*, 1999 WL 33957871, at *21 ("so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes").

case – there can be no fundamental conflict that "goes to the heart of the suit" and thus the only basis for seeking downstream discovery is fruitless.[17]

### 3.    Abbott's Proposed Downstream "Economic Harm" Analysis is not Probative of a Cognizable Class Conflict

Abbott is seeking a massive amount of data and documents from Plaintiffs and ten absent class members – including the Big Three, which collectively comprise a large share of the overall class purchase volume. Hay Decl. at ¶¶ 14. Abbott says it wants to use this data to perform unspecified but clearly complex mathematical "pass on" computations that it says would assist it, somehow, in this evaluation of whether certain class member are interested in remaining in the class. Specifically, Abbott believes that the "Big Three" might "have a financial interest in preserving the status quo" (Abb. Mot. at 12), and thus might not want to participate as absent class members in the litigation. The argument is logically incoherent and factually and legally flawed for three reasons.

*First*, as Abbott acknowledges, the basis of a conflicts analysis under Rule 23(a)(4) is necessarily the protection of the due process rights of the absent parties. Abbott Mot. at 11.[18] Yet, as this Court has recognized, arguments by a defendant about its desire to "protect" the interests of absent class members are "a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 451-52 (N.D. Cal. 1984) (quoting *Eggleston* v. *Chicago Journeymen,* 657 F.2d 890, 895 (7th

[17] Abbott attempts to distinguish *Ovcon* and *Wellbutrin* by saying that: (1) the cases address class certification and not discovery; and (2) that the anticompetitive conduct had ceased, whereas Abbott continues to injure the marketplace here. Abb. Mot. at 15 n.4. As to its first point, if a conflict cannot exist **as a matter of law**, the requested discovery is not permitted. *See K-Dur*, *supra*; *Tricor*, *supra*; and *Hypodermic Products*, *supra*. As to its second, (a) Plaintiffs are not pursuing an injunction – the only relief sought is in the form of overcharges; (b) in any event, the desire not to have one's rights vindicated in order to help perpetuate illegal conduct is not an interest that courts are willing to protect on behalf of absent class members, or anyone else (*In re Potash Antitrust Litig.,* 159 F.R.D. 682, 692 (D. Minn. 1995)); and (c) the main absent class members to which Abbott refers – the Big Three wholesalers – have indicated they do not see a conflict, and even if some class members do, they will have the right to opt out at the appropriate time.

[18] *See Epstein v. MCA, Inc.*, 179 F.3d 641, 648 (9th Cir. 1999) (Rule 23 protects absent class members); *In re GMC Pick-Up Truck,* 55 F.3d 768, 796 (3d Cir. 1995) (Rule 23(a) seeks to "safeguard the due process rights of absentees"). It is not about protecting *Abbott*.

-19-

OPPOSITION TO DEFENDANT ABBOTT LABORATORIES' MOTION TO COMPEL DISCOVERY CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

764122.1

1   Cir. 1981)).[19]  And, the Court has reason to be especially dubious of Abbott here.  Not only is

2   Abbott seeking here to defeat the claims of Plaintiffs and the class and preventing all of them

3   from recovering hundreds of millions of dollars in overcharges, but the method by which Abbott

4   offers to "protect" absent class member interests here is by ***demanding that these same absent***

5   ***class members undergo the burdensome process of producing reams of confidential business***

6   ***information against their will.***  Abbott's argument is therefore incoherent and internally

7   contradictory.

8        ***Second***, the downstream data is purportedly sought so that Abbott could attempt to

9   calculate whether certain absent class members – primarily the Big Three wholesalers – made

10  more money on a net economic sense from the Norvir price hike.  Hay Decl. at ¶¶ 14, 22-24, 29.

11  According to Abbott, if it could somehow show that the Big Three profited, in a net economic

12  sense, from the Norvir price hike that would necessarily mean that the "Big Three" would prefer

13  to opt out of the litigation, and forego recovery of potentially hundreds of millions of dollars in

14  overcharges out of any class settlement or judgment achieved by Plaintiffs in this action.

15  Abbott's logic is not only flawed (there's no *a priori* reason to believe that a class member would

16  decide that a class action seeking overcharge damages was against its economic interests), but it

17  is wrong as a matter of fact.

18       Indeed, we now know exactly what each of the Big Three wholesalers themselves

19  believe is in its respective economic interests: remaining in the class and not producing reams of

20  downstream discovery for the futile purpose of attempting to determine what is their respective

21  economic interests.  Each of the three national wholesalers has written to this Court *expressly*

22  stating that:  (1) its interests in this suit are *aligned with* – and **not** antagonistic to – those of the

23  named plaintiffs; (2) it wishes to participate in this case going forward as a class member

24  represented by the named plaintiffs; (3) the named plaintiffs *can* adequately represent its interests

25  in this litigation; and (4) the sought downstream discovery would be incredibly burdensome.  *See*

26  ─────────────────────
27  [19] *See also Wellbutrin*, 2008 U.S. Dist. LEXIS 36719, at *22-23 n.14 (courts generally skeptical
    of defenses to class certification based on intra-class conflicts between the proposed class
    members).

28

OPPOSITION TO DEFENDANT ABBOTT
LABORATORIES' MOTION TO COMPEL DISCOVERY
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

1    Glackin Decl., Exhs. 1-3.  The computations Abbott would like to do are thus beside the point: we

2    already know what the Big Three wholesalers believe is in their own economic interests.  Given

3    that Abbott has conceded that the entire purpose of its "class conflicts" analysis is to determine

4    what the interests of these very class members are, there is now absolutely no reason to allow the

5    discovery.

6         ***Third***, the discovery and "net benefits" analysis is all completely unnecessary and

7    irrelevant given Abbott's concession that the whole point of its "downstream" analysis is to

8    determine whether recovering overcharge damages as part of this suit would be in the interests of

9    certain absent class members.  But, as Abbott well knows, if the class is certified, all class

10   members will have the absolute right decide for themselves whether to participate in this suit – by

11   using the notice and opt-out provision built into Rule 23.  Governing authority supports this: if

12   one of the sophisticated business entities in the class does not want its rights adjudicated in this

13   suit, or to recover overcharges from Abbott, the cure for that concern is opting out, not barring a

14   class recovery for everyone else.  *Wellbutrin*, 2008 U.S. Dist. LEXIS 36719, at *29 n.17; *K-Dur

15   4/14/2008 R&R*, at 19 ("*if any actual fundamental conflict should arise, the opt out provision of

16   Rule 23(c)(2)(B) is available*") (emphasis in original); *Roberts*, 670 F. Supp. at 1491 ("[c]ourt[s]

17   have long recognized the use of the 'opt out' mechanism to ameliorate class conflicts"); *Lubin v.

18   Sybedon Corp.*, 688 F. Supp. 1425, 1459 (S.D. Cal. 1988) ("any class conflicts could be

19   ameliorated through the 'opt out' mechanism of Rule 23(c)(2)"); *Natchitoches*, 247 F.R.D. at 269

20   ("[s]ophisticated players such as distributors and large hospitals can determine for themselves

21   whether a fundamental conflict exists within the class"); *Smilow v. Southwestern Bell Mobile

22   Sys.*, 323 F.3d 32, 43 (1st Cir. 2003).[20]

23

24   _____

25   [20] *See also* 1 NEWBERG ON CLASS ACTIONS § 3.30 (4th ed.) ("[t]hus, the opt-out provision of
     Rule 23(c)(2) . . . avoids class certification denial for conflicts that are merely conjectural and, if
26   conflicts do exist, resolves them by allowing dissident class members to exclude themselves from
     the action"); 5 MOORE'S FEDERAL PRACTICE § 23.25[4] [b] [iii] (3d ed. 2003) ("a court will not
27   refuse to certify a class merely because some of the class members prefer to leave their rights
     unremedied").

28

1    In sum, if Abbott were truly the protector of absent class member interests it

2    claims to be, it would support class certification and an adequate notice and opt-out program.

3    But, Abbott is not such a protector, and the burdensome downstream discovery it seeks is not

4    probative of any cognizable class conflict – even in theory.

5    **C.**    **Abbott Has Not Even Made the Showing Required By *Valley Drug***

6    As the *Labelstock* court has noted, *Valley Drug* did not call for downstream

7    discovery in every case and that evidential showing of *probable* conflict is first required.

8    *Labelstock*, 226 F.R.D. at 498.  Abbott has failed to do so.  **First**, Abbott has not come forward

9    with any evidence (or even a plausible explanation or theory) of a conflict.  Indeed, the three main

10    entities it hypothesizes would be antagonistic to the litigation – the Big Three wholesalers – are

11    actually in favor of the suit and support class certification.  This is in stark contrast to *Valley Drug*

12    itself, which turned in material part, on the Eleventh Circuit's view based on the record in that

13    case that "the three national wholesalers with the bulk of the claims **have chosen not to**

14    **participate in the litigation or have assigned their interests to third-parties**."  *Valley Drug*, 350

15    F.3d at 1193.  Abbott has no evidence that any class member believes that its own economic

16    interests are best served by opting out.

17    **Second**, the purported evidence Abbott has come up with – namely the assertion

18    that direct purchasers operate, like most resellers in most industries, on a percentage mark-up

19    basis – is insufficient to satisfy even *Valley Drug*, which held that the existence of such a practice

20    "standing on its own, would be insufficient to prove net economic benefit."  *Valley Drug*, 350

21    F.3d at 1191.  Accordingly, Abbott has not even met the Eleventh Circuit's own prerequisites for

22    overcoming the general rule against downstream discovery.

23

24    **D.**    **The Burdens Associated With the Massive Discovery Abbott Seeks Far
       Outweigh Any Potential Benefit**

25    As Abbott concedes, discovery is not allowable if the "burden or expense of the

26    proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(iii).  Indeed, the heavy

27    burden downstream discovery would pose was one of the reasons the Supreme Court instituted

28

-22-

OPPOSITION TO DEFENDANT ABBOTT
LABORATORIES' MOTION TO COMPEL DISCOVERY
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

1    the direct purchaser rule.  *See Royal Printing*, 621 F.2d at 325 n.3 (observing "complexity of

2    proof" involved in downstream sales is reason they were proscribed).  Court after court – and

3    even Abbott's own cited case – note that the substantial burden involved in downstream

4    discovery is a more than adequate basis to deny it.  *See, e.g., Pressure Sensitive Labelstock*,

5    226 F.R.D. at 498 ("marginal relevance" of downstream discovery "clearly outweighed by the

6    burden and expense"); *Vitamins*, 198 F.R.D. at 301-02; *Urethane*, 237 F.R.D. 463 (burden is

7    basis to deny downstream discovery).

8         The downstream discovery campaign Abbott seeks to employ would involve

9    complicated and expensive burdens on Plaintiffs (and now at least ten absent class members).  As

10   detailed in the declarations of Laurence F. Doud, CEO of Plaintiff RDC, Gayle R. White,

11   President and CEO of Plaintiff LWD, and Kevin Hurn on behalf of the Meijer Plaintiffs (Glackin

12   Decl., Exhs. 4-6), collecting and producing the information would require sifting through tens (if

13   not hundreds) of thousands of transactions for hundreds of customers for the entire period from

14   2002 through 2006.

15        This burden is multiplied by the ten subpoenas Abbott has served on absent class

16   members, exponentially increasing the burden involved in this discovery.  Counsel for the Big

17   Three have explained in their respective letters to the Court that Abbott's requests involve

18   hundreds of thousands of sales transactions for Norvir and Kaletra alone (to say nothing of other

19   drugs).  Abbott's requests stretch back six years, requiring searches of multiple documentary and

20   electronic files, including legacy computer systems – an expensive and vastly time-consuming

21   request.  *See* AmerisourceBergen Letter, at 1-2 (Glackin Decl., Exh. 1); Cardinal Health Letter at

22   2 (Glackin Decl., Exh. 2); McKesson Letter at 1 (Glackin Decl., Exh. 3).  Abbott may contend

23   that its present motion is only against the named Plaintiffs, and presumably will argue that the

24   considerable burden to absent class members should not be considered.  But, as pointed out

25   above, Abbott explicitly and repeatedly referenced proposed discovery of absent class members,

26   and its proposed analysis of "net economic benefits" suggests it will seek such discovery. The

27   very justification Abbott gives for the downstream discovery makes no sense without discovery

28   from absent class members: Abbott's entire argument depends upon a *comparison between* the

-23-

OPPOSITION TO DEFENDANT ABBOTT
LABORATORIES' MOTION TO COMPEL DISCOVERY
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

1  named plaintiffs and absent class members in order to show a supposed "conflict."  Given that the

2  relevance of the sought discovery is non-existent, and that merely forcing its production would,

3  according to the Supreme Court, undermine the antitrust laws, the massive burden associated with

4  downstream discovery cannot be justified.

5  **IV.    CONCLUSION**

6          For the foregoing reasons, Abbott's motion to compel should be denied.

7

8  Dated: May 23, 2008                    Respectfully submitted,

9                                         /s/ Eric Cramer_____

10                                        Daniel Berger
                                          Email: danberger@bm.net

11                                        Eric L. Cramer, *Pro Hac Vice*
                                          Email: ecramer@bm.net

12                                        Daniel C. Simons

13                                        Email: dsimons@bm.net

14                                        **BERGER & MONTAGUE, P.C.**
                                          1622 Locust Street

15                                        Philadelphia, PA  19103
                                          Telephone: (215) 875-3000

16                                        Facsimile: (215) 875-4604

17                                        *Counsel for Plaintiff Rochester Drug Cooperative, Inc.*

18
                                          Linda P. Nussbaum, *Pro Hac Vice*
19                                        Email: lnussbaum@kaplanfox.com

20                                        John D. Radice, *Pro Hac Vice*
                                          Email: jradice@kaplanfox.com

21                                        **KAPLAN FOX & KILSHEIMER, LLP**

22                                        850 Third Avenue, 14th Floor
                                          New York, NY 10022

23                                        Telephone: (212) 687-1980
                                          Facsimile: (212) 687-7714

24

25                                        *Counsel for Plaintiffs Meijer, Inc. and Meijer Distribution, Inc.*

26

27

28

764122.1                          -24-

1    Bruce E. Gerstein, *Pro Hac Vice*
     Email: bgerstein@garwingerstein.com
2    Noah H. Silverman, *Pro Hac Vice*
     Email: nsilverman@garwingerstein.com
3    **GARWIN GERSTEIN & FISHER, LLP**
4    1501 Broadway, Suite 1416
     New York, NY  10036
5    Telephone: (212) 398-0055
6    Facsimile: (212) 764-6620

7    *Counsel for Plaintiff Louisiana Wholesale Drug Co., Inc.*

8    *Additional Counsel*:

9
10   John Gregory Odom, *Pro Hac Vice*
     Email: greg@odrlaw.com
11   Stuart E. Des Roches, *Pro Hac Vice*
     Email: stuart@odrlaw.com
12   John Alden Meade, *Pro Hac Vice*
     Email: jmeade@odrlaw.com
13
     **ODOM & DES ROCHES, LLP**
14   Suite 2020, Poydras Center
     650 Poydras Street
15   New Orleans, LA  70130
16   Telephone: (504) 522-0077
     Facsimile: (504) 522-0078
17

18   David P. Smith, *Pro Hac Vice*
     Email: dpsmith@psfllp.com
19   W. Ross Foote, *Pro Hac Vice*
     Email: rfoote@psfllp.com
20   **PERCY SMITH & FOOTE, LLP**
21   720 Murray Street
     P.O. Box 1632
22   Alexandria, LA  71309
23   Telephone: (318) 445-4480
     Facsimile: (318) 487-1741
24

25

26

27

28

764122.1                                                -25-

1
2

Joshua P. Davis (State Bar No. 193254)
Email: davisj@usfca.edu
**LAW OFFICES OF JOSHUA P. DAVIS**
437A Valley Street
San Francisco, CA 94131
Telephone: (415) 422-6223

3
4
5
6
7
8
9

Joseph R. Saveri (SBN 130064)
Email: jsaveri@lchb.com
Eric B. Fastiff (SBN 182260)
Email: efastiff@lchb.com
Brendan Glackin (SBN 199643)
Email: bglackin@lchb.com
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

10
11
12
13
14
15
16
17
18
19

Joseph M. Vanek, *Pro Hac Vice*
Email: jvanek@vaneklaw.com
David P. Germaine, *Pro Hac Vice*
Email: dgermaine@vaneklaw.com
**VANEK, VICKERS & MASINI, P.C.**
111 South Wacker Drive, Suite 4050
Chicago, IL  60606
Telephone: (312) 224-1500
Facsimile: (312) 224-1510

20
21
22
23
24
25

Andrew E. Aubertine, *Pro Hac Vice*
Email: aa@adr-portland.com
**AUBERTINE DRAPER ROSE, LLP**
1211 S.W. Sixth Avenue
Portland, OR  97204
Telephone: (503) 221 4570
Facsimile: (503) 221 4590

26
27
28

-26-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Charles M. Kagay (SBN 073377)
Email: cmk@slksf.com
**SPIEGEL, LIAO & KAGAY**
388 Market Street, Suite 900
San Francisco, CA  94111
Telephone:  (415) 956 5959
Facsimile:  (415) 362 1431

Tucker Ronzetti, *Pro Hac Vice*
Email: tr@kttlaw.com
Adam Moskowitz, *Pro Hac Vice*
Email: amm@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON**
2800 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL  33131 2335
Telephone: (305) 372 1800
Facsimile: (305) 372 3508

Paul E. Slater, *Pro Hac Vice*
Email: pes@sperling-law.com
**SPERLING & SLATER**
55 West Monroe Street, Suite 3200
Chicago, IL  60603
Telephone: (312) 641 3200
Facsimile: (312) 641 6492

**Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of this document has been obtained from Eric Cramer, Linda Nussbaum, & Bruce Gerstein.**

764122.1

-27-