1  Joseph R. Saveri (SBN 130064)
   *jsaveri@lchb.com*
2  Brendan Glackin (SBN 199643)
   *bglackin@lchb.com*
3  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   Embarcadero Center West
4  275 Battery Street, 30th Floor
   San Francisco, CA 94111-3339
5  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
6
7  *Attorneys for Plaintiffs*
8  [Additional Counsel Listed on Signature Page]
9
10                UNITED STATES DISTRICT COURT
11                NORTHERN DISTRICT OF CALIFORNIA
12                     (OAKLAND DIVISION)
13

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant.<br><br>--[*caption continues next page*]-- | Case No. C 07-5985 CW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE, OR IN THE ALTERNATIVE TO FILE SUPPLEMENTAL MEMORANDUM IN FURTHER OPPOSITION TO DEFENDANT ABBOTT LABORATORIES' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES**<br><br>Date:    July 24, 2008<br>Time:    2:00 p.m.<br>Dept.:   Courtroom 2, 4th Floor |

| | |
|---|---|
| ROCHESTER DRUG CO-OPERATIVE, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | Case No. C 07-6010 CW<br><br>**Hon. Claudia Wilken** |
| LOUISIANA WHOLESALE DRUG COMPANY, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | Case No. C 07-6118 CW<br><br>**Hon. Claudia Wilken** |

<u>**NOTICE OF MOTION AND MOTION TO STRIKE, OR IN THE ALTERNATIVE, TO FILE SUPPLEMENTAL MEMORANDUM**</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 24, 2008 at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Claudia Wilken at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, plaintiffs Meijer, Inc. & Meijer Distribution, Inc., Rochester Drug Co-Operative, Inc., and Louisiana Wholesale Drug Company, Inc. will and hereby do move this Court for an Order to Strike, or in the Alternative, to File Supplemental Memorandum in Further Opposition to Defendant Abbott Laboratories' Motion to Compel Production of Documents and Interrogatory

Responses. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the record in this matter, and any arguments of counsel.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

Acknowledging the deficiency of its opening motion, Abbott posits, for the first time on reply, new "conflict" theories to justify the downstream discovery it seeks. Abbott's reply is accompanied by a new declaration by its economist introduced solely to buttress new theories not contained in Abbott's opening papers. Abbott submits this new declaration even though—due to the legal irrelevance of this economist's opening report—Plaintiffs did not submit a responsive expert report. Abbott *now* asks for downstream data based on speculation that Plaintiffs' alternate ways of proving Abbott's liability could somehow differentially affect class members. Plaintiffs therefore move this Court to strike Abbott's new declaration and new arguments or, in the alternative, allow a short response. And, Plaintiffs' short response is this: Abbott's new assertions run into the same *Illinois Brick* wall as its prior arguments. The supposed "conflicts" relate solely to speculation about some possible effect the prosecution of this lawsuit—which seeks relief in the form of overcharge damages—could have on Abbott's conduct prospectively, an effect that, according to Abbott, could cause some class members net economic harm. Abbott's new theory is really the same as the old theory. The speculated conflict still relates to downstream effects and is therefore still legally irrelevant.

Respectfully, the Court should not, and need not, countenance Abbott's attempt to raise in reply new arguments about its speculative conflicts, with a brand new expert declaration in support. *See Thompson v. Commissioner*, 631 F.2d 642, 649 (9th Cir. 1980). Abbott's shifting position only proves that its true motive—under whatever pretext—is to harass both Plaintiffs and absent class members by making them search for and produce reams of documents and data that are legally irrelevant under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977), and *Hanover Shoe v. United States Machinery Corp.*, 392 U.S. 481, 493-94 (1968).

---

[1] Plaintiffs contacted Abbott before filing this motion. Abbott stated that it intends to oppose it.

I.  **ABBOTT'S REPLY BRIEF SHOULD BE STRICKEN BECAUSE IT RAISES NEW ARGUMENTS**

Abbott's reply makes new arguments relating to purported preferences among the class as to which of Plaintiffs' proffered theories should be used to establish liability. *See* Abbott Laboratories' Reply in Support of Its Motion to Compel Production of Documents and Interrogatory Responses, at 4-5 (filed May 30, 2008) ("Reply Br."). These arguments were never set forth in Abbott's opening papers. Abbott points to no new facts that it has learned only since Plaintiffs served their class certification motion and supporting documents on May 5, 2008, a week before Abbott's May 12 motion.

The Federal Rules do not permit litigation by ambush. It is "manifestly unfair" for an opponent to be given "no opportunity for a written response" to new arguments which are raised on reply, which also deprives the Court of all the benefits of the adversarial process. *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1277 (10th Cir. 1994) (citation and internal quotes omitted); *see also Ellingson v. Burlington No., Inc.*, 653 F.2d 1327, 1332 (9th Cir. 1981) ("New material does not belong in a reply brief . . . Certainly the use of new material in a reply brief transgresses against the canons of fair forensics."); *Thompson*, 631 F.2d at 649 ("The general rule is that [litigants] cannot raise a new issue for the first time in their reply briefs."). Although the May 19, 2008, scheduling order entered by the Court does not afford Plaintiffs a sur-reply, Abbott cannot fairly ask the Court to consider new arguments without affording Plaintiffs the opportunity to refute the misrepresentations and misconceptions underlying both the arguments and the new declaration offered by Abbott's expert, Joel Hay. Thus, the Court should, respectfully, either refuse to "entertain [Abbott's] new arguments raised for the first time in the [Abbott's] reply brief," *Serpa v. SBC Telecomms., Inc.*, No. C 03-4223 MHP, 2004 U.S. Dist. LEXIS 18307, at *16 n.4 (N.D. Cal. Sept. 7, 2004), or, alternatively, consider Plaintiffs' response set forth below.

-4-
767191.2
NOTICE OF MOTION AND MOTION TO STRIKE
RE ABBOTT MOTION TO COMPEL
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

## II. ABBOTT'S NEW ASSERTIONS, LIKE ITS OLD, DO NOT STATE A COGNIZABLE CLASS CONFLICT

Should the Court consider Abbott's untimely assertions, Plaintiffs ask the Court to take note of the following panoply of defects.

On reply, Abbott relies on a new declaration from Joel Hay. *See* Supplemental Declaration of Joel W. Hay (May 30, 2008) ("Hay Decl. 5/30/08").[2] Dr. Hay claims, in essence, that Abbott might elect to adjust its prices in the future differently, depending on the theory of liability by which Plaintiffs establish the illegality of Abbott's conduct. From this premise he argues that different hypothetical future price adjustments, might, in turn, affect some class members differently than others, depending on how they profit from reselling Norvir and Kaletra. *See* Hay Decl. 5/30/08, at ¶¶ 8-10 & 15. Thus, as with Abbott's previous assertions of conflict, Abbott still improperly focuses on class members' downstream profits. Abbott's newest round of speculation as to conflict is, at root, the same flawed, legally irrelevant theory of conflict, and is deficient for the same reasons, as well as for some additional ones.

***First***, as Plaintiffs explained at length in their opposition brief, the overwhelming weight of authority prohibits *any inquiry* into whether and how a class member "passes on" overcharges or otherwise profits or "benefits" because such matters are *irrelevant as a matter of law both to the merits and to class certification.* As the Supreme Court held in *Hanover Shoe*, whether an overcharged party was able to somehow recoup its losses is irrelevant. *Hanover Shoe*, 392 U.S. at 489-90. Plaintiffs' injuries are complete at the point of overcharge, and any subsequent inquiry into net effects of the conduct or what happens to the overcharge as it wends its way down the chain of distribution is not merely immaterial, but has been deemed out of bounds for discovery, including for purposes of class certification, in literally dozens of direct purchaser cases for more than thirty years. *See generally* Opposition of Plaintiffs Meijer, Inc., Meijer Distribution, Inc., Rochester Drug Co-Operative, Inc., and Louisiana Wholesale Drug

---

[2] Indeed, it is a sign of failure of Abbott's initial submissions that, although Plaintiffs did not submit an expert declaration in opposition, Abbott has been forced to solicit yet another expert declaration in reply.

-5-
767191.2
NOTICE OF MOTION AND MOTION TO STRIKE
RE ABBOTT MOTION TO COMPEL
CASE NOS. C 07-5985 CW; C 07-6010 CW; C 07-6118 CW

1 Company, Inc. to Defendant Abbott Laboratories' Motion to Compel Production of Documents
2 and Interrogatory Responses, at 10-11 & 15-18 (filed May 23, 2008) ("Opp. Br."); *see also*
3 *Morelock Enters., Inc. v. Weyerhaeuser Co.*, No. CV 04-583-PA, 2004 U.S. Dist. LEXIS 28270,
4 at *7-8 (D. Or. Dec. 16, 2004) (rejecting argument that some members of proposed class "actually
5 benefit from higher prices" on assumption that some class members "add a fixed percentage to
6 their lumber costs" as "contrary to the Supreme Court's teachings in *Hanover Shoe* [] and *Illinois
7 Brick* []"). All class members here are entitled to overcharge damages, which are the *typical*
8 remedy in direct purchaser antitrust actions. *In re Cardizem Antitrust Litig.*, 200 F.R.D. 297, 308-
9 09 (E.D. Mich. 2001), *aff'd*, 332 F.3d 896 (6th Cir. 2003). Thus, asserting conflicts, recast in
10 terms of how different theories of liability might affect hypothetical lost profits claims that no one
11 has brought, fails to salvage Abbott's argument.[3]

12        *Second*, Abbott's new assertions relate, once again, to the remedy to be imposed,
13 not to liability. Abbott speculates that *this* lawsuit would cause Abbott to change its practices
14 even though Plaintiffs do not seek injunctive relief. As explained in Plaintiffs' opening brief,
15 potential or speculative conflicts as to damages are not cognizable conflicts in the Ninth Circuit.
16 *See Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975). Furthermore, given that Plaintiffs are
17 not seeking injunctive relief, the alleged conflict here relates to possible reactions by Abbott,
18 post-litigation, to different potential liability claims (incorrectly) attributed to Plaintiffs, which are
19 by definition collateral to the litigation. This conflict is even more far-removed than the non-
20 cognizable conflict set out in *Valley Drug*, and it falls well short of the Ninth Circuit's
21 requirement that an intra-class conflict be "apparent, imminent, and on an issue at the very heart
22 of the suit," rather than "potential" and as yet "unforeseen." *Blackie*, 524 F.2d at 909.

---

[3] Abbott concedes that the court in *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P.*, 247 F.R.D. 156 (C.D. Cal. 2007), did *not* discuss allowing downstream discovery. *See* Reply Br. at 12. Any further *dicta* in *Allied* concerning net benefits should be disregarded because of that court's refusal to consider issues under the governing decisions of *Hanover Shoe* and *Illinois Brick*, *see Allied*, 247 F.R.D. at 177 & n.33, and the overwhelming case law to the contrary, *see* Opp. Br. at 9-14.

1    ***Third***, Abbott's new assertions are based on a fundamental misreading of Plaintiffs' class certification papers and theories of liability. Abbott states that Plaintiffs rely on three theories of liability, Reply Br. at 4-5, but Plaintiffs only assert two: (1) the consumer welfare standard (which reflects two effects of Abbott's exclusionary price hike on Norvir), and (2) the standard set forth by the Ninth Circuit in *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008). *See* Class Certification Declaration of Hal J. Singer (May 5, 2008) ¶¶ 25-33.[4] Abbott and Dr. Hay commit this error repeatedly, splitting up the consumer welfare test throughout their papers as if it represented two separate tests, and using the invented second test as the basis for purported conflicts. Abbott further erroneously claims that Plaintiffs assert that "*any* increase in the price of Norvir" or that "*any* increase in the price of Norvir without a commensurate increase in the price of Kaletra" is anticompetitive. Reply Br. at 4 (emphasis added). But Plaintiffs begin their analysis with the prices that Abbott actually imposed. As explained by Dr. Hal J. Singer, Plaintiffs' economist for class certification purposes, under Plaintiffs' first theory (the "Consumer Welfare" standard), one would analyze the effects of *the actual 400% price hike for Norvir*. *See* Singer Decl. at ¶ 25-27. Dr. Singer did not suggest comparing some hypothetical involving "any increase" in the price for Norvir. Nor has Dr. Singer ever contended that the price hike on Norvir can be remedied with a "commensurate increase" in the price of Kaletra.[5] Because Plaintiffs do not assert that Abbott could remedy its Norvir price increase by increasing the price on Kaletra, the underpinnings for Abbott's new assertions of conflict drop away. Hence, even if *Valley Drug* were to apply, and even if speculation about conflicts were even relevant, there would be no conflict between those class members based on that hypothesis.

---

[4] Dr. Singer's declaration accompanied Plaintiff's Motion for Class Certification, filed May 5, 2008.

[5] Abbott's misunderstanding regarding hypothetical higher prices for Kaletra underlies its assertions of conflicts between the supposed second theory and the others. *See* Hay Decl. 5/30/08 at ¶¶ 12-13.

III. **ABBOTT'S OTHER MISSTATEMENTS**

Abbott also makes a number of other misstatements in its reply brief, some of which are worthy of response here:

- First, Plaintiffs have not, as Abbott claims, conceded that some class members have actually benefitted from Abbott's conduct. Plaintiffs never discussed that issue except to state that whether any class member benefitted is completely irrelevant.

- Second, Abbott attempts, but fails, to refute all of the law saying that the opt-out mechanism of Rule 23(c) can, and does, eliminate any conceivable issues raised by Abbott's hypothesized conflicts. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977) (majority opinion) ("whatever differences may have existed within the class could have been reduced by certain class members opting out. Section (c)(2) of Rule 23"). Indeed, Abbott's own authority, *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978), upheld the certification of a class by relying on the opt-out provision to ameliorate any class conflicts. *See also In re Four Seasons Security Laws Litig.*, 502 F.2d 834, 843 (10th Cir. 1974) (notice to class member and opportunity to opt out satisfies due process).

- Finally, Abbott fails to refute Plaintiffs' evidence of the burdens which downstream discovery would impose, including declarations from each of the named Plaintiffs and statements submitted on behalf of three absent class members (from whom Abbott is also seeking the same information). *See* Plaintiffs' Opp. Br. at 22-24. Nor does Abbott even pretend to address the burdens imposed on Abbott's seven other subpoena targets. Abbott instead relies on Dr. Hay, who opines, with no first-hand knowledge whatsoever, that he does not think it would be burdensome to compile downstream information. *See* Reply Br. at 5. Simply put, Plaintiffs' executives are in a far better position to assess the burden than Dr.

Hay. Indeed, in the single reported case where downstream discovery was allowed of plaintiffs and absent class members, the district court detailed the burdens involved, noting the process was "difficult" and fraught with "insuperable technological problems" due to a variety of factors, including "mergers and consolidations in the industry, the sheer volume of data, [and] the need to create new data compilation programs." *In re Terazosin Antitrust Litig.*, 223 F.R.D. 666, 674 (S.D. Fla. 2004). It is that burdensome (and ultimately futile) foray into legally irrelevant material which Abbott aims to repeat here.

## CONCLUSION

For the foregoing reasons, the Court should strike Abbott's reply brief and accompanying papers (or, alternatively, accept this brief as a sur-reply), and deny Abbott's motion to compel.

Dated: June 12, 2008                    Respectfully submitted,


By: /s/ Daniel Berger
Daniel Berger
Email: danberger@bm.net
Eric L. Cramer, *Pro Hac Vice*
Email: ecramer@bm.net
Daniel C. Simons, *Pro Hac Vice*
Email: dsimons@bm.net
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

*Counsel for Plaintiff Rochester Drug Cooperative, Inc.*

| | |
|---|---|
| 1 | Linda P. Nussbaum, *Pro Hac Vice* |
| 2 | Email: lnussbaum@kaplanfox.com |
|   | John D. Radice, *Pro Hac Vice* |
| 3 | Email: jradice@kaplanfox.com |
|   | **KAPLAN FOX & KILSHEIMER, LLP** |
| 4 | 850 Third Avenue, 14th Floor |
|   | New York, NY 10022 |
| 5 | Telephone: (212) 687-1980 |
| 6 | Facsimile: (212) 687-7714 |

*Counsel for Plaintiffs Meijer, Inc. and Meijer Distribution, Inc.*

Bruce E. Gerstein, *Pro Hac Vice*
Email: bgerstein@garwingerstein.com
Noah H. Silverman, *Pro Hac Vice*
Email: nsilverman@garwingerstein.com
**GARWIN GERSTEIN & FISHER, LLP**
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Facsimile: (212) 764-6620

*Counsel for Plaintiff Louisiana Wholesale Drug Co., Inc.*

*Additional Counsel*:

John Gregory Odom, *Pro Hac Vice*
Email: greg@odrlaw.com
Stuart E. Des Roches, *Pro Hac Vice*
Email: stuart@odrlaw.com
John Alden Meade, *Pro Hac Vice*
Email: jmeade@odrlaw.com
**ODOM & DES ROCHES, LLP**
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Telephone: (504) 522-0077
Facsimile: (504) 522-0078

David P. Smith, *Pro Hac Vice*
Email: dpsmith@psfllp.com
W. Ross Foote, *Pro Hac Vice*
Email: rfoote@psfllp.com
**PERCY SMITH & FOOTE, LLP**
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309
Telephone: (318) 445-4480
Facsimile: (318) 487-1741

Joshua P. Davis (State Bar No. 193254)
Email: davisj@usfca.edu
**LAW OFFICES OF JOSHUA P. DAVIS**
437A Valley Street
San Francisco, CA 94131
Telephone: (415) 422-6223

Joseph R. Saveri (SBN 130064)
Email: jsaveri@lchb.com
Eric B. Fastiff (SBN 182260)
Email: efastiff@lchb.com
Brendan Glackin (SBN 199643)
Email: bglackin@lchb.com
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Joseph M. Vanek, *Pro Hac Vice*
Email: jvanek@vaneklaw.com
David P. Germaine, *Pro Hac Vice*
Email: dgermaine@vaneklaw.com
**VANEK, VICKERS & MASINI, P.C.**
111 South Wacker Drive, Suite 4050
Chicago, IL 60606
Telephone: (312) 224-1500
Facsimile: (312) 224-1510

| | |
|---|---|
| 1 | Andrew E. Aubertine, *Pro Hac Vice* |
| 2 | Email: aa@adr-portland.com |
|   | **AUBERTINE DRAPER ROSE, LLP** |
| 3 | 1211 S.W. Sixth Avenue |
|   | Portland, OR 97204 |
| 4 | Telephone: (503) 221 4570 |
| 5 | Facsimile: (503) 221 4590 |
| 6 | Charles M. Kagay (SBN 073377) |
|   | Email: cmk@slksf.com |
| 7 | **SPIEGEL, LIAO & KAGAY** |
| 8 | 388 Market Street, Suite 900 |
|   | San Francisco, CA 94111 |
| 9 | Telephone: (415) 956 5959 |
| 10 | Facsimile: (415) 362 1431 |
| 11 | Tucker Ronzetti, *Pro Hac Vice* |
|    | Email: tr@kttlaw.com |
| 12 | Adam Moskowitz, *Pro Hac Vice* |
| 13 | Email: amm@kttlaw.com |
|    | **KOZYAK TROPIN & THROCKMORTON** |
| 14 | 2800 Wachovia Financial Center |
| 15 | 200 South Biscayne Boulevard |
|    | Miami, FL 33131 2335 |
| 16 | Telephone: (305) 372 1800 |
|    | Facsimile: (305) 372 3508 |
| 17 |   |
| 18 | Paul E. Slater, *Pro Hac Vice* |
|    | Email: pes@sperling-law.com |
| 19 | **SPERLING & SLATER** |
| 20 | 55 West Monroe Street, Suite 3200 |
|    | Chicago, IL 60603 |
| 21 | Telephone: (312) 641 3200 |
| 22 | Facsimile: (312) 641 6492 |

**Pursuant to General Order 45, Part X-B, the filer attests that concurrence in the filing of this document has been obtained from Daniel Berger, Linda Nussbaum, & Bruce Gerstein.**