Joseph R. Saveri (SBN 130064)
jsaveri@lchb.com
Brendan Glackin (SBN 199643)
bglackin@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Plaintiffs*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | Case No. C 07-5985 CW<br><br>CONSOLIDATED CASE<br><br>**NOTICE OF MOTION AND MOTION OF DIRECT PURCHASER CLASS PLAINTIFFS TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY**<br><br>Date:      August 7, 2008<br>Time:      2:00 p.m.<br>Location:  Courtroom 2<br><br>**Hon. Claudia Wilken** |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION .................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 2

    I.    INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ............. 2

    II.    FACTUAL BACKGROUND .................................................................................. 3

    III.    DISCUSSION .......................................................................................................... 6

        A.    Legal Standard for Motion to Compel ....................................................... 6

        B.    The Cost Data Is Relevant. ......................................................................... 7

            1.    The Cost Data Is Relevant to Monopoly Power ............................ 7

            2.    The Requested Discovery is Relevant to Issues of Conduct, Intent and Barriers to Entry. ........................................................... 8

            3.    The Cost Data Sought is Relevant under the Equally Efficient Competitor Test Embodied in Cascade ......................... 10

        C.    Abbott Has Not, And Cannot, Demonstrate It Would Be Unduly Burdened By Producing The Cost Data ................................................... 12

        D.    Abbott Cannot Stand On Privilege For Refusing To Produce Documents Or Witnesses ......................................................................... 13

    IV.    CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

Page

## CASES

*Am. Fast Freight, Inc. v. National Consol. & Distrib., Inc.*,
  No. C07-0716BHS, 2007 U.S. Dist. LEXIS 92384 (W.D. Wash. Nov. 30, 2007) ..................... 6

*Borden, Inc. v. FTC*,
  674 F.2d 498 (6th Cir. 1982) ............................................................................................... 9

*Cadent Ltd. v. 3M Unitek Corp.*,
  232 F.R.D. 625 (C.D. Cal. 2005) ....................................................................................... 12

*Cascade Health Solutions v. Peacehealth*,
  515 F.3d 883 (9th Cir. 2008) ........................................................................................ passim

*Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*,
  386 F.3d 485 (2d Cir. 2004) ............................................................................................ 2, 8

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ............................................................................................................ 6

*Image Technical Services, Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) ..................................................................................... 7, 9, 11

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
  No. C 04-1511 CW, 2008 U.S. Dist. LEXIS 39886 (N.D. Cal. May 16, 2008) ..................... 7

*In re Air Passenger Computer Reservations Systems Antitrust Litig.*,
  694 F. Supp. 1443 (C.D. Cal. 1988) .................................................................................... 7

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
  363 F. Supp. 2d 514 (E.D.N.Y. 2005) ................................................................................. 8

*In re IBM Peripheral EDP Devices Antitrust Litig.*,
  481 F. Supp. 965 (N.D. Cal. 1979) ...................................................................................... 8

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  467 F. Supp. 2d 74 (D.D.C. 2006) ...................................................................................... 7

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*,
  No. 05-CV-1532, 2007 U.S. Dist. LEXIS 17540 (N.D. Cal. Mar. 12, 2007) .................. 12, 13

*Meijer, Inc. v. Abbott Labs.*,
  544 F. Supp. 2d 995 (N.D. Cal. 2008) ........................................................................... 7, 11

*Memry Corp. v. Kentucky Oil Tech.*,
  No. C04-03843 RMW (HRL), 2007 U.S. Dist. LEXIS 22488 (N.D. Cal. Mar. 19, 2007) ......... 6

*Rebel Oil Co. v. Atlantic Richfield Co.*,
  146 F.3d 1088 (9th Cir. 1998) ...................................................................................... 3, 7, 9

# TABLE OF AUTHORITIES
## (continued)

Page

*SmithKline Corp. v. Eli Lilly & Co.*,
 575 F.2d 1056 (3d Cir. 1978) .......................................................................................... 10

*Surfvivor Media, Inc. v. Survivor Productions*,
 406 F.3d 625 (9th Cir. 2005) ............................................................................................ 6

*Syufy Enterprises v. Am. Multicinema, Inc.*,
 793 F.2d 990 (9th Cir. 1986) ........................................................................................ 2, 8

*United States v. Microsoft Corp.*,
 253 F.3d 34 (D.C. Cir. 2001) ........................................................................................... 7

*United States v. Microsoft Corp.*,
 346 U.S. App. D.C. 330, 253 F.3d 34 (D.C. Cir. 2001) ................................................. 10

*Vollrath Co. v. Sammi Corp.*,
 No. CV 85-820 MRP, 1989 U.S. Dist. LEXIS 16902 (C.D. Cal. Dec. 20, 1989) ............ 9

## RULES

Fed R. Civ. P. 37(a)(3) ............................................................................................................ 6

Fed. R. Civ. P. 26(b)(1) ....................................................................................................... 4, 6

Fed. R. Civ. P. 26(c)(1) .......................................................................................................... 6

Fed. R. Civ. P. 30(b)(6) .................................................................................................. *passim*

## NOTICE OF MOTION

TO THE DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 7, 2008 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2, before the Honorable Claudia Wilken, in the United States District Court for the Northern District of California, Oakland Division, Plaintiffs Meijer Inc., Meijer Distribution, Inc., Rochester Drug Co-operative, Inc., and Louisiana Wholesale Drug Co., Inc. (hereinafter "Plaintiffs") will move this Court pursuant to Federal Rules 26(c) and Rule 37(a) to compel production of documents and presentation of one or more witnesses for examination pursuant to Plaintiffs' Notice of Videotaped Deposition of Abbott Laboratories pursuant to Fed R. Civ. P. 30(b)(6) (hereinafter 30(b)(6) Notice) and First Request for Production of Documents (Document Request). Abbott Laboratories (Abbott) has refused to produce the requested documents, information and witness(es). The motion is supported by the accompanying Memorandum of Points and Authorities and the Declaration of Andrew E. Aubertine, dated July 3, 2008 ("Aubertine Decl."), the record in this case, and such other argument and evidence as may be properly considered at the hearing of the motion. A proposed order is attached as Exhibit A.

Plaintiffs respectfully ask that this Court retain this motion rather than assigning it to a Magistrate Judge. The issues discussed herein are intertwined with the issues presented in Abbott's Motion to Certify Appeal to the Ninth Circuit Pursuant Section 1292(b), which has been briefed and is scheduled for oral argument before this Court on July 10, 2008. Aubertine Decl. at ¶ 6.

770827.1 - 1 - MTN OF DIRECT PURCHASER CLASS PLTFS TO COMPEL PRODUCTION/TESTIMONY CASE NO. C 07-5985 CW

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

This motion seeks to compel Abbott to produce documents and testimony relating to Abbott's costs incurred in the development, production, and sale of Norvir, Kaletra, and the lopinavir component of Kaletra (the "Cost Data"). The Cost Data is relevant to several aspects of Plaintiffs' claims. First, as the Ninth Circuit has repeatedly made clear, a defendant's ability to charge prices well above its costs is direct proof of a defendant's monopoly power – one of the two main elements of a Section 2 claim under the Sherman Act. Second, Abbott's cost data is relevant to proving Abbott's anticompetitive conduct, its intent, and barriers to entry in the relevant markets. Third, information relating to Abbott's costs and profits can be used to satisfy the test set forth in *Cascade Health Solutions v. Peacehealth*, 515 F.3d 883 (9th Cir. 2008) ("*Cascade*"), which while not a requirement in a case such as this (as this Court has ruled), is nonetheless applicable as a non-exclusive, alternative means to prove that Abbott's violates the Sherman Act.

Abbott objects to this discovery on the mistaken theory that when the Court denied its motion to dismiss, it somehow also ruled that Abbott's costs would be irrelevant to the case. Putting aside, for the moment, Abbott's mischaracterization of the Court's ruling, which only held that *Cascade* is not the exclusive means of proving exclusionary conduct here, not that the economic test embodied in *Cascade* has no possible relevance, Abbott's argument is beside the point. First, whether or not the economic test embodied in *Cascade* is at all indicative of exclusionary conduct, Plaintiffs must demonstrate Abbott's possession of monopoly power. Comparing Abbott's costs with the prices Abbott charges for Norvir and Kaletra may prove that Abbott priced its product well above its costs, a "basic indicator[] of monopoly power." *See Syufy Enterprises v. Am. Multicinema, Inc.*, 793 F.2d 990, 996 (9th Cir. 1986). Recent case law in the pharmaceutical context confirms that such cost information directly bears on whether a defendant possesses monopoly power. *See, e.g., Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 500 (2d Cir. 2004) (criticizing the plaintiffs for not supplying the court with an

"analysis of Barr's costs" sufficient to show that that Barr's prices led to an abnormally high price-cost margin); *see also Rebel Oil Co. v. Atlantic Richfield Co.*, 146 F.3d 1088, 1097 (9th Cir. 1998). Second, the Cost Data is also relevant to analyses Plaintiffs and their experts may perform to demonstrate Abbott's anticompetitive conduct. Finally, Plaintiffs are also entitled to the Cost Data to establish that Abbott's conduct is *prima facie* exclusionary under the *Cascade* test.

The Cost Data, therefore, goes to the heart of several important aspects of this case and far exceeds the minimal relevance threshold required for discovery. It is not categorically privileged and would not be unduly burdensome to produce.[1] It therefore must be produced.

## II. FACTUAL BACKGROUND

On May 5, 2008, Plaintiffs served Abbott with the 30(b)(6) Notice and Document Request. Requests 1 through 7 call for the following information:

> Request No 1. All costs and expenses relating to Norvir that vary from year to year, including, e.g,. those costs and vary as unit sales go up or down and/or those costs and expenses that would be eliminated if Abbott were to stop selling Norvir in the United States.
>
> Request No. 2. All costs and expenses relating to Kaletra that vary from year to year, including, *e.g.* those costs and vary as unit sales go up or down and/or those costs and expenses that would be eliminated if Abbott were to stop selling Kaletra in the United States.
>
> Request No. 3. All costs and expenses relating to Lopinavir that vary from year to year, including, *e.g.* those costs and vary as unit sales go up or down and/or those costs and expenses that would be eliminated if Abbott were to stop selling Kaletra in the United States.
>
> Request No. 4. All costs and expenses of Norvir that are sunk, fixed and/or to which Abbott is pre-committed such that the costs or expenses could not be saved or avoided by shutting down operations and no longer selling Norvir in the United States.
>
> Request No. 5. All costs and expenses of Kaletra, including the Lopinavir component, that are sunk, fixed and/or to which Abbott is pre-committed such that the costs or expenses could not be saved or

---

[1] In a meet and confer discussion with Plaintiffs, Abbott counsel represented that it may not rest exclusively on its "undue burden" objection as a categorical matter. Rather, this objection would apply if Abbott believed that certain documents or groups of documents were too burdensome to produce. Aubertine Decl. at ¶ 13.

avoided by shutting down operations and no longer selling Kaletra in the United States.

Request No. 6. All of Abbott's costs and expenses relating to Lopinavir, including the production, promotion, marketing, advertising, sale and delivery of Lopinavir.

Request No. 7. All of Abbott's costs and expenses relating to the research and development for Kaletra and/or Lopinavir that accrued after Abbott started to sell Kaletra in the United States.

See Exhibit B at pp. 7-8.

On June 2, 2008, Abbott submitted its Response and Objections to Plaintiffs' Discovery Requests Nos. 1 through 7, ("Abbott Objections"). Abbott asserted the same objection to all seven document requests:

"In addition to its general objections, Abbott objects to this request as overly broad and unduly burdensome. Abbott also objects to the extent this request seeks information protected by the attorney-client privilege and/or the work product doctrine. Abbott also objects on the ground that this request is not relevant to any claim or defense under Fed R. Civ. P. 26(b)(1) because this Court has concluded, at Plaintiffs' urging, that the *Cascade* average variable cost rule "does not apply in the context of the particular antitrust theory asserted against Abbott" because "[t]he present cases are not concerned with the potential exclusion of equally efficient manufacturers of lopinavir. Order Denying Abbott's Motion to Dismiss at 16-17 (No. 07-5985 CW, April 11 2008); Order Denying Abbott's Motions for Leave to File Supplemental Brief and For Leave to File Motion for Reconsideration at 2 (No. C 04-1511 CW April 28, 2008)."

See Exhibit C at *4-8.

The 30(b)(6) Notice called for Abbott to designate and produce one or more witnesses to testify as to the following topics:

1. All costs and expenses of Norvir that vary from year to year, including, *e.g.*, those costs and expenses that vary as the unit sales of Norvir go up or down and/or those costs and expenses that would be eliminated if Abbott were to stop selling Norvir in the United States.

2. All costs and expenses of Kaletra that vary from year to year, including, *e.g.*, those costs and expenses that vary as the unit sales of Kaletra go up or down and/or those costs and expenses that would be eliminated if Abbott were to stop Kaletra in the United States.

3.  All costs and expenses of Lopinavir that vary from year to year, including, *e.g.*, those costs and expenses that vary as the unit sales of Kaletra go up or down and/or those costs and expenses that would be eliminated if Abbott were to stop selling Kaletra in the United States.

4.  All costs and expenses of Norvir that are sunk, fixed and/or to which Abbott is pre-committed such that the costs or expenses could not be saved or avoided by shutting down operations and no longer selling Norvir in the United States.

5.  All costs and expenses of Kaletra, including the Lopinavir compound, that are sunk, fixed and/or to which Abbott is pre-committed such that the costs or expenses could not be saved or avoided by shutting down operations and no longer selling Kaletra in the United States.

6.  All costs and expenses of Lopinavir, including, *e.g.*, those costs and expenses relating to the manufacturing, production, promotion, marketing, advertising, detailing, sale, and delivery.

7.  All costs and expenses relating to research and development for Kaletra and/or Lopinavir that accrued after Abbott started to sell Kaletra in the United States (i.e., "continuing R&D").

10. Documents relating to one or more of the topics identified at Nos. 1 through 9, including the following:

    NOR 00041489
    NOR 00062652-670
    NOR 00044302-303
    NOR 00025140
    NOR 00016758-759
    NOR 00005866-884
    NOR 00026270
    NOR 00031052

11. Documents that have been requested pursuant to Plaintiffs' First Request for Production of Documents to Abbott Laboratories, Exhibit B to this Notice, and the topics identified therein.

*See* Exhibit D at 5-6.

Abbott did not submit specific objections to the 30(b)(6) Notice, but has referred to its objections to the Document Request as the bases for refusing to produce witnesses on these topics. *See* Aubertine Decl. at ¶¶ 8, 12.

Counsel for Plaintiffs and Abbott have exchanged correspondence, and met and conferred on Abbott's position on the Cost Data on no fewer than five occasions. *See* Aubertine Decl. at ¶¶ 6-8. The parties were not able to arrive at resolution. *See* Aubertine Decl. at ¶¶ 4, 12. This Motion to Compel, therefore, is appropriate and ripe for this Court's consideration.

### III. DISCUSSION

#### A. Legal Standard for Motion to Compel

Discovery under the Federal Rules is accorded a broad and liberal treatment. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Rule 26 provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party… Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005). The discovery sought need not relate to every theory or claim in the action. The Court can compel production of documents. Fed R. Civ. P. 37(a)(3). The Court will ordinarily grant a motion to compel disclosure so long as the moving party seeks relevant information that does not cause the party "undue burden or expense." Fed. R. Civ. P. 26(c)(1); *Am. Fast Freight, Inc. v. National Consol. & Distrib., Inc.*, No. C07-0716BHS, 2007 U.S. Dist. LEXIS 92384 (W.D. Wash. Nov. 30, 2007). Similarly, the Court can order Abbott to designate and produce a witness pursuant to Rule 30(b)(6). Fed. R. Civ. P. 37(a)(3)(B)(ii). *Memry Corp. v. Kentucky Oil Tech.*, No. C04-03843 RMW (HRL), 2007 U.S. Dist. LEXIS 22488 (N.D. Cal. Mar. 19, 2007) (ordering Rule 30(b)(6) testimony relevant to theory advanced by plaintiff).

B.  **The Cost Data Is Relevant.**

1.  **The Cost Data Is Relevant to Monopoly Power**

The Cost Data must first be produced because Plaintiffs have adequately alleged a claim of monopoly leveraging under *Image Technical Services, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997) ("*Image Tech*"). Monopoly power is indisputably a required element of Plaintiffs' Section 2 monopolization claim. *See Meijer, Inc. v. Abbott Labs.*, 544 F. Supp. 2d 995, 999 (N.D. Cal. 2008) ("*MTD Opinion*"). Monopoly power is "the power to control prices or exclude competition." *Image Tech,* 125 F.3d at 1202. It may be shown through either direct or circumstantial evidence. *See id.* Monopoly power may be shown directly by showing a defendant was able to command supracompetitive prices, which constitutes "direct proof of the injury to competition which a competitor with market power may inflict, and thus, of the actual exercise of market power." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995); *see also In re Abbott Labs. Norvir Anti-Trust Litig.*, No. C 04-1511 CW, 2008 U.S. Dist. LEXIS 39886, *14 (N.D. Cal. May 16, 2008).

If Abbott can command prices for Norvir and Kaletra substantially above its costs then, by definition, Abbott has market or monopoly power. In other words, Abbott has monopoly power "if it can profitably raise prices substantially above the competitive level." *United States v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 467 F. Supp. 2d 74, 86 (D.D.C. 2006) (monopoly power can be found if defendant could "profitably raise prices substantially above the competitive level for a non-transitory period of time"). Thus, by studying Abbott's prices for Norvir and Kaletra (information which Plaintiffs are obtaining from Abbott) and comparing them to Abbott's cost and expenses information, one can determine whether Abbott has monopoly power. *See In re Air Passenger Computer Reservations Systems Antitrust Litig.*, 694 F. Supp. 1443, 1460 (C.D. Cal. 1988) ("If a firm's marginal cost could be ascertained, its exercise of market power would be revealed merely by subtracting the price actually charged from the marginal cost of production."). Monopoly power can similarly be proven by showing the defendant is earning supracompetitive

profits. Thus, if Abbott reaped excessive profits on a continued basis, this indicates both lack of true competition and that Abbott possesses monopoly power. *See Syufy Enterprises*, 793 F.2d at 996 (profits are a "basic indicator[] of monopoly power"); *see also In re IBM Peripheral EDP Devices Antitrust Litig.*, 481 F. Supp. 965, 976 (N.D. Cal. 1979) ("Many courts have examined defendant's profit record on the theory that persistent excess profits are inconsistent with the competitive model and attributable to the possession of monopoly power.").

Case law involving the pharmaceutical industry confirms that cost information is relevant to assessing market power. The Second Circuit has recognized that "pricing proof [i.e., control over the price charged for a product] may of course be indicative of monopoly power," and criticized a plaintiff for *omitting* any analysis of the defendant's costs. *See Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 500 (2d Cir. 2004). Similarly, in *Ciprofloxacin*, the court noted that high prices, together with an analysis of the defendant's costs, can establish monopoly power. *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 523 (E.D.N.Y. 2005) (appeals pending) (identifying defendants' "abnormally high price-cost margin" as indication of monopoly power). The Court also specifically noted the relevance of marketing expenses. *See id.* at 523 n. 9.[2]

The relevance of Cost Data to demonstrate market power, therefore, remains true whether *Cascade* or some other test is used to test the anticompetitive nature of Abbott's actions. Abbott's objection should therefore be overruled.

### 2. The Requested Discovery is Relevant to Issues of Conduct, Intent and Barriers to Entry.

Cost Data is also directly relevant to testing the anticompetitive nature of Abbott's actions and anticompetitive intent, thus rebutting Abbott's proffered justifications for the Norvir price hike, and barriers to entry.

---

[2] Plaintiffs have asked Abbott to consider the relevance of cost and profit information to proving monopoly power. *See* Ex A to Aubertine Decl., letter from John D. Radice to Charles B. Klein, Jun. 23, 2008, at 2. Abbott has refused to address this issue in the meet-and-confer process. *See* Ex B. to Aubertine Decl., email from Charles B. Klein to John D. Radice, *et al.*, Jun. 27, 2008.

Plaintiffs allege that Abbott's 400% price hike of Norvir was intended to maintain its dominance of the Boosted PI market. *Meijer Amended Consolidated Complaint*, ¶¶ 25-26, 40. Abbott disputes this. Documents relating to Abbott's costs and its sales and profits will shed light on Abbott's true motive and intent. These documents could, therefore, provide guidance on the genesis of Abbott's reasoning behind the price increase. Thus, the Cost Data standing alone and/or in combination with Abbott's marketing documents[3] may show Abbott's anticompetitive intent and expose Abbott's proffered reasons for the price increase as pretext. *See, e.g., Image Tech.*, 125 F.3d at 1212 ("A plaintiff may rebut an asserted business justification by demonstrating either that the justification does not legitimately promote competition or that the justification is pretextual."). The Cost Data would be relevant to the profit-sacrifice test that Plaintiffs and their economists may use to prove intent. *See Vollrath Co. v. Sammi Corp.*, No. CV 85-820 MRP, 1989 U.S. Dist. LEXIS 16902, at *15 (C.D. Cal. Dec. 20, 1989) (noting that some courts employ a comparison of the defendant's costs and prices to determine whether pricing is exclusionary).

The Cost Data may also provide evidence of barriers to entry in the relevant market. *See Borden, Inc. v. FTC*, 674 F.2d 498, 512 (6th Cir. 1982) (high rate of return on assets supporting FTC's finding of monopoly power), *vac'd and remanded for entry of consent judgment*, 461 U.S. 940 (1983). Evidence of entry barriers can be proof of Abbott's monopoly and/or market power in the relevant market, *see Rebel Oil*, 146 F.3d. at 1434, and, therefore, is relevant and thus discoverable.

---

[3] The Abbott marketing documents are the subject of a separate motion to compel filed by plaintiff GlaxoSmithKline (GSK). According to GSK's motion to compel, six months after the initial request, Abbott still also has refused to produce all marketing documents related to Norvir and Kaletra or to even tell GSK what marketing documents it *has* produced. Indeed, this appears to be a pattern of conduct by Abbott that it continually refuses to produce information to which the plaintiffs are entitled.

### 3. The Cost Data Sought is Relevant under the Equally Efficient Competitor Test Embodied in *Cascade*

The Cost Data is also relevant to prove that Abbott fails the overly stringent, but nonetheless probative, "discount attribution" test set out in *Cascade*. Plaintiffs have pled and believe they can satisfy *Cascade*'s test by presenting evidence that the average variable costs attributable to the lopinavir component of Kaletra are greater than the imputed price of lopinavir. *See Meijer Am. Cons. Compl.* at ¶ 41. If Plaintiffs are successful in proving this allegation, then Plaintiffs satisfy the *Cascade* bright-line test.

The Ninth Circuit made clear when adopting the discount attribution standard that the relevant costs in the *Cascade* average variable cost analysis are the monopolist's (i.e., Abbott's) own costs. As the Ninth Circuit explained,

> The discount attribution standard provides clear guidance for sellers that engage in bundled discounting practices. A seller can easily ascertain its own prices and costs of production and calculate whether its discounting practices run afoul of the rule we have outlined. Unlike under the *Ortho* [cite omitted] standard, *under the discount attribution standard a bundled discounter need not fret over and predict or determine its rivals' cost structure.*

*Cascade*, 515 F.3d at 907-08 (footnote omitted) (emphasis added).

The Cost Data may prove that Abbott has engaged in exclusionary conduct such than an equally efficient competitor producing a functionally identical or extremely similar product could not successfully. Economists used this test as a non-exclusive means of proving exclusionary conduct long before *Cascade* was decided. *See, e.g., United States v. Microsoft Corp.*, 346 U.S. App. D.C. 330, 253 F.3d 34, 69 (D.C. Cir. 2001); *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1065 (3d Cir. 1978). The fact that this Court has correctly decided that *Cascade* doesn not *require* such proof does not bar Plaintiffs from proving that they *can* meet even this stringent test of exclusionary conduct.

Nevertheless, Abbott objects to producing the Cost Data on the theory that this Court held that plaintiffs *cannot* offer evidence that Abbott fails the *Cascade* test. This Court did nothing of the sort. This Court rightly rejected Abbott's mechanical and exclusive interpretation of *Cascade* as incorrect. *See MTD Opinion*, 544 F. Supp. 2d at 1002-03. As this Court explained,

"Exclusionary bundled pricing is not mutually exclusive with a monopoly leveraging theory [.]" *Id.* at 1000 n. 2. Nowhere did this Court hold that Plaintiffs are prohibited from using this methodology, which pre-dates *Cascade* itself – just as economists have used it as *one means* of demonstrating exclusionary conduct under Section 2. This Court simply rejected Abbott's interpretation of the exclusivity of *Cascade* as the *only* applicable legal doctrine. *Id.* at 1003 n. 6.[4] Therefore, if Plaintiffs can satisfy the more-stringent-than-necessary *Cascade* analysis, then Plaintiffs have demonstrated a *prima facie* case of exclusionary conduct.

Plaintiffs have tailored their discovery requests to the production of documents and witnesses so as to separate Abbott's variable costs from its fixed costs[5] in developing, producing and selling Norvir and Kaletra, which, at a minimum, is necessary to prove whether Abbott's conduct fails the *Cascade* test. Even with the limited discovery provided to date, Abbott's own documents support Plaintiffs' allegations of a violation of the *Cascade* test. Without restating their argument set forth in their Response to Abbott's 1292(b) Motion and, instead, incorporating that argument as if fully set forth herein, the information produced to date strongly suggests that Abbott violated *Cascade*.

Plaintiffs, therefore, are entitled to discovery of the Cost Data, to assess once and for all Abbott's true costs for producing and delivering Norvir, Kaletra and the lopinavir component to market. The effect of Abbott's resistance to producing this data has been to delay the possible early adjudication of this issue. Indeed, pending completion of certain discovery, Plaintiffs intend, if they conclude that there are no issues of material fact concerning the *Cascade* test, to

---

[4] *Cascade* did not overrule *Image Tech*, nor could it have. As Plaintiffs have argued in their Response to Abbott's 1292(b) motion, which is incorporated herein by this reference, nowhere in *Cascade* does the Ninth Circuit hold that the test is the exclusive basis upon which to measure exclusionary conduct such as Abbott's, and nowhere in its *Cascade* opinion does the Ninth Circuit state that it is overruling its decision in *Image Tech*. In fact, this Court acknowledged that the *Cascade* test **and** a monopoly leveraging theory under *Image Tech*, "hypothetically could apply at the same time" and provide alternative bases upon which Plaintiffs can press their claims. *See MTD Opinion* at 1000 n. 2.

[5] Once again, this Court's *MTD Opinion* supports Plaintiffs' view on what constitutes average variable costs as this Court noted that Plaintiffs have a "valid argument" for including promotion and marketing expenses within the category of average variable costs. *MTD Opinion* at 1003 n.6.

file an affirmative motion for partial summary adjudication relating to Abbott's pricing of lopinavir below its average variable cost.

### C. Abbott Has Not, And Cannot, Demonstrate It Would Be Unduly Burdened By Producing The Cost Data

Although the Court must weigh the relevance of the requested discovery against the burden of producing it, Abbott has not articulated any specific reasons that producing the Cost Data would be unduly burdensome or costly. *See Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, No. 05-CV-1532, 2007 U.S. Dist. LEXIS 17540, at *11 (N.D. Cal. Mar. 12, 2007) ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome or not relevant"). Nor has Abbott explained how Plaintiffs' requests are overbroad. Indeed, Plaintiffs' requests are narrowly tailored seeking only documents "sufficient to show" Abbott's costs for Norvir, Kaletra, and lopinavir, rather than seeking "all documents." The requests also specifically call for "Summary Documents" – compilations or summaries rather than voluminous cost records – to further reduce any potential burden. Similarly, Plaintiffs' request for testimony is narrowly tailored. Indeed, Plaintiffs have agreed to depositions in Chicago, where the prospective deponents are reportedly located. Aubertine Decl at ¶ 8. Thus, the production of a Rule 30(b)(6) witness can hardly be said to be burdensome. *See Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005) (partying resisting Rule 30(b)(6) notice must make showing of burden). Indeed, Plaintiffs understand Abbott's position to be that it does not categorically object to producing the Cost Data on the basis of undue burden. Aubertine Decl. at ¶ 13.

### D. Abbott Cannot Stand On Privilege For Refusing To Produce Documents Or Witnesses

Abbott also cannot categorically object to Cost Data discovery by claiming privilege. In any event, should Abbott wish to assert privilege, Abbott must demonstrate an applicable privilege for each document withheld by, *inter alia*, producing a privilege log, which Abbott has not done. *See Koninklijke*, 2007 U.S. Dist. LEXIS 13956, at *14-15. Nor could Abbott avoid a deposition entirely on the basis that a few questions might be privileged.

## IV. CONCLUSION

For these reasons, the Motion of the Direct Purchaser Class Plaintiffs to Compel Production of Documents and Testimony should be granted.

Dated: July 3, 2008                                  Respectfully submitted,


By: _____/s/ Brendan Glackin_____

Joseph R. Saveri (SBN 130064)
Email: jsaveri@lchb.com
Brendan Glackin (SBN 199643)
Email: bglackin@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111 3339
Telephone:  (415) 956 1000
Facsimile:  (415) 956 1008

*Class Counsel for Direct Purchaser Class Plaintiffs*

Linda P. Nussbaum, *Pro Hac Vice*
Email: lnussbaum@kaplanfox.com
John D. Radice, *Pro Hac Vice*
Email: jradice@kaplanfox.com
**KAPLAN FOX & KILSHEIMER, LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

770827.1                                      -13-                    MTN OF DIRECT PURCHASER CLASS PLTFS TO
                                                                      COMPEL PRODUCTION/TESTIMONY
                                                                      CASE NO. C 07-5985 CW

Email: danberger@bm.net
Eric L. Cramer, *Pro Hac Vice*
Email: ecramer@bm.net
Daniel C. Simons, *Pro Hac Vice*
Email: dsimons@bm.net
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

Bruce E. Gerstein, *Pro Hac Vice*
Email: bgerstein@garwingerstein.com
Noah H. Silverman, *Pro Hac Vice*
Email: nsilverman@garwingerstein.com
**GARWIN GERSTEIN & FISHER, LLP**
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Facsimile: (212) 764-6620

*Co-Lead Counsel for Direct Purchaser Class Plaintiffs*

David P. Smith, *Pro Hac Vice*
Email: dpsmith@psfllp.com
W. Ross Foote, *Pro Hac Vice*
Email: rfoote@psfllp.com
**PERCY SMITH & FOOTE, LLP**
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309
Telephone: (318) 445-4480
Facsimile: (318) 487-1741

|   |                                                                 |
|---|-----------------------------------------------------------------|
| 1 | John Gregory Odom, *Pro Hac Vice*                               |
| 2 | Email: greg@odrlaw.com                                          |
|   | Stuart E. Des Roches, *Pro Hac Vice*                            |
| 3 | Email: stuart@odrlaw.com                                        |
|   | John Alden Meade, *Pro Hac Vice*                                |
| 4 | Email: jmeade@odrlaw.com                                        |
| 5 | **ODOM & DES ROCHES, LLP**                                      |
|   | Suite 2020, Poydras Center                                      |
| 6 | 650 Poydras Street                                              |
| 7 | New Orleans, LA 70130                                           |
|   | Telephone: (504) 522-0077                                       |
| 8 | Facsimile: (504) 522-0078                                       |
| 9 |                                                                 |
|   | *Executive Committee for Direct Purchaser Class Plaintiffs*     |
|10 |                                                                 |
|11 | Andrew E. Aubertine, *Pro Hac Vice*                             |
|   | Email: aa@adr-portland.com                                      |
|12 | **AUBERTINE DRAPER ROSE, LLP**                                  |
|   | 1211 S.W. Sixth Avenue                                          |
|13 | Portland, OR 97204                                              |
|14 | Telephone: (503) 221 4570                                       |
|   | Facsimile: (503) 221 4590                                       |
|15 |                                                                 |
|16 | Joshua P. Davis (State Bar No. 193254)                          |
|   | Email: davisj@usfca.edu                                         |
|17 | **LAW OFFICES OF JOSHUA P. DAVIS**                              |
|   | 437A Valley Street                                              |
|18 | San Francisco, CA 94131                                         |
|19 | Telephone: (415) 422-6223                                       |
|20 | Joseph M. Vanek, *Pro Hac Vice*                                 |
|   | Email: jvanek@vaneklaw.com                                      |
|21 | David P. Germaine, *Pro Hac Vice*                               |
|22 | Email: dgermaine@vaneklaw.com                                   |
|   | **VANEK, VICKERS & MASINI, P.C.**                               |
|23 | 111 South Wacker Drive, Suite 4050                              |
|24 | Chicago, IL 60606                                               |
|   | Telephone: (312) 224-1500                                       |
|25 | Facsimile: (312) 224-1510                                       |
|26 |                                                                 |
|27 |                                                                 |
|28 |                                                                 |

Charles M. Kagay (SBN 073377)
Email: cmk@slksf.com
**SPIEGEL, LIAO & KAGAY**
388 Market Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 956 5959
Facsimile: (415) 362 1431

Tucker Ronzetti, *Pro Hac Vice*
Email: tr@kttlaw.com
Adam Moskowitz, *Pro Hac Vice*
Email: amm@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON**
2800 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL 33131 2335
Telephone: (305) 372 1800
Facsimile: (305) 372 3508

Paul E. Slater, *Pro Hac Vice*
Email: pes@sperling-law.com
**SPERLING & SLATER**
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 641 3200
Facsimile: (312) 641 6492

*Other Class Counsel*