Joseph R. Saveri (State Bar No. 130064)
*jsaveri@lchb.com*
Eric B. Fastiff (State Bar No. 182260)
*efastiff@lchb.com*
Brendan Glackin (State Bar No. 199643)
*bglackin@lchb.com*
Jordan Elias (State Bar No. 228731)
*jelias@lchb.com*
LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Attorneys for Individual and Representative Plaintiff*
*Rochester Drug Co-Operative, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | Case No. C 07-5985 CW<br><br>CONSOLIDATED CASE<br><br>**DECLARATION OF JORDAN ELIAS IN SUPPORT OF THE REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND IN SUPPORT OF *EX PARTE* APPLICATION TO FILE DOCUMENTS UNDER SEAL** |

I, Jordan Elias, declare as follows:

        1.     I am an associate at Lieff, Cabraser, Heimann & Bernstein, LLP and a

member in good standing of the State Bar of California. I make this declaration based on my own

personal knowledge. I am counsel of record for Plaintiffs Meijer, Inc. and Meijer Distribution,

Inc. ("Meijer"), Rochester Drug Co-operative, Inc. ("RDC"), and Louisiana Wholesale Drug Co.,

Inc. ("LWD") (collectively, "Plaintiffs"). If called upon to testify, I could and would testify

-1-

1    competently to the truth of the matters stated herein.

2         2.    Attached as Exhibit A to this Declaration is a true and correct copy of an

3    excerpt from a treatise published by the American Bar Association in 1996, entitled "Proving

4    Antitrust Damages: Legal and Economic Issues." Exhibit A is not being filed under seal.

5         3.    Attached as Exhibit B to this Declaration is a true and correct copy of a

6    letter from Abbott mailed to HIV Care Providers on January 12, 2004 (Bates No. ABL-IL-

7    0031739-41). Exhibit B is not being filed under seal.

8         4.    Attached as Exhibit C to this Declaration is a true and correct copy of

9    excerpts from the transactional purchase database produced by Meijer Inc. and Meijer

10   Distribution, Inc. in this litigation. (Bates Nos. MEIJER NORVIR 00009-11, 00026, 00034,

11   00064) ("Purchase Data Excerpts"). Exhibit C is being filed under seal.

12        5.    I submit the remainder of this Declaration under Local Rule 79-5(b) and

13   (d) in support of the Plaintiffs' ex parte request to file the following documents under seal:

14        •    Portions of Reply Brief In Further Support Of Plaintiffs' Motion For Class

15             Certification ("Reply Brief"), being filed this day by Plaintiffs;

16        •    The Rebuttal Declaration of Hal J. Singer, Ph. D. in Support of the Reply

17             Brief;

18        •    Exhibit C to the Declaration of Jordan Elias in Support of the Reply Brief

19             (*viz.* ABL-IL-0031739-41).

20        6.    Pages 2, 6, and 10-13 of Plaintiffs' Reply Brief contain information

21   designated "Confidential" or "Highly Confidential" by Abbott under the Protective Order. The

22   Singer Declaration also pervasively references such information. Pursuant to Local Rule 79-5(d),

23   Plaintiffs request that this information be filed under seal.

24        7.    Plaintiffs also seek to seal Exhibit C to this Declaration, the Purchase Data

25   Excerpts, as well as page 15 of the Reply, which references this information. The Purchase Data

26   Excerpts are confidential. Among other things, they contain and/or reflect sensitive, highly

27   confidential information relating to Meijer's purchase pricing and practices. Such information

28   could be useful to Meijer's competitors, suppliers, and/or other entities in the same marketing line

1    as Meijer. Accordingly, any disclosure of this information would be harmful to Meijer.

2    8.    On July 23, 2008, counsel for Plaintiffs contacted Matthew Campbell,

3    counsel for Abbott, to obtain his consent to file the documents identified in paragraph 5 under

4    seal. Counsel for Abbott agreed as to each document.

5    9.    I declare under penalty of perjury under the laws of the United States that

6    the foregoing is true and correct.

7    Executed this 23th day of July, 2008 at San Francisco, California.

8

9    /s/ Jordan Elias
     Jordan Elias

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



# PROVING ANTITRUST DAMAGES

## Legal and Economic Issues

Antitrust Damages Project Committee
William H. Page
*General Editor*

Guri Ademi
Aton Arbisser
Roger D. Blair, *Economics Editor*
Barry M. Block
Mark L. Callister
Amanda K. Esquibel
Harry G. Holz, *Robinson-Patman Editor*
Ann I. Jones
Gary L. Kaplan
Howard P. Kitt
James Langenfeld
John E. Lopatka
Philip B. Nelson
John R. Page
Bernard Pump
Mark Erich Weber

**Section of Antitrust Law**
**American Bar Association**

The materials contained herein represent the opinions of the authors and editors and should not be construed to be the action of either the American Bar Association or the Section of Antitrust Law unless adopted pursuant to the bylaws of the Association.

Nothing contained in this book is to be considered as the rendering of legal advice for specific cases, and readers are responsible for obtaining such advice from their own legal counsel. This book and any forms and agreements herein are intended for educational and informational purposes only.

© 1996 American Bar Association. All rights reserved.
Printed in the United States of America.

Library of Congress Catalog Card Number 95-80580
ISBN: 1-57073-236-1

Discounts are available for books ordered in bulk. Special consideration is given to state bars, CLE programs, and other bar-related organizations. Inquire at Publications Planning & Marketing, American Bar Association, 750 North Lake Shore Drive, Chicago, Illinois 60611.

99 98 97 96    5 4 3 2 1

third subsection, we examine the possible use of lost profits as a measure of damages for price enhancement. Finally, we discuss some important harms associated with price fixing other than the overcharge to direct purchasers from cartel members: the harm to indirect purchasers from the cartel; the harm to firms who pay higher prices to nonparticipants in the cartel; and the deadweight welfare loss associated with the cartel.

### 1. *Overcharge to Purchasers from Cartel Members*

The most straightforward damage calculation is for the harm sustained by plaintiffs who purchase the price-fixed good directly from participants in the price fixing conspiracy. The typical measure of damages is the difference between the actual price and the presumed competitive price multiplied by the quantity purchased. This was the calculation that the Supreme Court approved in *Chattanooga Foundry*.[3] When all firms in an industry collude and all direct purchasers sue, the measure corresponds to the wealth transfer from consumers to producers occasioned by a price fixing agreement.

### a. Estimating the Overcharge

The plaintiff's problem in such cases is to estimate the extent of the overcharge, that is, the difference between the actual price charged and the price but for the conspiracy. The problem can be seen with the aid of Figure 1, which is a plot of hypothetical prices over the 1970-1993 period.

---

[3] *Id.*

# EXHIBIT
# B

 **Abbott Laboratories**

January 12, 2004

Abbott Laboratories
100 Abbott Park Rd.
Abbott Park, IL 60064-3500

Dear HIV Care Provider:

Abbott and the greater HIV community have been discussing the re-pricing of Norvir during recent weeks. In an effort to ensure that all HIV providers have received the most current information regarding this re-pricing, I am sending this letter to outline key facts surrounding this decision. We share your ultimate concern—ensuring that patients continue to have access to effective HIV therapies.

**Ensuring Patient Access:**
We did not make this pricing decision lightly, and when doing so, carefully considered patients' ability to access this drug. We took several key steps to ensure that patients are not adversely impacted. As you may know, patients fall into one of three coverage categories: 1) those without prescription drug coverage who pay out of pocket (approximately 5 percent); 2) those who receive public assistance through AIDS Drug Assistance Programs (ADAPs) or Medicaid (approximately 55 percent); and 3) those who are covered by private medical insurance (approximately 40 percent).

For patients without prescription drug coverage or public assistance, we expanded our Patient Assistance Program (PAP) for Norvir to ensure that all patients without drug coverage can receive this drug for free from Abbott, regardless of their financial status. In fact, our PAP for Norvir is the only program in the industry that does not include a financial means requirement. Since implementing the new price on December 4, we have approved all Norvir PAP applications within 24 hours. If you have patients in need of assistance, they can receive an application by calling 1-800-222-6885 (select option 2), Monday through Friday 8:00 a.m. - 5:00 p.m. CST or by visiting www.AbbottVirology.com.

More than half of all patients with HIV receive their drugs through public assistance programs such as ADAPs or Medicaid. Abbott has ensured that these patients will not be impacted by this re-pricing. Specifically, we have met with state ADAP directors and have issued a new Memo of Commitment honoring the former Norvir price for all ADAP programs through June 2005. Our collective understanding is that ADAP funding will be up for Congressional reauthorization as part of the Ryan White CARE Act as of March 31, 2005. We have also contacted every state Medicaid program to affirm that the cost of Norvir will be held at the former price. We are committed to ongoing collaboration with public assistance programs to ensure patient access in the future.

It is our understanding that patients covered through private insurance should not be adversely impacted either. None of the top private insurance providers currently restrict access to HIV medications through a formulary. In addition, none of these plans intend to increase co-pays or premiums based on this pricing action at this time. It is important to note that less than 10 percent of privately insured patients pay a percentage of the prescription cost versus a flat co-pay. It is expected that these patients are protected and will not pay more annually due to out of pocket maximums.



CONFIDENTIAL

ABL-IL-0031739

**Balancing New Programs with Economic Realities:**

Ultimately, access to more and better HIV therapies is in the best interest of patients. This new price is necessary to support our ability to continue research to bring a next generation HIV medication to market, to develop improved formulations of our existing products, and to continue our commitment to the developing world. In fact, we are currently investing in new HIV and Hepatitis C compounds as well as new formulations of both of our HIV products. One of Abbott's goals is to develop products that can be stored at room temperature, improving their value and convenience to patients both here and in the developing world.

**The Changing Role of Norvir:**

Since Norvir was originally launched, the role and value of Norvir in the treatment of patients with HIV/AIDS has changed dramatically. In 1996, Norvir was prescribed as a stand-alone protease inhibitor at a recommended daily dose of 1200 mg and a daily price of $20.52. Today, Norvir is primarily used at low doses of 100 mg to 200 mg in combination with other protease inhibitors, with 100 mg being the most commonly prescribed daily dose. At the new price of $8.57 per 100 mg, Norvir is most often the lowest cost component of a protease inhibitor-based regimen. For example, when you combine Norvir with a regimen based on newly approved therapies such as Reyataz™ (atazanavir) at $22.08 per day[1,2], Norvir continues to represent a fraction, typically one-fifth, of the daily cost of therapy.

If you have additional questions or concerns please feel free to call me directly at (847)-935-4100.

Regards,

John Leonard, M.D.
Vice President, Global Pharmaceutical Development

*Please see enclosed important safety and full prescribing information.*

[1] Based on wholesale acquisition cost (WAC), Price Probe, access date, January 8, 2004. WAC may not represent actual price paid by pharmacies or consumers. Price comparisons do not imply comparable effectiveness of products. Dosages reflect commonly prescribed milligrams per day.

[2] Reyataz package insert.

[3] Norvir package insert.

**Abbott Laboratories**
Abbott Park, IL 60064                    January 2004            04A-017-B027-1

CONFIDENTIAL

ABL-IL-0031740

NORVIR is indicated in combination with other antiretroviral agents for the treatment of HIV infection. This indication is based on the results from a study in patients with advanced HIV disease that showed a reduction in both mortality and AIDS-defining clinical events for patients who received NORVIR either alone or in combination with nucleoside analogues. Median duration of follow-up in this study was 13.5 months.[3]

Safety Information[3]
NORVIR may not be right for everyone, including people with liver disease, hepatitis, or hemophilia.

Redistribution/accumulation of body fat has been observed in patients receiving protease inhibitors.

Elevated blood sugar levels have been reported in patients taking protease inhibitors.

Allergic reactions ranging from mild to severe have been reported.

Pancreatitis has been observed in patients receiving NORVIR therapy, including those who developed high triglycerides.

The risk of muscle pain, including severe muscle disease, may be increased when NORVIR is used in combination with HMG-CoA reductase inhibitors (statin class of lipid-lowering drugs).

Concomitant use of NORVIR with St. John's wort *(Hypericum perforatum)* is not recommended. St. John's wort may reduce NORVIR levels, lead to increased viral load and possible resistance to protease inhibitors.

Common adverse reactions include diarrhea, vomiting, asthenia, taste perversion, abdominal pain, anorexia, headache, peripheral paresthesia, circumoral paresthesia, and dizziness.

Coadministration of NORVIR with certain nonsedating antihistamines, sedative hypnotics, antiarrhythmics, or ergot alkaloid preparations may result in potentially serious and/or life-threatening adverse events.

NORVIR is contraindicated with the drugs listed below:

| | | |
|---|---|---|
| amiodarone | dihydroergotamine | propafenone |
| astemizole | ergotamine | quinidine |
| bepridil | flecainide | terfenadine |
| cisapride | midazolam | triazolam |
| | pimozide | |

CONFIDENTIAL

ABL-IL-0031741