| | |
|---|---|
| James F. Hurst (*Admitted Pro Hac Vice*) | Jeffrey I. Weinberger (SBN 56214) |
| David J. Doyle (*Admitted Pro Hac Vice*) | David M. Rosenzweig (SBN 176272) |
| Samuel S. Park (*Admitted Pro Hac Vice*) | Grant A. Davis-Denny (SBN 229335) |
| Stephanie S. McCallum (*Admitted Pro Hac Vice*) | MUNGER, TOLLES & OLSON LLP |
| WINSTON & STRAWN LLP | 355 Grand Avenue |
| 35 W. Wacker Drive | Los Angeles, CA 90071-1560 |
| Chicago, IL 60601-9703 | Telephone: (213) 683-9100 |
| Telephone: 312-558-5600 | Facsimile: (213) 687-3702 |
| Facsimile: 312-558-5700 | Email: jeffrey.weinberger@mto.com; |
| Email: jhurst@winston.com; ddoyle@winston.com; | david.rosenzweig@mto.com; |
| spark@winston.com; smccallum@winston.com | grant.davis-denny@mto.com |
| | |
| Nicole M. Norris (SBN 222785) | Michelle Friedland (SBN 234124) |
| WINSTON & STRAWN LLP | MUNGER, TOLLES & OLSON LLP |
| 101 California Street, Suite 3900 | 560 Mission Street, 27th Floor |
| San Francisco, CA 94111-5894 | San Francisco, CA 94105-2907 |
| Telephone: 415-591-1000 | Telephone: (415) 512-4000 |
| Facsimile: 415-591-1400 | Facsimile: (415) 512-4077 |
| Email: nnorris@winston.com | Email: michelle.friedland@mto.com |

Charles B. Klein (*Admitted Pro Hac Vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20007
Telephone: 202-282-5000
Facsimile: 202-282-5100
Email: cklein@winston.com

Attorneys for Defendant
ABBOTT LABORATORIES

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| MEIJER, INC. & MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | **Case No. C 07-5985 CW**<br><br>*Related Per October 31, 2007 Order to Case No. C 04-1511 CW*<br><br>**ABBOTT LABORATORIES' MOTION FOR LEAVE TO FILE SUR-REPLY TO DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: August 19, 2008<br>Time: 2:00 p.m.<br>Courtroom: 2 (4th Floor)<br>Judge: Hon. Claudia Wilken |

Pursuant to Local Rules 7-3(d) and 7-11, Defendant Abbott Laboratories respectfully moves for leave to file a sur-reply and accompanying Supplemental Expert Declaration of Joel Hay in order to respond to a brand new monopolization theory Plaintiffs and their expert Dr. Hal Singer presented for the very first time in reply.[1]  Copies of the proposed sur-reply and expert declaration are attached as Exhibits A and B to this motion.

**I.   Plaintiffs Introduced A Brand New Monopolization Theory In Their Reply.**

In an attempt to address some of the deficiencies in their motion for class certification, Plaintiffs propose for the first time in their reply a brand new monopolization theory.  Under that theory, Abbott acted illegally simply by raising the price of its patented drug Norvir® irrespective of the price it charged for Kaletra®.  Until their reply, Plaintiffs—like all the plaintiffs in the related cases before them—had claimed that Abbott's anticompetitive conduct resulted from the fact that it raised the price of Norvir but did not raise the price of Kaletra commensurately.

Following in the footsteps of other parties, Plaintiffs filed suit against Abbott alleging that Abbott leveraged its monopoly in the Boosting Market to monopolize the Boosted Market by raising the price of Norvir without also increasing the price of Kaletra.  Plaintiffs asserted in their Complaint that "Abbott raised the price of Norvir only when it is used to boost a non-Abbott PI" but "did not raise the price of Kaletra." (Cons. Am. Compl. at ¶ 24).  They reiterated these allegation in their opposition to Abbott's motion to dismiss, claiming:  "In direct response to the introduction of these competitor drugs, in 2003, Abbott—overnight, on December 3, 2003—raised the price of Norvir by 400%.  Abbott did not raise the price of Kaletra, however.  As a result of this price increase, rival boosted drugs were put at a severe disadvantage." (Opp'n to MTD at 6-7).  Plaintiffs further alleged that Abbott was able to use its monopoly in the Boosting Market in order to maintain its market share for Kaletra in the Boosted Market because Kaletra was a relative bargain for patients compared to its boosted rival drugs. *Id.*

---

[1] The parties have met and conferred on this issue, and Plaintiffs' counsel have indicated that they oppose Abbott's request for leave to file a sur-reply and accompanying expert declaration.

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

When they moved to certify the proposed class, Plaintiffs again alleged that Abbott's price of Norvir was illegal because of its effect on the relative prices of Norvir and Kaletra. They claimed that Abbott "raised the price of Norvir by 400%," but "did not similarly impose a massive spike in the price of ritonavir when sold as part of Kaletra." (Mot. at 5). Their expert Dr. Hal Singer echoed this theory in his declaration, stating that "when the price of Norvir skyrocketed, [competing PI] treatments became more expensive relative to Kaletra." (Singer Initial Decl. ¶ 23). Plaintiffs even proffered a methodology for calculating Norvir overcharges under which "Norvir overcharges would be computed only on that portion of the Norvir price increase that exceeded the theoretical *Cascade* 'safe-harbor,' *i.e.*, the portion of the Norvir price hike that caused the imputed price of lopinavir to drop below Abbott's average variable costs for lopinavir." (Mot. at 22-23).

In response to Abbott's opposition, however, Plaintiffs abandoned their original theory of monopolization, which turned on the relative prices of Norvir and Kaletra. In its place, they articulated a completely new theory for the very first time in reply that the increase in the price of Norvir was anticompetitive *regardless of the price of Kaletra*. In his expert declaration, Singer explained this new theory:

> Professor Hay repeatedly states that the challenged conduct is a 400-percent increase in the price of Norvir *without a concomitant increase in the price of Kaletra*. This is a misleading description of the conduct challenged in this case. Putting aside the allegations regarding the monopolization of the Boosted Market, the challenged conduct is simply the unilateral 400-percent increase in the price of Norvir.

(Singer Rebuttal Decl. ¶ 19 (emphasis in original)). In other words, Plaintiffs claim that Abbott could monopolize the Boosted Market simply by charging more for Norvir. This is an entirely new theory.

**II.     This Court Should Permit Abbott To File A Response To Plaintiffs' Brand New Monopolization Theory.**

Parties may not raise new issues or theories in reply memoranda and thereby prevent the other party from having an opportunity to respond. *Thompson v. C. I. R.*, 631 F.2d 642, 649 (9th Cir. 1980). Doing so is "manifestly unfair to [the non-moving party] who . . . has no opportunity for a

written response." *Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992). It is also "unfair to the court itself, which, without the benefit of a response from [Defendant] to [the Plaintiffs'] late-blooming argument, would run the risk of an improvident or ill-advised opinion, given our dependence as an Article III court on the adversarial process for sharpening the issues for decision." *Headrick v. Rockwell Intern. Corp.*, 24 F.3d 1272 (10th Cir. 1994).

Without the ability to respond, Abbott is significantly prejudiced by Plaintiffs' introduction of their new monopolization theory for the first time in their reply brief. Abbott predicated its opposition to class certification on the Plaintiffs' original monopolization theory, which they had consistently espoused until now. Plaintiffs' complete change in legal theories prejudices Abbott's ability to properly oppose class certification, and it would be "manifestly unfair" to proceed with class certification based on a legal theory that Abbott has never had an opportunity to challenge. *Herbert*, 974 F.2d at 196. Under similar circumstances, this Court permitted Plaintiffs to file a sur-reply in response to Abbott's motion to compel based on their claim that Abbott included a new argument in its reply. (*See* 06/18/08 Order at 8 n.5). Abbott should have the same opportunity here. Indeed, it is even more imperative that Abbott have the opportunity to respond to Plaintiffs' theory, as it is the basis on which Plaintiffs seek certification of the class.

Given the chance to respond to Plaintiffs' new theory, Abbott would make two basic points. *First*, because the new theory fails to state any claim under antitrust law, this Court cannot certify the class in reliance on it. (*See* Ex. A at 2-3). Plaintiffs cite no case to support the theory that a unilateral price increase on a patented drug alone constitutes a violation of the antitrust laws, nor could they. *See, e.g.*, *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1218 n.11 (9th Cir. 1997) ("Kodak is entitled to reap monopoly profits from the sale or licensing of" its patented products). Furthermore, this Court has already stated in the related Doe/SEIU litigation that Plaintiffs cannot simply complain about Abbott "charging too much" for Norvir. (07/06/06 Order at 10).

*Second*, even if Plaintiffs' new theory were legally cognizable, Plaintiffs have failed to provide a methodology using that theory to show with common evidence either the fact of injury or the amount of damages, as required under Rule 23(b)(3). (*See* Ex. A at 3-8). Plaintiffs' proposed

1  methodology for showing class-wide injury and damages under their new theory is based on a series
2  of erroneous factual and legal assumptions. Even aside from these flaws, their new theory precludes
3  a determination of the but-for price—*i.e.*, the price putative class members would have paid absent
4  the allegedly anticompetitive conduct—with common evidence.

Because Plaintiff have improperly sought to circumvent the briefing process by introducing a new legal theory in their reply—causing prejudice to Abbott in the process—this Court should permit Abbott to file a sur-reply addressing this new monopolization theory.

## CONCLUSION

For the foregoing reasons, Abbott respectfully requests that the Court grant Abbott leave to file a sur-reply and accompanying expert declaration to address Plaintiff's new legal theory introduced for the very first time in their reply in support of their class certification motion.

Dated: August 14, 2008                    WINSTON & STRAWN LLP


                                          By:   /s/ James F. Hurst

                                                James F. Hurst
                                                Attorneys for Defendant
                                                ABBOTT LABORATORIES

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703